UNITED STATES DISTRICT COURT          Docket No. 1:24-cv-00360
EASTERN DISTRICT OF NEW YORK

---

AMERICAN TRANSIT INSURANCE COMPANY,

                 Plaintiffs,

    -against-

BRADLEY PIERRE, MARVIN MOY, M.D., RUTLAND
MEDICAL P.C., WILLIAM A. WEINER, D.O., NEXRAY
MEDICAL IMAGING, P.C. d/b/a SOUL    RADIOLOGY
MEDICAL IMAGING and JOHN DOES 1-15,

                 Defendants.

---

**DEFENDANTS, WILLIAM A. WEINER, D.O., NEXRAY MEDICAL IMAGING, P.C.
D/B/A SOUL   RADIOLOGY MEDICAL IMAGING'S, MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION SEEKING TO STAY AND ENJOIN CIVIL
LAWSUITS AND ARBITRATION PROCEEDINGS**

---

Matthew J. Conroy, Esq.
Robert E. Hewitt, Esq.
**SCHWARTZ, CONROY, & HACK, P.C.**
666 Old Country Road, 9th Floor
Garden City, New York
ess@schlawpc.com
reh@schlawpc.com
*Attorneys for Defendants*
*WILLIAM A. WEINER, D.O., NEXRAY*
*MEDICAL IMAGING, P.C. D/B/A SOUL*
*RADIOLOGY MEDICAL IMAGING'S*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………..……………………………………………...ii

PRELIMINARY STATEMENT……………..……………………………… ………1

ARGUMENT……………………….…………………………………………….. 2

I.  THE ANTI-INJUNCTION ACT BARS A STAY OF PRESENTLY
    PENDING STATE CASES……………………………………………….. 2

    (A)  The *In Personam /In Rem*  Distinction Is the Essence Of
         The "Necessary in Aid-Of-Jurisdiction" Exception And
         This Court Should Decline AMERICAN TRANSIT's Request
         to Stay It……………………………………………….………. 3

    (B)  The Cases AMERICAN TRANSIT Relies Upon
         Have Been Rejected by Other Courts in This District
         And, In Any Event, Are Simply Wrong………………………….7

    (C)  The Same Relief Is Available to AMERICAN TRANSIT In State Court.....10

II.  STANDARD FOR INJUNCTIVE RELIEF…………………………......12

    (A)  There Has Not Been and Will Not Be Irreparable Harm…………….…13

II.  AMERICAN TRANSIT'S UNLIKELY TO SUCCEED
     ON THE MERITS…..…………………………………………………...17

IV.  THE BALANCE OF HARMS FAVORS NEXRAY….………………..19

V.  AMERICAN TRANSIT'S REQUEST TO ENJOIN THE
    COMMENCEMENT OF FUTURE ARBITRATIONS AND
    LITIGATION IS UNWARRANTED……………………………………  20

CONCLUSION……………………………………………………………....22

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*21st Century Advantage Ins. Co. v. Cabral,*
35 Misc.3d 1240(A) (N.Y. Sup. Ct., Nassau County 2012)……………………………….. 11

*Allstate Insurance Company v. Elzanty,*
929 F.Supp.2d 199 (E.D.N.Y. 2013)……………………………………………………..   12

*Allstate Insurance Co. v. Harvey Family Chiropractic,*
677 Fed. Appx. 716  (2d Cir. 2017)……………………………………………  13, 14, 15

*American Civil Liberties Union v. Clapper*,
804 F.3d 617, 622 (2d Cir. 2015)……………………………………………………….. 22

*Ameriprise Ins. Co. v. Hampton*,
3d 1222(A) (N.Y. Sup. Ct., New York County 2018)……………………..…………… 11

*Amoco Prod. Co. v. Vill. of Gambell*,
480 U.S. 531, 542 (1987)……………………………………………….……..…… 22

*Atik v. Welch Foods, Inc.,*
2016 WL 11480151, at *3 (E.D.N.Y. 2016)…………………………………………… 20

*Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,*
398 U.S.  281………………………………………………………………………… 3, 5, 12

*Autoone Ins. Co. v. Manhattan Heights Medical, P.C.*,
24 Misc.3d 1229(A), (N.Y. Sup. Ct., Queens County 2009)……………………………… 11

*Brenntag Int'l Chems. Inc. v, Bank of India,*
175 F.3d 245 (2d Cir. 1999)……………………………………………..…………..13

*Citigroup Glob. Markets Inc. v. VCG Special Opportunities Master Fund Ltd.,*
2008 WL 4891229, at *2 (S.D.N.Y. 2008), *aff'd,* 598 F.3d 30 (2d Cir. 2010)…………… 20

*Coastal Inv. Partners, LLC v. DSG Glob., Inc.*,
2017 WL 3605502, at *3 (S.D.N.Y. 2017)…………………………………………….. 16

*CRP/Extell Parcel I, L.P. v. Cuomo*,
394 Fed. Appx. 779, 781 (2d Cir. 2010)………………………….……………………. 15

*Elkind v. Revlon Consumer Products Corp.*,
2015 WL 2344134, at *3 (E.D.N.Y. 2015)…………………………………………… 21

i

*Faiveley Transp. Malmo AB v. Wabtec Corp.,*
559 F.3d 110, 118 (2d Cir. 2009)………………………………………………………… 13

*Freedom Holdings, Inc. v. Spitzer,*
408 F.3d 112, 115 (2d Cir. 2005)………………………………………………………… 16

*Gov't Emps. Ins. Co. v. Granovsky,*
2022 WL 1810727, at *6 (E.D.N.Y. 2022)………………………...…………………… 6, 7, 8, 9

*Gov't Emps. Ins. Co. v. Mayzenberg,*
2018 WL 6031156, at *9 (E.D.N.Y. 2018)………………………………………………… 9, 10, 18

*Gulf Oil Corp. v. Dep't of Energy,*
514 F.Supp. 1019, 1026 (D.D.C. 1981)………………………...………………………… 16

*Hi–Tech Pharmacal Co., Inc. v. U.S. Food & Drug Admin.,*
587 F.Supp.2d 1, 11 (D.D.C. 2008)……………………………………………………... 15

*In re Baldwin–United Corp.,*
770 F.2d 328 (2d Cir. 1985)." ……………………………………………………………… 8, 9

*In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig.,*
99 F. Supp. 3d 288, 315 (E.D.N.Y. 2015)……………………………………….…..……… 9

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,*
596 F.2d 70 (2d Cir. 279)………………………………………………..…….…..12, 17

*Jayaraj v. Scappini,*
66 F.3d 36, 39 (2d Cir. 1995)…………………………………………………………… 14, 15

*Kamerling v. Massanari,*
295 F.3d 205 (2d Cir. 2002)……………………………………………….……………… 12

*Kline v. Burke Constr. Co.,*
260 U.S. 226, 229 (1922)……….………………………………………………………… 4, 5

*LG Capital Funding, LLC v. Vape Holdings, Inc.,*
2017 WL 2556991, at *6 (E.D.N.Y. June 12, 2017)……………………………………… 16

*LG Capital Funding, LLC v. PositiveID Corp.,*
2016 WL3119185 (E.D.N.Y. 2016)………………………………………….…………… 16

*Metroscan Imaging PC v. Geico Ins. Co.,*
8 Misc.3d 829 (N.Y. City Civ. Ct. 2005), *aff'd,* 13 Misc.3d 35 (App. Term 2006)……..…. 10

iii

*Moore v. Consol. Edison Co. of N.Y.,*
409 F.3d 506, 510 (2d Cir. 2005)…………………………………………… …………… 7, 22

*New Falls Corp. v. Soni Holdings, LLC,*
2022 WL 20058522, at *4 (E.D.N.Y. 2022)………………………………………… … 3, 9

*Nicosia v. Amazon.com, Inc.,*
834 F.3d 220, 239 (2d Cir. 2016)………………………………..……………………… 21

*O'Shea v. Littleton,*
414 U.S. 488 (1974)……………………………………………………………………….. 21

*Renegotiation Board v. Bannercraft Clothing Co.,*
415 U.S. 1, 24 (1974)…………………………………………………..………………… 16

*Retirement Systems of Alabama v. J.P. Morgan Chase & Co.,*
386 F.3d 419, 426 (2d Cir. 2004)……………………………………….…………… 6, 10, 17

*Salinger v. Colting,*
607 F.3d 68, 80 (2d Cir. 2010)…………………………………….…………………… 12

*Sampson v. Murray,*
415 U.S. 61 (1974) ……………………………………..…………………………… 14

*Shain v. Ellison,*
356 F.3d 211, 215 (2d. Cir. 2004)………………………………………………… 20, 21

*Simpson Electric Corp. v. Leucadia, Inc.,*
72 N.Y.2d 450 (1988) ………………………………………………………………11

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC,*
445 F.Supp.2d 356, 365 (S.D.N.Y. 2006)……………………………………………….. 4

*State Farm Mutual Automobile Insurance Company v. Anikeyeva,*
89 A.D.3d 1009 (2d Dept. 2011)……………………………….……………………….. 10

*State Farm Mutual Automobile Insurance Company v. Parisien,*
352 F. Supp.3d 215 (E.D.N.Y. 2018)………………………………..……………… 7, 9

*State Farm Mutual Automobile Insurance Company v. Metro Pain Specialists, P.C.*
2022 WL 1606523   (E.D.N.Y. 2022)……………………………………….…………… 9

*St. Paul Travelers Ins. Co. v. Nandi,*
15 Misc.3d 1145(A), (N.Y. Sup. Ct., Queens County 2007)………………….………… 11

*Toxco, Inc. v. Chu,*
724 F.Supp.2d 16, 30 (D.D.C. 2010)……………………………………………… 15

i

*Union Capital LLC v. Vape Holdings, Inc.*,
2016 WL 8813991, at *3 (S.D.N.Y. Mar. 9, 2016)………………………………….... 16

*United States v. Schurkman*,
728 F.3d 129, 135 (2d Cir. 2013)………………………………………………3, 4, 9

*Vendo Co. v. Lektro-Vend Corp.*,
433 U.S. 623 (1977)………………………………………..……………………… 5, 6, 7

*Vernitron Corp. v. Benjamin*
440 F.2d 105, 108 (2d Cir. 1971) *cert. denied*, 402 U.S. 987 (1971)…………….…….   3

*Vita v. Gen. Motors,*
2023 WL 2970049, at *7 (E.D.N.Y. Feb. 27, 2023)………………………………..... 21

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S.7, 24 (2008)……………………………………………………………... 22

*Wyly v. Weiss*,
697 F.3d 131 (2d Cir. 2012)……………………………………………….. …... …… 4

## Statutes and Regulations

28 U.S.C. § 1651 ……………………………………………………………….. 2 and throughout

28 U.S.C. § 2283………………………………………………………………  2, 3

17A C. Wright & A. Miller,
Federal Practice & Procedure §4225 (3d ed.)………………………..…………… …. 4

*Ersatz Federalism Under the Anti-Injunction Statute,*
78 Colum. L. Rev. 330, 359 (1978)………..…………………………………… 5

*The Anti-Injunction Act and The Problem Of Federal--State Jurisdictional Overlap,*
92 Tex. L. Rev. 1 (November 2013)…………………………………….…………3

<u>**PRELIMINARY STATEMENT**</u>

The instant Memorandum of Law is submitted on behalf of Defendants, NEXRAY MEDICAL IMAGING P.C. d/b/a SOUL RADIOLOGY MEDICAL IMAGING and WILLIAM A. WEINER D.O. (collectively, the "NEXTRAY Defendants"), opposition to a motion seeking to stay and enjoin civil lawsuits and arbitration proceedings against Plaintiff-automobile insurance carriers American Transit Insurance Company  ("AMERICAN TRANSIT").

The Defendants in this matter are primarily Healthcare Providers that regularly treat car accident victims insured by AMERICAN TRANSIT's New York no-fault automobile insurance policies. Under these no-fault policies, also known as personal injury protection ("PIP") policies, AMERICAN TRANSIT agrees to automatically reimburse certain medical costs associated with accidents—that is, without regard to the policyholder's fault in the accident. The Healthcare Providers, who are assigned these claims by their patients, submit their bills directly to AMERICAN TRANSIT. These no-fault billings provide a major source of revenue for the Healthcare Providers

The arbitrations and lawsuits in issue were previously commenced in accordance with the No-Fault Regulatory System promulgated by the New York State legislature, 11 N.Y.C.R.R., Part 65, *et seq*. ("No-Fault Regulations" or "Regulations"). NEXRAY is a medical provider that provided AMERICAN TRANSIT's insureds treatment for their insureds injured in motor vehicle accidents ostensibly covered by policies issued by AMERICAN TRANSIT. NEXTRAY's civil court collection actions against AMERICAN TRANSIT, which AMERICAN TRANSIT seeks to stay, had been previously brought to obtain payment for billed medical services provided by the Providers to motor vehicle accident victims who are entitled to receive benefits under the New York Insurance Law and the No-Fault Regulations promulgated thereunder. In total, the number

1

of pending litigations for both Defendants Rutland and NEXRAY are, according to AMERICAN TRANSIT's own papers, is only 69 with 61 pending arbitrations.

Defendants contend that the Second Circuit has already ruled that this kind of case should not be subject to the kind of injunctive relief sought by Plaintiffs. Moreover, Plaintiffs cannot meet the standard for a preliminary injunction as it has not suffered irreparable harm, nor does it have a likelihood of success or substantial question as to the merits as discovery to date has shown. The balance of harms also favors Defendants given the AMERICAN TRANSIT's size and the importance of the collection to Defendants. Moreover, recent case law has, at a minimum, often refused to grant a stay of pending litigation under the Anti-Injunction Act.

For the reasons set forth below, the relief requested by AMERICAN TRANSIT should be denied.

## **ARGUMENT**

### **I.**

### **THE ANTI-INJUNCTION ACT BARS A STAY OF PRESENTLY PENDING STATE CASES**

Relying in part upon the All Writs Act ("AWA"), 28 U.S.C. §1651, AMERICAN TRANSIT contends that the court is authorized to enjoin some 69 pending state court litigations commenced against AMERICAN TRANSIT for unpaid claims. Plaintiffs must concede that AWA is limited by the Federal Anti-Injunction Act, ("AIA") 28 U.S.C. §2283, which, with three explicit exceptions, expressly prohibits a federal court from enjoining a state court proceeding as follows:

> *A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.*

28 U.S.C. §2283 (Emphasis added)

(A)  **The *In Personam /In Rem*  Distinction Is The Essence Of  The "Necessary In Aid-Of-Jurisdiction" Exception And This Court Should Decline AMERICAN TRANSIT's Request To Stay**

"The policy of the anti-injunction statute, 28 U.S.C. § 2283, is to prohibit enjoining of state court suits except in those situations where the real or potential conflict threatens the very authority of the federal court." *Vernitron Corp. v. Benjamin*, 440 F.2d 105, 108 (2d Cir. 1971), *cert. denied*, 402 U.S. 987 (1971). "Proceedings in state courts, [thus,] should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the Supreme] Court." *United States v. Schurkman*, 728 F.3d 129, 135 (2d Cir. 2013) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)). As explained by the Second Circuit, the "explicit wording" of § 2283 and "the fundamental principle of a dual system of courts" indicates that "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Schurkman*, 728 F.3d at 135 (quoting *Atl. Coast Line R.R. Co.*, 398 U.S. at 297).

The "necessary in aid-of-jurisdiction" exception to the AIA is meant to apply to situations in which the federal court has asserted control over property or assets brought before the court for equitable administration and distribution. *See The Anti-Injunction Act and The Problem Of Federal-State Jurisdictional Overlap*, 92 Tex. L. Rev. 1 (November 2013). Thus, the general rule has been and remains that an injunction cannot be issued to restrain a state action *in personam* involving the same subject matter from going on at the same time. *See New Falls Corp. v. Soni Holdings, LLC, 2022 WL 20058522, at *4 (E.D.N.Y. Sept. 13, 2022)* ("the Second Circuit has limited the in-aid-of-jurisdiction exception to lawsuits based on *in rem* jurisdiction or, in some circumstances, class actions" citing *Schurkman*, 728 F.3d at 135).

3

Neither the instant proceeding nor the civil court actions in the State courts are based on *in rem* jurisdiction. Rather, they are *in personam* actions.[1]

As stated in 17A C. Wright & A. Miller, Federal Practice & Procedure §4225 (3d ed.) regarding the treatment of the "necessary in aid-of-jurisdiction" exception, "The general rule remains, however, that an injunction cannot issue to restrain a state action *in personam* involving the same subject matter from going on at the same time." *Id*. at p. 2 and n.12. Thus, as noted by the Second Circuit in *United States v. Schurkman:*

> We recently reaffirmed the principle that the "in aid-of-jurisdiction" exception generally applies only where necessary to protect a federal court's jurisdiction over a *res. See Wyly v. Weiss,* 697 F.3d 131, 137–38 (2d Cir. 2012). In *Wyly,* we held that a district court could not invoke the "in aid-of-jurisdiction" exception to enjoin state proceedings, notwithstanding that a settlement agreement resolving the federal action provided that the federal district court would retain exclusive jurisdiction over enforcement of the settlement. *Id.* at 139.

*United States v. Schurkman*, 728 F.3d at 137.

In *Wyly v. Weiss*, 697 F.3d 131 (2d Cir. 2012), the Second Circuit explained the limited nature of the "necessary in aid-of-jurisdiction" exception, and that it is generally reserved for state court actions *in rem*, because the state court's exercise of jurisdiction "necessarily impairs, and may defeat," the federal court's jurisdiction over the *res. Id.*at 137-38. By contrast, "an *in personam* action involves a controversy over liability rather than over possession of a thing." [citation omitted]. For that reason, an *in personam* action generally "'does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending.'" *Id. (quoting Kline v. Burke Constr. Co*., 260 U.S. 226, 229 (1922).

---

[1] Courts in this Circuit have rejected creative notions such as that "insurance proceeds" or "litigation" itself, is a *res* so as to invoke the "aid-of-jurisdiction" exception to the AIA. *See e.g., SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC*, 445 F.Supp.2d 356, 365 (S.D.N.Y. 2006).

Similarly, in *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977), in discussing its earlier

decision in *Kline v. Burke Constr. Co., supra*, the Supreme Court stated:

> (A)n action brought to enforce (a personal liability) does not tend to impair or
> defeat the jurisdiction of the court in which a prior action for the same cause is
> pending. Each court is free to proceed in its own way and in its own time,
> without reference to the proceedings in the other court. Whenever a judgment
> is rendered in one of the courts and pleaded in the other, the effect of that
> judgment is to be determined by the application of the principles of *res judicata*
> . . .." *Id.*, at 230, 43 S.Ct., at 81. *No case of this Court has ever held that an
> injunction to "preserve" a case or controversy fits within the "necessary in aid
> of its jurisdiction" exception; neither have the parties directed us to any other
> federal court decisions so holding.*

433 U.S. at 642 (emphasis added).

Thus, it is clear that under the AIA, as interpreted by the Supreme Court and the Second

Circuit, a federal injunction against state court proceedings cannot be justified even where the state

proceedings threaten to impair or preclude the federal court from reaching the same issue or

deciding the case through *res judicata* or collateral estoppel. *Id. See also Atlantic Coast Line R.

Co., supra,* 398 U.S. at 295-96 ("In short, the state and federal courts had concurrent jurisdiction

in this case, and neither court was free to prevent either party from simultaneously pursuing claims

in both courts. ... Therefore, the state court's assumption of jurisdiction over the state law claims

... did not hinder the federal court's jurisdiction so as to make an injunction necessary to aid that

jurisdiction" (emphasis added).

The rationale of the *in rem/in personam* dichotomy, and the interaction between the AIA

and the principles of *res judicata*, was perhaps best explained in William T. Mayton, *Ersatz

Federalism Under the Anti-Injunction Statute,* 78 Colum. L. Rev. 330, 359 (1978), in which, in

discussing *Kline v. Burke Constr. Co, supra*, it was explained as follows:

> The theory underlying this *in rem/in personam* distinction, then, is that where a
> court gains jurisdiction over property, it holds the property to the exclusion of
> other courts because it is a physical impossibility for other courts "to possess or

control the same thing at the same time." No such difficulties, however, are thought to arise with respect to concurrent *in personam* jurisdiction where the only issue is which court shall decide a "mere question of personal liability." Here, both courts may proceed independently— "[e]ach ... in its own way and in its own time, without reference to the proceedings in the other court'"—with the judgment rendered first entitled to *res judicata* by the other court, thus ending the trial in both courts. *The doctrine of res judicata, therefore, neatly avoids the possibility of conflicting federal and state judgments. That this scheme also promotes multiple litigation and an unseemly race to res judicata is one cost imposed by the anti-injunction statute.* (emphasis added)

Indeed, the law in this Circuit is that competing lawsuits involving overlapping issues of personal liability are a necessary by-product of the AIA and do not justify the issuance of federal injunctive relief.  As observed by the Second Circuit, "[the Supreme Court] has never held that a district court may enjoin, as necessary in aid of the district court's jurisdiction, a parallel *in personam* state action." *See e.g. Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.,* 386 F.3d 419, 426 (2d Cir. 2004) (citing *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. at 642 (plurality opinion) ("We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court....")).

As recognized recently in a thoughtful decision issued by District Judge Eric R. Komitee, "at bottom, the necessary-in-aid-of-jurisdiction exception applies (by definition) when necessary to protect *the Court's* jurisdiction — not when it is desirable, or even necessary, to protect a private party's litigation position." *Gov't Emps. Ins. Co. v. Granovsky*, 2022 WL 1810727, at *6 (E.D.N.Y. June 2, 2022) (emphasis added).

Nor is there any basis for concluding that the continued pursuit of the state civil court cases would seriously impair the federal court's ability or flexibility to determine this case, including this Court's ability to grant the requested declaratory relief. That is, applying the above-mentioned principles regarding *res judicata* and its interplay with the AIA, to the extent AMERICAN TRANSIT succeeds in its declaratory judgment claims herein, any Provider claims which still

remain pending in the state court will be wiped out. And, to the extent a state court case has resolved a claim brought by a Provider in favor of the Provider, that determination will be *res judicata* as to that individual claim. *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. at 642 ("(A)n action brought to enforce (a personal liability) does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of *res judicata* . . ." (citation omitted)). *See also Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005). (Declaratory relief not threatened by ongoing state court no-fault proceedings).

### (B)    The Cases AMERICAN TRANSIT Relies Upon Have Been Rejected By Other Courts In This District And, In Any Event, Are Simply Wrong

AMERICAN TRANSIT cites many cases including on *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp.3d 215 (E.D.N.Y. 2018), and several cases citing *Parisien*.

The district court decision in *Parisien* was examined in detail in *Gov't Emps'. Ins. Co. v. Granovsky*, *supra*, decision issued by District Judge Eric R. Komitee. In *Granovsky*. Judge Komitee acknowledged that "a growing string of courts in this district have entered injunctions staying state court cases in factual circumstances largely indistinguishable from the instant case." However, upon examining relevant *controlling* precedent Judge Komitee rejected the holding in *Parisien* and the cases relying on it stating: "*these cases are comprehensively reasoned (especially Parisien, which began the line); but I read the applicable Supreme Court and Second Circuit precedent to place the relief they grant outside the scope of the AIA's exceptions*." *Id*. at *3 (emphasis added).

7

Indeed, as concerns applying the "necessary in aid-of-jurisdiction" exception to *in personam* cases, Judge Komitee noted that "[t]he Second Circuit appears to have applied the [ ] exception to an *in personam* case in only one instance - in *In re Baldwin–United Corp.*, 770 F.2d 328 (2d Cir. 1985)." *Id* at *4. Analyzing the facts of *Baldwin*, Judge Komitee noted that at the time the federal district court in *Baldwin-United* entered the injunction it was presiding over a "consolidated, multi-district, class action" brought by a class of annuity holders against twenty-six broker dealers who had sold the annuities. *See id*. at 331 (District court was presiding over "the consolidated proceedings of more than 100 federal securities lawsuits"). By the time the district judge issued the injunction, he had been presiding over the action for years; eighteen of the broker-dealer Defendants had signed stipulations of settlement with the Plaintiff class; and the court had given preliminary approval to that settlement and scheduled a fairness hearing. *Id*. at 332. In affirming the district court's injunction, the Court of Appeals concluded that the class action proceeding was "so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control." *Id*. at 337.

In considering the significance of *Baldwin–United Corp.,* to the facts before him, Judge Komitee noted:

> *Baldwin-United's* facts were *sui generis*: the multidistrict litigation there was truly of "extraordinary complexity." *United States v. Schurkman*, 728 F.3d 129, 137-138 (2d Cir. 2013). And it was "crucial to [the Second Circuit's] analysis that most of the Defendants had already settled, and that there was a substantially significant prospect that the other eight Defendants [would] settle in the reasonably near future." *Ret. Sys. of Ala. V. J.P. Morgan Chase & Co,* 386 F.3d 419, 428 (2d Cir. 2004).

*Granovsky* at *4.

Because none of the crucial factors on which the decision in *Baldwin-United* turned were present in *Granovsky,* Judge Komitee ruled that "Plaintiff cannot overcome the AIA's limitations" (*id*. at *5)[2] and denied the requested injunction.

As in *Granovsky*, there is no analogy herein to the class action practice and consolidated multidistrict litigation that were crucial factors in *In re Baldwin-United Corp*. This case is not "multi-district litigation"—all of the cases subject to the requested stay are pending in the very same state court system.[3] Accordingly, like *Granovsky,* none of the crucial factors in *Baldwin-United* are present in the instant matter.

It is not surprising then that numerous judges in this district when addressing the decision in *Parisien*, have refused to follow it and declined to apply the "necessary in aid-of-jurisdiction exception." *See e.g. New Falls Corp. v. Soni Holdings, LLC*, 2022 WL 20058522, at *5 (E.D.N.Y. Sept. 13, 2022) (In light of contrary legal authority in this district, "[t]he Court does not consider [*Parisien* and cases that rely thereon] to be persuasive" regarding the in-aid-of-jurisdiction exception to the Anti-Injunction Act); *Gov't Emps'. Ins. Co. v. Granovsky*, 2022 WL 1810727, at *3, 6 (E.D.N.Y. June 2, 2022) ("the applicable Supreme Court and Second Circuit precedent place the relief granted by [the court in *Parisien* and cases citing it] outside the scope of the AIA's exceptions"); *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, 2022 WL 1606523, at *13 (E.D.N.Y. May 20, 2022) ("the Court finds that the in-aid-of-jurisdiction exception to the Anti-Injunction Act does not apply to Plaintiffs' request for a preliminary injunction of pending

---

[2] Indeed, the Second Circuit in a 2013 decision, *United States v. Schurkman,* held: "**we decline to extend the holding of *Baldwin–United* beyond the exceptional circumstances of that case**." 728 F.3d at 138. (Emphasis added).

[3] Nor do these cases fit in the sub-category to the exception of "parallel state actions which might trigger a breakdown in "settlement negotiations." *See In re HSBC Bank, USA, N.A. Debit Card Overdraft Fee Litig*., 99 F. Supp. 3d 288, 315 (E.D.N.Y. 2015) (collecting cases).

no-fault insurance state court proceedings); *see also Gov't Emps'. Ins. Co. v. Mayzenberg*, 2018 WL 6031156, at *9 (E.D.N.Y. Nov. 16, 2018) ("[E]xception to the Anti-Injunction Act is not warranted").

While some of the arguments relied on in *Parisien* (and other cases citing it) *may* have practical appeal, that appeal is <u>not</u> recognized by the Second Circuit as a basis for granting an injunction, which has ruled "**creat[ing] an additional exception to the Anti-Injunction Act for circumstances where a federal court finds it convenient to enjoin related state proceedings [is] an approach contrary to the Supreme Court's direction that we construe doubts about the permissibility of an injunction in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.**" *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d at 430 (emphasis added).

Ample Supreme Court and Second Circuit precedent thus demonstrate that AMERICAN TRANSIT cannot satisfy the "necessary in aid" of the court's jurisdiction exception to the AIA, and hence the motion to stay Defendants' pending 69 court proceedings must be denied.

**(C) <u>The Same Relief Is Available to AMERICAN TRANSIT In State Court</u>**

Although not relevant to an analysis of the AIA, AMERICAN TRANSIT's assertion that the cases need to be heard together in order for AMERICAN TRANSIT to demonstrate the alleged fraud, is untrue. Rather, the fact is that they could be consolidated in state court if AMERICAN TRANSIT chose to do so. *See Metroscan Imaging PC v. Geico Ins. Co.*, 8 Misc.3d 829 (N.Y. City Civ. Ct. 2005), *aff'd,* 13 Misc.3d 35 (App. Term 2006) (consolidating over sixty (60) no-fault actions).

Indeed, AMERICAN TRANSIT could have brought an action in New York State court seeking the relief sought herein, including a request for a stay. For example, in *State Farm Mut.*

*Auto. Ins. Co. v. Anikeyeva,* 89 A.D.3d 1009 (2d Dept. 2011), an automobile insurer brought claims for unjust enrichment, a declaratory judgment to recover no-fault payments, and a declaration that it did not have any obligation to pay no-fault claims submitted to it (the very same relief sought herein by AMERICAN TRANSIT) by 16 different medical professional corporations, on the grounds that, among other things, the professional corporation Defendants were unlawfully incorporated and, thus, ineligible to recover no-fault benefits.[4] In addition, in that same case the automobile insurer sought and obtained from the state court a stay of "*all currently pending actions or other proceedings and any suits, arbitrations or other proceedings that are subsequently instituted by and/or on behalf of the PC Defendants against Plaintiff involving reimbursement for No-Fault benefits.*"

Indeed, New York State courts routinely stay collection actions pending declaratory judgment proceedings. *See Ameriprise Ins. Co. v. Hampton*, 60 Misc.3d 1222(A) (N.Y. Sup. Ct., New York County 2018); *21st Century Advantage Ins. Co. v. Cabral,* 35 Misc.3d 1240(A) (N.Y. Sup. Ct., Nassau County 2012); *Autoone Ins. Co. v. Manhattan Heights Medical, P.C.*, 24 Misc.3d 1229(A), (N.Y. Sup. Ct., Queens County 2009); *St. Paul Travelers Ins. Co. v. Nandi*, 15 Misc.3d 1145(A), (N.Y. Sup. Ct., Queens County 2007). In short, AMERICAN TRANSIT could have sought relief from the state courts. That it chooses to seek its relief in federal court is not a basis for a federal court to enjoin pending state court proceedings.

In any event, and of particular relevance herein, a stay of the civil court cases is simply not "necessary in aid-of-jurisdiction" within the meaning of the AIA, and there is no legitimate basis herein for a federal injunction of state court actions, which would have serious constitutional

---

[4] Further, had the insurance carrier chosen to, it could have asserted civil RICO claims in the case. *See Simpson Electric Corp. v. Leucadia, Inc.,* 72 N.Y.2d 450, 461 (1988) (New York State Courts have concurrent jurisdiction with Federal Courts to hear civil RICO claims).

implications regarding "the fundamental principle of a dual system of courts." Indeed, the implications of such a stay are sufficiently consequential to warrant invoking again, the Supreme Court's admonition that: "(a)ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. at 297

## II.

### STANDARD FOR INJUNCTIVE RELIEF

Even if an injunction is available in theory, AMERICAN TRANSIT cannot meet the standard. To prevail on a claim for injunctive relief, Plaintiffs must show "(1) irreparable harm absent the injunctive relief and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and (3) a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

The "showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Allstate Insurance Company v. Elzanaty*, 929 F.Supp.2d 199, 221 (E.D.N.Y. 2013) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002).

Irreparable harm occurs where "remedies available at law, such as monetary damages, are inadequate to compensate" the Plaintiff for its injury. *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010). The irreparable harm must be "not remote or speculative but . . . actual and imminent." *Jackson Dairy, Inc.*, 596 F.2d at 72.

12

**(A)** <u>There Has Not Been and Will Not Be Irreparable Harm</u>

An "irreparable harm is that where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action, the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). That threatened harm must be "actual and imminent," not "remote [or] speculative." *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation omitted). If American Transit succeeds in its RICO and various other fraud-related claims, there is no reason to think that it will not be able to recover the funds it spent in arbitration through the resulting judgment. Injuries compensable by monetary damages do not meet this threshold requirement "because monetary injury can be estimated and compensated." *Brenntag*, 175 F.3d at 249.

The Second Circuit has already explained that the prospect of pending No-Fault arbitrations does not constitute irreparable harm when GEICO made the same exact arguments AMERICAN TRANSIT makes about the risk of inconsistent verdict. *GEICO Ins. Co. v. Harvey Family Chiropractic*, 677 F. App'x 716 (2d Cir. 2017) ("[M]oney, time and energy necessarily expended absent a stay of … arbitration proceedings are not enough to establish irreparable harm"). Therefore, AMERICAN TRANSIT's argument that those pending arbitrations give rise to the need for a stay must fail. "Even if the Defendants obtain other No-Fault reimbursements in state court and arbitrations while this case is pending, the Plaintiffs are free to recover those payments should they prevail on their RICO claim." *Id.* Injuries compensable by monetary damages do not meet this threshold requirement "because monetary injury can be estimated and compensated." *Brenntag*, 175 F.3d at 249. Indeed, as the Second Circuit has explained, irreparable

13

harm just "means" the movant has suffered an "injury for which a monetary award cannot be adequate compensation." *Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (internal quotation omitted).  It is simply "not enough" to complain about lost "money, time and energy" that will result absent a stay. *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).   AMERICAN TRANSIT'S  Complaint seeks actual and compensatory damages; attorney's fees; interests; and treble damages. . Therefore, every one of its alleged injuries is calculable and payable in money damages. (Complaint, Wherefore Clauses). None of the harm alleged is irreparable.

Notwithstanding this clear and binding precedent, AMERICAN TRANSIT offers no evidence of a real irreparable harm.  Rather, AMERICAN TRANSIT offers the barest assertion (flouting black-letter law) that it will suffer an irreparable injury without a preliminary injunction. The affidavit of its manager alleges no harm at all from NEXRAY DEFENDANTS. Indeed, the pending cases and arbitrations listed add up to a miniscule amount for a company AMERICAN TRANSIT, since it is less than seventy cases and less than seventy arbitrations, with most of them seeking less than $1,000.

As to resources, AMERICAN TRANSIT already seeks its compensatory damages, costs, interest, and reasonable attorney's fees. It seeks and can seek reimbursement for these alleged waste of "resources" from the Defendants in its lawsuit.  Moreover, AMERICAN TRANSIT does not even try to prove that this "harm" of wasted resources in the form of attorney's fees cannot be calculated in monetary terms.  To the contrary, AMERICAN TRANSIT will be able to calculate the attorney's fees and proportional arbitration costs exactly.

In *ALLSTATE Insurance Co. v. Harvey Family Chiropractic*, 677 Fed. Appx. 716 (2d Cir. 2017), the Second Circuit in a RICO "clawback" case against a no-fault healthcare provider, in which the carrier, Allstate Insurance Company, sought an injunction against pending and future

14

state court litigations and arbitrations in New York's No-Fault System, held that the necessity to go forward with underlying state claims during the pendency of the federal action was not by any means "irreparable harm" so as to justify that the state proceedings be enjoined:

> We need not reach the question of whether the District Court had the authority to issue an injunction under the AIA and RICO because Plaintiffs have failed to establish the irreparable harm necessary for a preliminary injunction. There is no evidence in the record that, upon the conclusion of this matter, the Plaintiffs cannot be fully compensated through money damages for the alleged harm suffered from the Defendants' fraudulent claims. **Even if the Defendants obtain other No-Fault reimbursements in state court and arbitrations while this case is pending, the Plaintiffs are free to recover those payments should they prevail on their RICO claim.**
> (Emphasis added)

*ALLSTATE Insurance Co. v. Harvey Family Chiropractic*, 677 Fed. Appx. At 718. *See also Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *see also, CRP/Extell Parcel I, L.P. v. Cuomo*, 394 Fed. Appx. 779, 781 (2d Cir. 2010) (unpublished) ("We have long held that an injury compensable by money damages is insufficient to establish irreparable harm").

In the instant action, AMERICAN TRANSIT offers no proof that the commencement of future court proceedings will cause AMERICAN TRANSIT irreparable harm. For economic injury to be irreparable a Plaintiff must show that it will suffer harm that is "'more than simply irretrievable; it must also be serious in terms of its effect on the Plaintiff.'" *Toxco, Inc. v. Chu*, 724 F.Supp.2d 16, 30 (D.D.C. 2010) (*quoting Hi–Tech Pharmacal Co., Inc. v. U.S. Food & Drug Admin*., 587 F.Supp.2d 1, 11 (D.D.C. 2008)). "Purely economic harm is not considered sufficiently grave under this standard unless it will cause extreme hardship to the business, *or*

even threaten destruction of the business." *Id*. (*quoting Gulf Oil Corp. v. Dep't of Energy,* 514 F.Supp. 1019, 1026 (D.D.C. 1981) (emphasis added). The possibility that AMERICAN TRANSIT – a multi-billion-dollar company – will be destroyed by defending future claims for payment from these Providers is ludicrous on its face.

Moreover, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24 (1974); *see also Freedom Holdings, Inc. v. Spitzer,* 408 F.3d 112, 115 (2d Cir. 2005).

While a recognized exception exists to the requirement that a party seeking injunctive relief demonstrate that money damages are an inadequate remedy, the exception is premised on the movant showing that the there is an <u>imminent threat</u> of the defendant's actual insolvency. *Coastal Inv. Partners, LLC v. DSG Glob., Inc.*, 2017 WL 3605502, at *3 (S.D.N.Y. July 31, 2017). As the moving party, AMERICAN TRANSIT carries a heavy burden in demonstrating current or imminent insolvency at the preliminary injunction stage, and courts in this Circuit have "denied applications for a preliminary injunction, even in the face of evidence that a defendant was in very weak financial condition." *Coastal Inv. Partners, LLC v. DSG Glob., Inc.*, *supra*; *Union Capital LLC v. Vape Holdings, Inc.*, 2016 WL 8813991, at *3 (S.D.N.Y. Mar. 9, 2016) (collecting cases); *see also LG Capital Funding, LLC v. PositiveID Corp.*, 2017 WL 2556991, at *6 (E.D.N.Y. June 12, 2017); *LG Capital Funding, LLC v. Vape Holdings, Inc.*, 2016 WL 3129185, at *4 (E.D.N.Y. June 2, 2016).

Here, the burden is AMERICAN TRANSIT's. AMERICAN TRANSIT fails to meet its high burden AMERICAN TRANSIT does not even assert, let alone demonstrate, that any of the Defendants are on the verge of insolvency and that such is imminent, as is required under the

irreparable harm standard. *See LG Capital Funding, LLC v. Vape Holdings, Inc., 2016 WL 3129185, at *4.*

Finally, AMERICAN TRANSIT claims "the risk of inconsistent results between and amongst the Defendants' collection proceedings and the present case – and the potential frustration of AMERICAN TRANSIT's declaratory judgment claim here satisfy the irreparable harm requirement. But similar to the discussion above regarding the AIA, *res judicata* eliminates the threat of inconsistent results. If this Court rules in Plaintiffs' favor on the merits, including the claims for declaratory relief, such determination will be *res judicata* as to any then pending state court claims. And as concerns any determinations by the state courts, as explained by the Second Circuit:

> There is no reason why [a] state court cannot or should not determine issues of fact and state law relevant thereto as they come up in the state litigation. The subsequent effect of collateral estoppel, far from requiring the federal court to stay proceedings in the state court, is a result which should be welcomed to avoid the task of reconsidering issues which have already been settled by another competent tribunal.

*Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d at 429.

Accordingly, AMERICAN TRANSIT has failed to demonstrate irreparable harm.[5]

### III.

### <u>AMERICAN TRANSIT'S UNLIKELY TO SUCCEED ON THE MERITS</u>

As stated above, to prevail on a claim for injunctive relief, Plaintiffs must show (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, *supra.*

---

[5] To the extent AMERICAN TRANSIT relies on lower court decisions in support of its position, such cases are non-binding and at odds with the above-cited Second Circuit precedent.

AMERICAN TRANSIT's affidavit sets forth no contention or factual basis showing a serious question as to the merits. It simply sets forth the number of arbitrations or litigation and sets forth no factual contention of any fraudulent behavior. It makes allegations as to PIERRE and MOY but not WEINER/NEXRAY.

While the Complaint alleges, without evidence, that the NEXRAY DEFENDANTS were involved in billing fraud, no evidence beyond bare allegations is set forth. There is nothing attached that is relevant to those allegations as to the NEXRAY DEFENDANTS. The motion papers are similarly devoid of relevant exhibits. The allegations in the moving papers are conclusory and unsupported by any evidence. There are in fact, serious questions as to what AMERICAN TRANSIT knew or should have known about most, if not all, of the fraud it has belatedly alleged herein. Furthermore, the affidavit of Cheryl Glaze, manager of AMERICAN TRANSIT, states she is concerned that though defendant Moy was lost at sea, certain No-Fault attorneys have signed verifications on behalf of Rutland improperly. Yet, she does not identify why this cannot be raised in future litigations or arbitratioms. Also, AMERICAN TRANSIT fails to identify even one (1) patient who has complained about any of their medical treatment despite AMERICAN TRANSIT's faux concern that patients will be subjected to unnecessary tests.

While anyone can allege anything in a Complaint, Plaintiff AMERICAN TRANSIT has the burden in its motion for a preliminary injunction and has failed to meet it. In comparison, in Gov't *Empls. Ins. Co. v. Mayzenberg,* 2018 WL 6031156 (EDNY 2018), *7, the Court found a likelihood of success on the merits after "a review of the Amended Complaint, the Exhibits submitted with this motion [including checks], and Mayzenberg's testimony," which it cited from at length that he "knew very little, if anything at all, about the Dovman shell companies that he used for 'advertising' and 'marketing' services. He did not know the names of the companies,

where they were located, or whether they had online websites. He did not have their phone numbers and did not remember ever meeting anyone who worked for them." Furthermore, "[w]hen I. Dovman was asked whether the payments from Sanli and Laogong were kickbacks in exchange for patient referrals, he invoked his Fifth Amendment protection against self-incrimination. In fact, he invoked the Fifth Amendment in response to every single question at his deposition" for which the Court drew an 'adverse inference.' Nothing similar is attached or cited by the Complaint or motion in the case at bar.

Clearly, Plaintiff has failed in its burden to demonstrate a likelihood of success on the merits or a serious question going to the issues. At the very least, this motion is premature.

## IV.

## <u>THE BALANCE OF HARMS FAVORS NEXRAY</u>

The balance of harm also favors the NEXTRAY DEFENDANTS as the NEXRAY DEFENDANTS rely on the revenue for its medical treatment that is statutorily provided by the No-Fault system and AMERICAN TRANSIT, a comparative financial behemoth, is much more able to bear the burden of waiting to a decision in this matter, while defending arbitrations and litigations, than the NEXRAY DEFENDANTS are without prosecuting them. The rule in the Second Circuit is that when a Plaintiff seeks a preliminary injunction and relies on the lower standard of "serious question going to the merits to make them a fair ground for trial," as AMERICAN TRANSIT does herein, then the "balance of hardships" factor must tip "<u>decidedly</u>" in Plaintiff's favor. *Citigroup Glob. Markets Inc. v. VCG Special Opportunities Master Fund Ltd.,* 2008 WL 4891229, at *2 (S.D.N.Y. 2008) (emphasis added), *aff'd,* 598 F.3d 30 (2d Cir. 2010). This is not the case herein. Having to defend in State Court possible future

State Court claims against it hardly demonstrates that the balance of hardships tips "decidedly" in AMERICAN TRANSIT's favor.

Defendants, on the other hand, will suffer severe injury to their medical practices if they are unable to obtain adjudication of their claims in State Court. Medical providers such as Defendants rely on the State Courts to adjudicate claims when such are denied by insurance companies. By enjoining the submission of future claims to litigation in State Court, AMERICAN TRANSIT seeks to financially strangle Defendants into submission. Under the circumstances, it is hard to see how the balance of hardships is "decidedly" in favor of this multi-billion-dollar insurance behemoth.

**V.**

### AMERICAN TRANSIT'S REQUEST TO ENJOIN THE COMMENCEMENT OF FUTURE ARBITRATIONS AND LITIGATION IS UNWARRANTED

A Plaintiff seeking prospective injunctive relief must prove the likelihood of future or continuing harm. *Atik v. Welch Foods, Inc.,* 2016 WL 11480151, at *3 (E.D.N.Y. Aug. 5, 2016), report and recommendation adopted, 2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) (citing *Shain v. Ellison*, 356 F.3d 211, 215 (2d. Cir. 2004) (a Plaintiff seeking injunctive relief "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he will be injured in the future.")). Indeed, it is well-settled that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488 (1974)). The fact that some arbitration cases had been brought in the past is thus insufficient to support injunctive relief for prospective claims. Given that there are presently no pending arbitral proceedings, it is purely speculative that future arbitration cases will be brought. *See id.* (citing *Elkind v. Revlon Consumer Products Corp.*, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015)); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("Although past

injuries may provide a basis to seek money damages, they do not confer standing to seek injunctive relief unless the Plaintiff can demonstrate that [it] is likely to be harmed again in the future in a similar way").

Certainly, AMERICAN TRANSIT has not provided any evidence in support of its motion to suggest that future *arbitral* proceedings will be brought. As the party seeking prospective injunctive relief, AMERICAN TRANSIT bears the burden of demonstrating the likelihood of future or continuing harm. *Shain v. Ellison*, *supra* at 215 (a Plaintiff seeking injunctive relief "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he will be injured in the future."). Accordingly, AMERICAN TRANSIT's request for prospective injunctive relief enjoining any future arbitration proceedings should be denied. *See Vita v. Gen. Motors, LLC*, 2023 WL 2970049, at *7 (E.D.N.Y. Feb. 27, 2023).

AMERICAN TRANSIT's request for a stay of pending 61 pending arbitrations  should also be denied. As outlined in its Complaint, AMERICAN TRANSIT has made it a practice of regularly denying Defendants' reimbursement requests, thereby triggering numerous arbitrable disputes. The Defendants have, in turn, pursued arbitration to resolve these disputes—invoking their contractual right under the New York policies. AMERICAN TRANSIT seeks to enjoin these arbitrations, as well as all future, otherwise valid, arbitrations and litigation between the parties, by persuading the Court to issue the preliminary injunction in this collateral proceeding. This is an attempt to gain leverage over the Defendants by financially squeezing them, so they have no choice but to settle on AMERICAN TRANSIT's terms. The Court should not give credence to such a scheme. The pending bills are part of the arbitration and litigation process, which was specifically set up by New York State as the proper means to resolve these issues. AMERICAN TRANSIT

then insults the abilities of the very system New York State set up as if the arbitrators and New York State Civil Court judges could not handle these issues.

As for future litigation, although the AIA does not expressly prohibit the issuance of a preliminary injunction against the filing of *future* state court cases [cite], nevertheless, because AMERICAN TRANSIT cannot meet the requirements for the granting of an injunction under Fed. R. Civ. P. 65,[6] its request for such relief should be denied based on the arguments above.

 circumstances." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005).

## <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request that Plaintiffs' motion to stay the New York State arbitral and civil court proceedings be denied in all respects.

Dated:  New York, New York
     April 12, 2024

*Matthew J. Conroy*
Matthew J. Conroy, Esq.

---

[6] "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.7, 24 (2008) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)) (internal citation omitted). "A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).