UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
AMERICAN TRANSIT INSURANCE
COMPANY,

                Plaintiff,                  **MEMORANDUM AND ORDER**
      v.                                      24-CV-0360 (RPK) (CLP)

BRADLEY PIERRE, MARVIN MOY, M.D.,
RUTLAND MEDICAL P.C., WILLIAM A.
WEINER, D.O., NEXRAY MEDICAL
IMAGING, P.C. d/b/a SOUL RADIOLOGY
MEDICAL IMAGING and JOHN DOES 1–15,

                Defendants.
-----------------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

        Plaintiff American Transit Insurance Company has moved for a preliminary injunction enjoining defendants Rutland Medical P.C. and Nexray Medical Imaging, P.C. d/b/a Soul Radiology Medical Imaging from (i) prosecuting all no-fault arbitrations and state court lawsuits pending against American Transit and (ii) filing additional no-fault arbitrations and lawsuits against American Transit during the pendency of this case. *See* Mot. for Preliminary Injunction (Dkt. #25). Defendants Dr. Weiner and Nexray, the only defendants that have appeared in this case, oppose the motion. *See* Mem. in Opp'n (Dkt. #41). As discussed below, plaintiff's motion is granted in part, and defendants Rutland and Nexray are preliminarily enjoined from filing additional no-fault arbitrations and lawsuits against American Transit and from prosecuting no-fault arbitrations against American Transit during the pendency of this action. The Court declines to preliminarily enjoin defendants from pursuing no-fault actions that are currently pending in state court because the Anti-Injunction Act precludes that relief.

1

## DISCUSSION

Plaintiff's motion for a preliminary injunction is granted in part and denied in part as explained below.

### I. Defendants Are Enjoined From Filing Additional Lawsuits and Arbitrations Against Plaintiff and From Prosecuting Pending Arbitrations

Plaintiff is entitled to a preliminary injunction enjoining defendants Rutland and Nexray from prosecuting pending no-fault arbitrations and from filing additional no-fault lawsuits and arbitrations during the pendency of this case. A party seeking a preliminary injunction must establish (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the party's favor, and (4) that an injunction is in the public interest. *Am. C.L. Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 188 n.2 (2d Cir. 2019) (citing *Winter*, 555 U.S. at 20). Plaintiff has established these factors here.

*A. Likelihood of Success on the Merits*

Plaintiff will likely succeed in demonstrating that defendants are not eligible for no-fault reimbursements and that defendants' no-fault claims against them are part of a fraudulent scheme. Under New York's no-fault laws and regulations, medical providers cannot receive no-fault benefits if they "fail[] to meet any applicable New York State or local licensing requirement necessary to perform such healthcare services." 11 N.Y.C.R.R. § 65-3.16(a)(12). New York prohibits medical providers from paying or accepting kickbacks in exchange for patient referrals, N.Y. Pub. Health Law § 238, *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802 (ILG), 2018 WL 6031156, at *2 (E.D.N.Y. Nov. 16, 2018), and from ordering tests or treatment not warranted by the condition of the patient, N.Y. Educ. Law §§ 6530(2), (35). New York also prohibits

unlicensed professionals from owning or controlling a medical professional corporation, serving as director or officer of said corporation, entering into any agreement with the corporation's shareholders, or receiving shares or otherwise deriving economic benefit from the corporation's professional services. *Allstate Ins. Co. v. Pierre*, No. 23-CV-6572 (NGG) (LB), 2024 WL 85088, at *2 (E.D.N.Y. Jan. 8, 2024) (citing N.Y. Bus. Corp. Law §§ 1507–08; N.Y. Educ. Law § 6530(19)); *see State Farm Mut. Auto. Ins. Co. v. Mallela*, 827 N.E.2d 758, 760 (N.Y. 2005).

Based on the sworn statements of Dr. Weiner and Mr. Pierre, it is likely that plaintiff will demonstrate that Rutland and Nexray were not eligible to receive no-fault reimbursements in New York. Dr. Weiner and Mr. Pierre have pleaded guilty to conspiring to commit health care fraud and bribery, respectively. Weiner Plea Tr. 3:3–9, 25:22–24 (Dkt. #44-4); Pierre Plea Tr. 4:1–5, 28:18–20 (Dkt. #44-3). At his change-of-plea hearing, Mr. Pierre acknowledged that (i) he is not a licensed medical provider, Pierre Plea Tr. 21:2–10; (ii) he agreed with others to unlawfully own and run medical clinics, including Rutland, *id.* 20:22–21:2; (ii) he knew that medical clinics were unable to bill insurance companies for no-fault benefits if they were controlled by non-physicians, *id.* 21:2–5; (iii) he nevertheless agreed with others to submit bills to insurance companies and falsely represented that the clinics were owned and operated by licensed medical practitioners, *id.* 21:5–8; (iv) he coached medical practitioners to lie during examinations under oath about the ownership, control, and finances of the clinics, *id.* 21:8–11; (v) he used his control of the clinics to steer patients to seek MRIs at Nexray, a medical facility over which he also exercised substantial control, *id.* 21:25–22:4; (vi) Mr. Pierre agreed with Dr. Weiner that Dr. Weiner would falsely report injuries in MRI reports and that Dr. Weiner would lie about Mr. Pierre's role in Nexray, *id.* 22:4–11; (vii) Mr. Pierre agreed to pay bribes to hospital employees, 911 dispatchers, and others who would help induce victims to receive medical treatment at Rutland and other clinics, *id.*

3

22:21–24:6; and (viii) Mr. Pierre agreed to bribe medical officers to send patients to Nexray for MRIs, *id*. 23:25–24:6.

For his part, in his plea allocution, Dr. Weiner admitted that he made false statements under oath about Mr. Pierre's role in his medical practice, Nexray, to obtain reimbursements from insurance companies. Weiner Plea Tr. 19:14–20:24. Dr. Weiner stated that he both had an "overall understanding with Mr. Pierre" and "a more specific agreement with the attorney representing [him] during the examination under oath" that Dr. Weiner would "falsely minimize [Mr. Pierre's] role in [Dr. Weiner's] medical practice in order to facilitate claim reimbursement." *Id*. 20:2–24. When asked whether he was "saying that the attorney was aware that as a result of Bradley Pierre's role in your medical practice, that it was not lawful to obtain medical reimbursement from the insurance company?" Dr. Weiner replied, "[t]hat's fair to say, your Honor." *Id*. 21:6–10. While Dr. Weiner equivocated as to whether he "understood at the time" that Dr. Pierre's involvement in his practice made Nexray ineligible to obtain no-fault reimbursements, *id*. 21:11–18, Dr. Weiner's admissions, along with Mr. Pierre's comprehensive allocution, make it likely that plaintiff will succeed in proving that Nexray and Rutland were ineligible to recover no-fault benefits from America Transit.

These sworn statements also make it likely that Mr. Pierre and Dr. Weiner engaged in common law fraud. "Under New York law, the five elements of a fraud claim must be shown by clear and convincing evidence: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co*., 443 F.3d 230, 234 (2d Cir. 2006). Both Mr. Pierre and Dr. Weiner have admitted that they made false representations to insurance companies about Mr. Pierre's role in Nexray. *See* Pierre Plea Tr.

4

22:4–11; Weiner Plea Tr. 19:14–21:10. Similarly, Mr. Pierre admitted that he agreed with others to falsely represent that Rutland was owned and operated by licensed medical practitioners, when it was in fact run and owned by Mr. Pierre. *See* Pierre Plea Tr. 20:22–21:11. As noted above, Mr. Pierre's role in Rutland and Nexray made those companies ineligible to receive no-fault benefits. These facts support an inference that as a result of American Transit's reasonable reliance on Mr. Pierre and Dr. Weiner's representations, the insurer paid out millions in no-fault benefits to Rutland and Nexray that the companies were not eligible to receive.

### B. Irreparable Harm

Plaintiff has demonstrated that it will likely suffer irreparable harm absent the requested preliminary injunction. "To establish irreparable harm, the movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (internal quotation marks omitted); *see Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (explaining that irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied").

Plaintiff has shown that it will likely suffer irreparable harm from defendants' pursuit of no-fault arbitrations, in the absence of injunctive relief. As set forth above, plaintiff has come forward with strong evidence that defendants' efforts to collect judgments in no-fault arbitrations are part of a fraudulent scheme. Yet because of the "expedited, simplified" procedures used in "New York's arbitration process for no-fault coverage," including "limited or non-existent" discovery, the Second Circuit has held that "[c]omplex fraud and RICO claims . . . cannot be shoehorned into this system." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99 (2d Cir. 2014); *accord*

5

*Gov't Emps. Ins. Co. v. SMK Pharmacy Corp*, No. 21-CV-3247 (AMD), 2022 WL 541647, at *6 (E.D.N.Y. Feb. 23, 2022); *Gov't Emps. Ins. Co. v. Advanced Comprehensive Lab'y, LLC*, No. 20-CV-2391 (KAM), 2020 WL 7042648, at *2 (E.D.N.Y. Dec. 1, 2020). As a result, plaintiff is not likely to be able to fully litigate its fraud and RICO-based defenses to defendants' no-fault claims in the context of no-fault arbitrations.

Further, while an insurer like plaintiff that prevails on fraud and RICO claims against a medical provider may generally recoup "the alleged harm suffered from the defendants' fraudulent claims" at the conclusion of its federal lawsuit, *Allstate Ins. Co. v. Harvey Fam. Chiropractic*, 677 F. App'x 716, 718 (2d Cir. 2017) (discussing recoupment of "No-Fault reimbursements in state court and arbitrations"), that relief does not supply an adequate remedy here because of the "unlikelihood" that defendants would "be able to satisfy a substantial damage award," *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 286 (2d Cir. 2012) (quoting *Omega Importing Corp. v. Petri–Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir.1971)); *see Gov't Emps. Ins. Co. v. Granovsky*, No. 19-CV-6048 (EK) (RER), 2022 WL 1810727, at *7 (E.D.N.Y. June 2, 2022). Courts have found defendants unlikely to satisfy a substantial damages award when "plaintiffs alleged that defendants were insolvent, ceased operations, and/or were facing related criminal charges." *Gov't Emps. Ins. Co. v. Mahmood*, No. 23-CV-04388 (NGG) (TAM), 2024 WL 113958, at *6 (E.D.N.Y. Jan. 10, 2024) (collecting cases). Here, both Dr. Weiner and Mr. Pierre have pleaded guilty to federal charges. Dr. Weiner has consented to the forfeiture of $430,000, *see* Weiner Plea Tr. 26:14–21, and Mr. Pierre will likely be required to pay millions of dollars in restitution and forfeiture, *see* Pierre Plea Tr. 19:5–25. Unsurprisingly, in a case filed by Allstate Insurance Company against these same defendants, Judge Garaufis found that, if convicted, the individual defendants "will likely be unable to satisfy an award of compensatory damages in excess of $2,749,000 sought by

6

Allstate." *Pierre*, 2024 WL 85088, at *6. For similar reasons, the individual defendants are unlikely to be able to pay the more than $3.2 million in compensatory damages being sought in this case.

The corporate defendants are no more likely to be able to pay a substantial damages award. Rutland was controlled by Mr. Pierre, and nominally owned by defendant Dr. Marvin Moy, who is now missing and presumed dead. *See* Decl. of Cheryl Glaze ¶ 6 (Dkt. #27); Letter of Presumed Death (Dkt. #51). That company is therefore not likely to be able to generate revenue to cover a substantial damages award. Similarly, Nexray's counsel conceded at oral argument that besides its outstanding uncollected no-fault claims, Nexray does not own additional assets it could use to satisfy a substantial damages award. Oral Arg. Tr. 35:12–36:9.

In sum, absent a preliminary injunction, plaintiff is likely to suffer irreparable harm from defendants' pursuit of fraudulent no-fault claims.

C. *Balance of Hardships*

The "irreparable harm factors discussed above also tip the equities squarely in [plaintiff's] favor." *Pierre*, 2024 WL 85088, at *7 (quoting *State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 234 (E.D.N.Y. 2018)). While plaintiff will likely suffer irreparable harm in the absence of a preliminary injunction, defendants will suffer only temporary harm from that interim relief. Specifically, although defendants will be delayed in collecting no-fault benefits, they will ultimately be able to recover those benefits if they prevail in this case.

D. *Public Interest*

The public interest favors granting the preliminary injunction discussed above. In analyzing the public interest, courts must consider "the public consequences in employing the extraordinary remedy of injunction," *Yang v. Kosinski*, 960 F.3d 119, 135–36 (2d Cir. 2020)

(quoting *Winter*, 555 U.S. at 24), and "ensure that [the] injunction does not cause harm to the public interest," *SEC v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012). There is no indication that a preliminary injunction here would harm the public interest. Rather, the public interest would be disserved by permitting defendants to continue to litigate what, as discussed above, *see supra* pp. 3–5, are likely fraudulent no-fault claims, *see Granovsky*, 2022 WL 1810727, at *11.

### E. Security for the Injunction

Plaintiff's request for a waiver of Federal Rule of Civil Procedure 65(c)'s security requirement is granted. Rule 65(c) provides that "the court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, an exception to the security requirement applies in "cases involving the enforcement of 'public interests' arising out of 'comprehensive federal health and welfare statutes.'" *Gov't Emps. Ins. Co. v. Wellmart RX, Inc.*, 435 F. Supp. 3d 443, 456 (E.D.N.Y. 2020) (quoting *Pharm. Soc. of State of N.Y., Inc. v. N.Y. State Dep't of Soc. Servs.*, 50 F.3d 1168, 1174 (2d Cir. 1995)). Courts in this district have consistently held that claims of no-fault insurance fraud implicate the "enforcement of public interests" exception to Rule 65(c)'s security requirement. *See Gov't Emps. Ins. Co. v. Landow*, No. 21-CV-1440 (NGG) (RER), 2022 WL 939717, at *14 (E.D.N.Y. Mar. 29, 2022); *Pierre*, 2024 WL 85088, at *8; *Granovsky*, 2022 WL 1810727, at *11. Defendants have not contested the waiver. Accordingly, Rule 65(c)'s security requirement is waived.

## II. The Anti-Injunction Act Precludes a Stay of Pending State Cases

Plaintiff's request for an order preliminarily enjoining Rutland and Nexray from pursuing pending no-fault state court lawsuits against plaintiff is denied. *See* Mot. for Preliminary Injunction 1. The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287, 297 (1970); *see Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 430 (2d Cir. 2004) (stating that "creat[ing] an additional exception to the Anti-Injunction Act for circumstances where a federal court finds it convenient to enjoin related state proceedings [is] an approach contrary to the Supreme Court's direction"). Courts apply the Anti-Injunction Act not only to requests to stay proceedings in a state court but also to requests that the litigants be enjoined from prosecuting pending state-law claims. *See Sierra v. City of New York*, 528 F. Supp. 2d 465, 469 (S.D.N.Y. 2008) (finding the Anti-Injunction Act barred both "plaintiff's application for injunctive relief to stay the Housing Court eviction proceedings and to prohibit defendant [] from prosecuting the eviction"); *Hanover Ins. Co. v. Olin Corp.*, No. 92-CV-4278 (AGS), 1995 WL 598984, at *2 (S.D.N.Y. Oct. 11, 1995) (denying plaintiff's motion to "enjoin [defendant] from prosecuting its . . . claims" in state court under the Anti-Injunction Act).

Plaintiff contends that an injunction prohibiting Rutland and Nexray from litigating current state court cases is permissible because such an injunction would be "in aid of" this Court's jurisdiction. Pl.'s Mem. in Supp. 18–19 (Dkt. #26). The "necessary in aid of the federal court's

jurisdiction" exception to the Anti-Injunction Act simply means that an injunction may be issued when "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. Co.*, 398 U.S. at 295. This exception "is generally reserved for state court actions *in rem*, because the state court's exercise of jurisdiction necessarily impairs, and may defeat, the federal court's jurisdiction over the *res*." *Wyly v. Weiss*, 697 F.3d 131, 137–38 (2d Cir. 2012) (internal quotation marks omitted). In contrast, because "an *in personam* action involves a controversy over liability rather than over possession of a thing . . . an *in personam* action generally does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending." *Id.* at 138 (internal citations and quotation marks omitted).

"The Supreme Court has never held that a district court may enjoin a parallel *in personam* action under the 'in aid of jurisdiction' exception," *ibid.*, and the Second Circuit has done so only once, when a "district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control," *In re Baldwin–United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985). Since *Baldwin–United Corp.* was decided almost forty years ago, the Second Circuit has repeatedly refused to extend its holding to other situations, emphasizing that *Baldwin–United Corp* presented "exceptional circumstances," *United States v. Schurkman,* 728 F.3d 129, 138 (2d Cir. 2013), and that the "in aid of jurisdiction" exception "is generally reserved for state court actions *in rem*," *Wyly*, 697 F.3d at 137; *see Ret. Sys. of Ala. V. J.P. Morgan Chase & Co.*, 386 F.3d 419, 426–28 (2d Cir. 2004).

Exceptional circumstances here do not establish that state adjudication of no-fault actions against plaintiff would "so interfer[e] with this federal court's consideration or disposition" of plaintiff's federal lawsuit "as to seriously impair the federal court's flexibility and authority to

10

decide [this] case," *Atl. Coast Line R.R. Co.*, 398 U.S. at 295. American Transit relies principally on the prospect that state court judgments arising from defendants' no-fault claims could limit the relief available to plaintiff in this lawsuit by virtue of *res judicata*. Pl.'s Mem. in Supp. 19. Specifically, plaintiff argues that the in-aid-of-jurisdiction exception to the Anti-Injunction Act applies because "fragmentation of American Transit's dispute with Defendants into individual Civil Court actions would nullify American Transit's efforts to prove fraud at a systemic level, impair a federal declaratory judgment action over which the Court has taken jurisdiction precisely to eliminate such fragmentation, and deprive American Transit of an avenue toward complete relief in any court." *Ibid.* (brackets, internal quotation marks, and citation omitted). But while it is possible that a state court could decide some issues presented in this case in a manner adverse to plaintiff, the risk of *res judicata* cannot alone justify the in-aid-of-jurisdiction exception because the possibility that the state court enters judgment first is present wherever state and federal lawsuits present common issues. If the risk of *res judicata* from a state court judgment were sufficient to trigger the in-aid-of-jurisdiction exception to the Anti-Injunction Act, the exception would likely swallow the rule. The fact that the exception is almost never invoked in *in personam* cases demonstrates that "[t]he mere existence of a parallel action in state court does not rise to the level of interference with federal jurisdiction necessary to permit injunctive relief under the 'necessary in aid of' exception." *Mayzenberg*, 2018 WL 6031156, at *8 (citing *In re Baldwin-United Corp.*, 770 F.2d at 336).

Because "the necessary-in-aid-of-jurisdiction exception applies (by definition) when necessary to protect the Court's jurisdiction—not when it is desirable, or even necessary, to protect a private party's litigation position," *Granovsky*, 2022 WL 1810727, at *6, this Court lacks authority under the Anti-Injunction Act to stay the pending state court proceedings.

11

## CONCLUSION

Plaintiff's motion for a preliminary injunction order is granted in part and denied in part. Defendants Rutland and Nexray, and anyone acting on their behalf, are enjoined from (1) further pursuing any no-fault arbitrations against American Transit, until the declaratory judgment claim in this case is resolved; and (2) filing any additional no-fault collection arbitrations and lawsuits against American Transit, until the declaratory judgment claim in this case is resolved.

SO ORDERED.

                                                         */s/ Rachel Kovner*
                                                        RACHEL P. KOVNER
                                                        United States District Judge

Dated: May 16, 2024
       Brooklyn, New York