UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AMERICAN TRANSIT INSURANCE COMPANY,

Docket No:   1:24-cv-00360

            Plaintiffs,

    -against-

BRADLEY PIERRE, MARVIN MOY, M.D., RUTLAND MEDICAL P.C., WILLIAM A. WEINER, D.O., NEXRAY MEDICAL IMAGING, P.C. d/b/a SOUL RADIOLOGY MEDICAL IMAGING and JOHN DOES 1-15,

            Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF THE
# MOTION TO VACATE THE CERTIFICATE OF DEFAULT

 

**Law Office of Cary Scott Goldinger, P.C.**
*Attorneys for Defendant*
*Bradley Pierre*
Cary Scott Goldinger, Esq.
400 Garden City Plaza, Suite 420
Garden City, New York 11530
Ph: (516) 227-3344

Cary Scott
Goldinger, Esq

## **TABLE OF CONTENTS**

                                                Page(s)

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..................................................................................................................................4

      I.     LEGAL STANDARD FOR VACATING A CERTIFICATE OF DEFAULT ........... 4

      II.    PIERRE DID NOT INTEND TO WILLFULLY DEFAULT .................................... 5

      III.   THERE IS NO PREJUDICE TO THE PLAINTIFF IN PERMITTING
             THE DEFENDANT PIERRE TO INTERPOSE AN ANSWER AT THIS TIME...... 6

      IV.   PIERRE HAS MERITORIOUS DEFENSES TO THE CLAIMS ASSERTED
             AGAINST HIM IN THE COMPLAINT ..................................................................... 7

## **TABLE OF AUTHORITIES**

**Cases**

Page(s)

*Action S.A.,* 951 F.2d at 507 ............................................................................................... 7

*Am.All. Ins. Co.* v. *Eagle Ins. Co.,* 92 F.3d 57………………………………………………….9

*S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) ………………………………………….9

*Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 167-68 (2d Cir. 2004) ……………………9

*Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2d Cir. 1993) ...................................……..6,7,9

*In re Men's Sportswear, Inc.,* 834 F.2d 1134, 1138 (2d Cir.1987) ....................................................7

*Meehan,* 652 F.2d at 277 ................................................................................................ 7,9

*Sony Corp. v. Elm State Elecs., Inc.,* 800 F.2d 317,320 (2d Cir.1986) ..........................................5

*State Farm Mutual Auto. Ins. Co. v. Mallela*, 827 N.E.2d 758 (N.Y. 2005) …………………...……10

*United States v. Weiner*, No. 1:22-cr-00019-PGG at ECF 367 (S.D.N.Y. Jan. 11, 2024)……………...10, 11

*United States v. Sessa,* 125 F.3d 68, 71 (2d Cir. 1997)……………………………………….………11

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.,* 17 F.Supp.3d 207, 230 (E.D.N.Y. 2014) ……..…11

*Baisch v. Gallina, 346* F.3d 366, 377 (2d Cir. 2003).   …………………………………………….....12

**Rules**

Fed.R.Civ.P. 55(c)................................................................................................ 1, 4
Rule 60(b)............................................................................................................ 8

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of the Defendant Bradley Pierre's ("Pierre") Motion to Vacate the Certificate of Default as to the Plaintiff's ("AT") Complaint ("Complaint"), pursuant to F.R.C.P. 55(c). (*See* attached to Goldinger Declaration at Exhibit "D").

## FACTUAL BACKGROUND

This case brought by the Plaintiff alleges claims of fraud, RICO, and other related violations against various defendants. These include, but are not limited to, allegations that Mr. Pierre was part of a fraudulent scheme; that money was collected as part of illegal agreements with physicians or those controlling the physicians. All these allegations are expressly denied by Defendant.

The Plaintiff's allegations against Mr. Pierre in its most simplistic form, is that since Mr. Pierre was charged in a multi-defendant case with a series of different federal crimes, somehow he is not entitled to collect funds that his company, Medical Reimbursement Consultants, Inc. ("MRC") is entitled to collect. However that is not the case. Two of the counts in the indictment were health care fraud charges which were based on a Mallela type of theory of fraud-namely, that Mr. Pierre was the de facto owner of certain medical clinics that submitted fraudulent no-fault claims to insurance companies, because the clinics were not able to submit those claims legitimately, given the ownership and control of the clients by a person who was not a medical professional.

However, after an approximately two (2) year investigation by federal prosecutors, they were unable to prove any of those allegations and/or crimes and ultimately entered into a plea agreement with Mr. Pierre, who never pleaded guilty to the health care fraud charges brought against him. Instead, he only pleaded guilty to a bribe charge and a tax evasion charge.

This action was originally initiated with the filing of a Complaint on January 17, 2024 (Docket No.1) and allegedly served on Pierre January 24, 2024 (Docket No. 14).  On February 23,

4

2024, a request for a certificate of default was made by Plaintiff's counsel, James Perkins, (Docket No. 20), which certificate entered by the Court on March 01, 2024 (Docket No. 22).  On April 09, 2024, a motion for a default judgement was made by Plaintiff's counsel (Docket No. 34), which was allegedly served on April 25, 2024 (Docket No. 46).  On May 29, 2024, notices of appearance were filed on behalf of Pierre (Docket No. 55 and 58) and on June 12, 2024, an initial conference was held by this Court where counsel for Pierre was present.

On June 13, 2024, minute entries were made instructing counsel for Pierre to "either arrange with plaintiff to pay costs of default judgment motion or file motion to vacate.".  It should be noted to the Court that upon being retained by Pierre, I conferred with Plaintiff's counsel as to whether they would consent to Pierre's Certificate of Default being vacated and was informed that Plaintiff's counsel would consent upon the payment of "costs" for the making of the default motion. Thereafter, I reached out multiple times to Plaintiffs to ascertain what the cost would be, and it wasn't until June 14, 2024 (after this Hon. Court instructed Plaintiff's counsel to cooperate with this office during the scheduled court conference call) that Counsel for Plaintiff finally responded. Unfortunately, Plaintiff's counsel's reply was far from the "cost" and our client could not agree, not afford such a demand. In fact, Plaintiff's counsel's demand for costs on the motion which Plaintiff had also made against defendants Dr, Moy and Rutland was ten times more than what a reasonable amount should have been.

On June 19, 2024, Pierre made a motion for an extension of time to file its Answer by Letter Motion (Docket No. 61).  On July 19, 2024, this Hon. Court issued an Order (Docket No. 69) ordering Pierre to make the within formal motion.  Accordingly, Defendant Pierre now moves to vacate the certificate of default and to be granted permission to submit an Answer forthwith.  A copy of the proposed answer is attached hereto as Exhibit (C).

As will be discussed below, Pierre has meritorious defenses to the allegations raised in

5

complaint; did not intend to willfully default and there is absolutely no prejudice to the Plaintiffs if Pierre is permitted to interpose an Answer forthwith. Further, the failure to permit Pierre to submit an Answer and defend the case on its merits will result in a harsh and unjust disposition. *Enron Oil Corp. v. Diakuhara,* IO F.3d 90 (2d Cir. 1993). It is also contrary to the long standing and '\"oft-stated preference for resolving disputes on the merits," rather than by way of default, Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.

## **ARGUMENT**

I. <u>LEGAL STANDARD FOR VACATING A CERTIFICATE OF DEFAULT</u>

Respectfully, Pierre satisfies the elements to have a Certificate of Default against him set aside pursuant to F.R.C.P 55(c), which states as follows:

Rule 55. Default; Default Judgment:

> (c) SETTING ASIDE A DEFAULT OR A DEFAULT JUDGMENT. The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b).

The Second Circuit in *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90 (2d Cir. 1993) put forth the elements to be considered by a District Court in assessing an application to set aside a Certificate of Default. The Court held that the factors to consider are: whether the Defendant intended to willfully default; whether there is prejudice to plaintiff in setting it aside; and whether, there are clear meritorious defenses. In addition, the Court held that the Court should consider whether a default would result in a harsh and unjust result.

As discussed below (and as stated in Docket No. 61), Pierre satisfies the elements of the *Enron* test and should be permitted to file an Answer forthwith. If he is permitted to interpose an Answer expeditiously this case can proceed accordingly. Further, as no substantive discovery has occurred in this case and the fact that this office, as counsel for Pierre, is actively engaged in the matter, including conferring on various discovery items and discussing settlement, the

Plaintiff would be hard pressed to claim any prejudice. In fact, even though they are far apart, the parties have exchanged settlement proposals

As stated by the *Enron* court at *96:

> With these general principles in mind, we turn to the substantive rules for setting aside a default or default judgment under Rule 55(c). Rule 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed.R.Civ.P. 55(c). Because Rule 55(c) does not define the term "good cause," we have established three criteria that must be assessed in order to decide whether to relieve a party from default or from a default judgment. These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. See, e.g., *Action S.A.,* 951 F.2d at 507; *In re Men's Sportswear, Inc.,* 834 F.2d 1134, 1138 (2d Cir.1987); *Meehan,* 652 F.2d at 277. Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result. See *Sony Corp. v. Elm State Elecs., Inc.,* 800 F.2d 317, 320 (2d Cir.1986). Although the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment, see, e.g., *Meehan,* 652 F.2d at 276, because the concepts of finality and litigation repose are more deeply implicated in the latter action.

Pierre satisfies the Second Circuit's standard to be granted relief from the Certificate of Default where he did not intend to willfully default; there is no prejudice to the Plaintiffs; and, there are clear meritorious defenses. In addition, as a matter of equity enforcing a default against Pierre in this circumstance would result in a harsh and unfair result. If he is permitted to interpose an Answer expeditiously this case can proceed accordingly. *Enron,* IO F.3d at *96.

## II. PIERRE DID NOT INTEND TO WILLFULLY DEFAULT

A review of the Court Docket as well as the facts stated herein illustrate that the Plaintiff's claim that Pierre willfully defaulted is unfounded. As this Court is aware and as noted in this Court's order (Docket No. 69), at the time Pierre's answer was due, Pierre was represented

7

by counsel in related matters who ultimately was relieved of his representation in those case.

During the time Pierre's prior counsel's motion was pending, Pierre attempted to negotiate with his original counsel to continue to represent him in the various cases while at the same time Pierre reached out to several attorneys to discuss engaging their services. Unfortunately, he was unable to find counsel while there were motions pending from an existing attorney to be relieved and it was not a simple process to find new counsel. It was not until Pierre contacted our office that he was able to secure counsel who would represent him in this matter.

Although this office did not move previously to vacate the default (as noted in this Court's Order of July 19, 2024), I actively engaged counsel for Plaintiff to vacate the default and allow for an answer to be filed. It cannot be said that Plaintiff "willfully" defaulted. Plaintiff's attempts to obtain time to answer are undisputed and evident throughout the docket. In fact, we were lead to believe that if Pierre paid the cost of Plaintiff's default, Plaintiff was amenable to agreeing to vacate the default and allow Pierre time to answer. Pierre was willing to do so, until we finally received the demand for the costs of vacature by Plaintiff's counsel, which excessive and unreasonable demand made it abundantly clear that Plaintiff had no real interest in vacating the default voluntarily and thus Pierre had no choice but to seek court intervention

Pierre seeks to interpose an Answer forthwith and defend the action on the merits.

III.   THERE IS NO PREJUDICE TO THE PLAINTIFF IN PERMITTING
       THE DEFENDANT PIERRE TO INTERPOSE AN ANSWER AT THIS TIME

In the instant action, as detailed above, this case is in the very earliest stages and this office has been actively participating in any preliminary discovery that has commenced. For example, this office has discussed with counsel for Plaintiff various versions of a proposed protective order and is in receipt of demands, which responses are being drafted for.

Plaintiff would be hard pressed to claim any prejudice; and regardless, delay, in of itself

does not establish prejudice.  *Enron,* 10 F.3d at *98.

## IV. PIERRE HAS MERITORIOUS DEFENSES TO THE CLAIMS

For a defense to meritorious at this stage, it "need not be ultimately persuasive." *Am.All. Ins. Co*. v. *Eagle Ins. Co.,* 92 F.3d 57, at 61. Instead, a meritorious defense exists if, based on the defendant's version of events, "the factfinder [has] some determination to make." *Id*. (internal quotation marks and citation omitted); see also *S.E.C. v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) ("In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense.") (internal quotation marks and citation omitted); *Enron Oil Corp.*, 10 F.3d at 98 ("The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."). Determining that a defense is meritorious requires a "low threshold of adequacy." *Curry v. Penn Credit Corp.*, No. 15 CV 6360, 2015 WL 6674922, at *5 (W.D.N.Y. Nov. 2, 2015) (quoting *Meehan*, 652 F.2d at 277); see also *U.S. Commodity Futures Trading Comm'n v. Musorofiti*, No. 05-CV-3917, 2007 WL 2089388, at *4 (E.D.N.Y. July 17, 2007) (stating that establishing a meritorious defense "is not a stringent burden."). Because of the strong preference for resolving disputes on the merits (*Enron Oil Corp.,*10 F.3d at 95), at this stage of the case, "all doubts must be resolved in favor of the party seeking relief from the default judgment." *Hanover Ins. Co. v. Hopwood,* No. 10-CV-8321, 2011 WL 3296081, at *2 (S.D.N.Y. May 26, 2011) (internal citation omitted); *see also State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada,* 374 F.3d 158, 167-68 (2d Cir. 2004) (the criteria for vacating a default, "including the meritorious defense factor, should be construed generously.").

With regard to Moving Defendants, Plaintiffs allege that "Nexray is nominally owned by Weiner, but upon information and belief, is actually owned and controlled by Pierre through his management company, MRC" (Docket No. 1 at Paragraph 6). Plaintiff seeks in its complaint for violations of the Federal RICO act "to recover all monies wrongfully paid to Rutland, Nexray, Pierre, Moy and Weiner as a result of their submission of millions of dollars of fraudulent bills presented to and paid by American Transit" (Docket No. 1 at Paragraph 15).

In Paragraph 6 and 7 of the Plaintiff's complaint, Plaintiff alleges "Rutland and Nexray fraudulently held themselves out as properly licensed professional corporations that are entitled to reimbursement under Article 51 of the Insurance Law in violation of the New York State Department of Financial Services ("DFS") regulations and the New York State Court of Appeals holding in *State Farm Mutual Auto. Ins. Co. v. Mallela*, 827 N.E.2d 758 (N.Y. 2005)." (Docket NO. 1 at Paragraph 6) and that Pierre controls Rutland and Nexray in violation of New York law because non-physicians—like Pierre—are prohibited from owning or controlling medical professional corporations in New York. *See United States v. Weiner*, No. 1:22-cr-00019-PGG at ECF 367 (S.D.N.Y. Jan. 11, 2024). (Docket No 1 at Paragraph 7).

Neither of these claims were ever proven in the "Criminal Action" and the plea was not in any way an admission of these allegations. Although Pierre was charged in a multi-defendant case with a series of different federal crimes, after an approximately two (2) year federal investigation, ultimately the prosecutors were unable to prove a Mallela type of theory-which is what the Plaintiff herein is relying upon. That theory would namely be that Pierre was the de facto owner of certain medical clinics that submitted fraudulent no-fault claims to insurance companies, because the clinics were not able to submit those claims legitimately, given the ownership and control of the clinics by a person who was not a medical professional. Further, Plaintiff is well aware of the terms of the Plea deal as Plaintiff's own complaint confirms that "Pierre has since

10

pled guilty to conspiracy to commit bribery and conspiracy to defraud the Internal Revenue Service" (Docket No. 1 Paragraph 4). Specifically, the moving Defendant did not and has not pled guilty to any fraud scheme that would preclude defendant from collecting the monies that the plaintiff seeks to recover. Pierre never pled guilty to the health care fraud charges against him. Instead, he pled guilty only to a bribery charge and a tax evasion charge. The health care fraud charges against Pierre were ultimately dismissed. See attached Declaration of Roland G. Riopelle, Pierre's criminal attorney in the Criminal Action in the United States District Court for the Southern District of New York bearing Docket No 22 CR 19 (PGG).

  The Plaintiff attempts, through reference to the Defendant's Criminal proceeding (Docket No 1. at Paragraph 4), to convince this Hon. Court that the moving Defendant has admitted the allegations contained in the complaint. Specifically, Plaintiff points to the moving Defendants plea deal to prove that an admission was made and that the alleged fraud scheme precluded Defendants from collecting any monies. However, the evidence of the facts contrary to this allegation is contained in the very document that Plaintiff relies on.

  As can be seen, the evidence of the facts contrary to the Plaintiff's allegations are contained in the "Criminal Action" and in Plaintiff's own allegations in its complaint.

  Further, to establish the existence of a RICO conspiracy pursuant to 18 U.S.C. § 1962(d), Plaintiffs must prove "the existence of an agreement to violate RICO's substantive provisions." *United States v. Sessa,* 125 F.3d 68, 71 (2d Cir. 1997) (internal citation omitted). In particular, Plaintiffs need to establish that Defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 244 (2d Cir. 1999). A RICO conspiracy claim 'should be more than a conclusory add-on at the end of a complaint.'" *Sky Med. Supply Inc. v. SCS Support Claims*

11

*Servs., Inc.,* 17 F.Supp.3d 207, 230 (E.D.N.Y. 2014) (emphasis added) (quoting *FD Prop. Holding, Inc. v. U.S. Traffic Corp.,* 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002)) (internal citation omitted). Further, "a plaintiff must allege that the defendant "knew about and agreed to facilitate the scheme" *Baisch v. Gallina, 346* F.3d 366, 377 (2d Cir. 2003).

In this action, Moving Defendant maintains that he did not operate the co-defendants medical companies. As evidenced in the "Criminal Action", the co-defendants maintain that they were eligible to collect the monies being sought by the Plaintiff.

The Co-defendants were duly incorporated and constituted medical companies under the law of the State of New York and this moving Defendant denies all Plaintiff's allegations that it ever controlled or operated such entities and those charges were ultimately dismissed. Accordingly, there is no basis to disqualify such entities from payment under the New York State No-Fault Regulations. *See* Nexray's Answer (Docket No 40) denying that Pierre controlled any part of the medical practice. Further, in his proposed answer (attached hereto as Exhibit C) Pierre denies controlling any part of the co-defendants' medical practice and never pled guilty to the health care fraud charges against him. Accordingly, Moving Defendants have a meritorious defense with regard to Plaintiff's causes of action pursuant to 18 U.S.C. § 1962(d), as at a minimum, Pierre did not control the medical practices and therefore the co-defendants remained eligible to bill the plaintiff and collect the monies that were awarded in the arbitration proceedings.

This moving Defendants also hereby incorporates all the arguments previously made in its motion for an extension of time to answer (Docket No. 61).

**WHEREFORE,** it is respectfully requested that the Court vacate the Certificate of Default and permit Pierre to submit an Answer forthwith and for such other relief as this court deemed just and proper.

13

Dated: July 24, 2024
 Garden City, New York

                                                              Respectfully submitted,

                                                              _____
                                                               CARY SCOTT GOLDINGER