UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AMERICAN TRANSIT INS. CO.,

                     Plaintiff,

           -against-

BRADLEY PIERRE, *et al.*,

                   Defendants.
-----------------------------------------------------------X

                   **REPORT AND**
                   **RECOMMENDATION**
                   24 CV 360 (RPK) (CLP)

**POLLAK**, United States Magistrate Judge:

On January 17, 2024, plaintiff American Transit Insurance ("American Transit" or "plaintiff") commenced this action against Bradley Pierre ("Pierre"), Marvin Moy, M.D. ("Moy"), Rutland Medical P.C. ("Rutland"), William A. Weiner, D.O. ("Weiner"), Nexray Medical Imaging, P.C., d/b/a Soul Radiology Medical Imaging ("Nexray"), and John Does 1-15. (Compl.[1]).  Plaintiff alleges that defendants operated an illegal scheme to defraud plaintiff by collecting payments on non-compensable and fraudulent No-Fault insurance claims, and it asserts claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq., the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and New York Public Health Law § 238(a).  (Id.)

Currently pending before this Court is defendant Pierre's Motion to vacate the certificate of default entered against him on March 1, 2024 (ECF No. 22), and to interpose an Answer to plaintiff's Complaint (the "Motion" or "Mot.") (ECF No. 73).  The Motion was referred to the undersigned to prepare a Report and Recommendation.  (Electronic Order, dated August 6, 2024).  For the reasons set forth below, the Court respectfully recommends that the district court grant defendant Pierre's Motion.

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed January 17, 2024.  (ECF No. 1).

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff alleges that it is "the largest taxi and livery No-Fault liability insurer in New York." (Compl. ¶ 1). For over a decade, defendant Pierre was allegedly involved in an illegal scheme, along with the other named defendants, that demanded from plaintiff "payment for numerous false, inflated, and otherwise fraudulent No-fault claims." (Id.) Defendant Pierre was personally served with a copy of the Summons and Complaint on January 24, 2024. (ECF No. 14). At the time, Pierre was represented by different counsel in a related federal civil case, where Pierre was alleged to have been involved in a similar fraudulent No-fault claims scheme. (ECF No. 63 at 2 (citing <u>Allstate Ins. Co. v. Pierre</u>, No. 23 CV 6572 (E.D.N.Y.)). The same law firm that was defending Pierre in the related civil case was also representing Pierre in one of two related state court interpleader actions, which are currently pending in the Supreme Court of Nassau County. (ECF No. 61 at 2). Pierre was also represented at the time by another law firm in a criminal case in the Southern District of New York, which was terminated on June 3, 2024. <u>United States v. Pierre</u>, No. 22 CR 19 (S.D.N.Y.).

On February 8, 2024, Pierre's counsel in the related federal civil action and the state court action filed motions to withdraw in both matters, which were granted in the federal action on February 22, 2024, and on April 2, 2024, in the state court action. (ECF No. 61 at 2). In the instant case, Pierre failed to appear or otherwise respond to the Complaint by the February 14, 2024, deadline, and on March 1, 2024, the Clerk of Court entered a certificate of default against him. (ECF No. 22). On April 9, 2024, plaintiff filed a motion for default judgment against Pierre and one other defendant, which remains pending. (ECF No. 34).[2]

---

[2] Default was simultaneously entered against defendant Rutland Medical, P.C. ("Rutland"), and plaintiff's pending default judgment motion was brought against both Pierre and Rutland. (ECF Nos. 21, 34–38). As of the date of this Report and Recommendation, no counsel has appeared for Rutland, and Rutland has not challenged the entry of default or plaintiff's motion for default judgment.

On May 29, 2024, Cary Scott Goldinger, Esq. ("Mr. Goldinger") filed a notice of appearance on behalf of Pierre (ECF No. 55), and on June 10, 2024, Adam B. Dressler, Esq. ("Mr. Dressler") also filed a notice of appearance on behalf of Pierre (ECF No. 58). Mr. Goldinger claims that once he was retained by Pierre, he began to speak with plaintiff's attorney, Skip Short, Esq. ("Mr. Short"), "about a global resolution of this action on behalf of all defendants, which settlement would also include the withdrawal of AT's potential claim in the two (2) state court interpleader cases." (ECF No. 61 at 2). At that time, however, defendant Pierre still had not moved to vacate the default entered against him, nor had he contested the pending default judgment motion.

On June 12, 2024, the Court held a conference and ordered defendant Pierre "to either arrange with plaintiff to pay [the] costs of [a] default judgment motion or file [a] motion to vacate." (Minute Entry, dated June 13, 2024). Thereafter, on June 19, 2024, defendant Pierre filed a letter requesting an extension of time and vacatur of default, explaining that the parties were unable to reach an agreement on payment for plaintiff's costs of litigating the default judgment. (ECF No. 61 at 1). Plaintiff filed a letter in opposition on June 26, 2024 (ECF No. 63), and on July 5, 2024, Pierre filed a reply in support of his June 19, 2024, letter. (ECF No. 68).

On July 19, 2024, this court issued an Order denying Pierre's June 19, 2024, letter motion for an extension of time, finding it to be substantively inadequate to constitute a formal motion to vacate, and directing Pierre to submit a formal motion. (ECF No. 69). Thereafter, Pierre filed the instant Motion. In support of his Motion, Pierre filed the declarations of his attorneys, Mr. Goldinger ("Goldinger Decl.") (ECF No. 73-1) and Mr. Riopelle ("Riopelle Decl.") (ECF No. 73-2), a Memorandum of Law ("Def's Mem.") (ECF No, 73-3), and his proposed Answer (ECF

3

No. 73-4).  In his Memorandum of Law, Pierre provides a more substantive argument for the vacatur of default than he did in his previous letter, claiming that he began searching for an attorney to represent him promptly after he was aware of the lawsuit.  (Def's Mem.[3] at 7–9).  He also contends that his plea allocution from the related criminal case does not relate to the allegations in the instant case, and that the delay will not cause prejudice to the plaintiff.  (Id.)

In response, plaintiff filed a Memorandum in Opposition to Pierre's Motion.  (ECF No. 74).  In that Memorandum, plaintiff argues that Pierre continues to fail to prove that he did not willfully default, that his plea allocution from the criminal case directly relates to the allegations in the instant case, and that the plaintiff continues to be prejudiced by the delay.  (Id. at 3–4).   In response, Pierre's counsel, Mr. Goldinger, filed a second declaration in further support of Pierre's Motion to vacate ("Goldinger 2d Decl.")  (ECF No. 75).  In that declaration, Mr. Goldinger reiterates the arguments in Pierre's Memorandum of Law, contending that Pierre maintains a meritorious defense because he never pled guilty to health care fraud charges.  (Id. ¶ 14).

<u>DISCUSSION</u>

I.   <u>Legal Standards</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  <u>See</u> <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95–96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  Fed.

---

[3] Citations to "Def's Mem." refer to defendant's Memorandum of Law, filed in support of his Motion for vacatur of the default.  (ECF No, 73-3).

R. Civ. P. 55(a).  Second, after the Clerk of Court enters a default against a party, the court may enter a default judgment thereagainst if that party fails to move to set aside the default pursuant to Rule 55(c).  Fed. R. Civ. P. 55(b).

Rule 55(c) permits the Court to set aside an entry of default for good cause.  The standard for doing so is less rigorous than the "excusable neglect" standard for setting aside a default judgment by motion pursuant to Rule 60(b).  Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981). The main factors for the Court to consider in determining whether vacatur is appropriate are whether the default was willful, whether a meritorious defense is present, and whether setting it aside would prejudice the adversary.  Shariff v. Amanda Realty, Inc. No. 11 CV 2547, 2013 WL 5522444 at *6 (E.D.N.Y. Sept. 30, 2013) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d at 96, and Meehan v. Snow, 652 F.2d at 277).  Other relevant equitable factors may also be considered, including, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result.  See Enron Oil Corp. v. Diakuhara, 10 F.3d at 96.  The party seeking relief from an entry of default bears the burden of proof.  Aetna Life Ins. Co. v. Licht, No. 03 CV 6764, 2004 WL 2389824, at *3 (S.D.N.Y. Oct. 25, 2004) (quoting In re Martin-Trigona, 763 F.2d 503, 505 n.2 (2d Cir. 1985)). Defaults are not favored, however, and doubts are to be resolved in favor of a trial on the merits. Meehan v. Snow, 652 F.2d at 277.

II.   Analysis

Defendant seeks to vacate the Clerk's entry of default against him, arguing that default in this case was not willful, that he has several meritorious defenses to the action, and that plaintiff will not be prejudiced by further delay.  (Def's Mem. at 7–9).  Applying the factors articulated above, the Court concludes that Pierre's default was not willful, that he has adequately raised a meritorious defense, and that vacating the default will not prejudice the adversary.

A.    Willfulness

The first question is whether the default was willful. The test for willfulness in this context is not simply whether a defendant was properly served and failed to respond.  Instead, the relevant inquiry for determining willfulness relates to the defaulting party's actions after it became aware of the existence of the litigation or entry of default.  Prestige Capital Corp. v. Fuber LLC, No. 16 CV 9577, 2017 WL 2558803, at *2 (S.D.N.Y. June 5, 2017) (citing Swarna v. Al-Awadi, 622 F.3d 123, 142–43 (2d Cir. 2010)); see also Bank of New York Mellon v. Hatter, No. 14 CV 1024, 2017 WL 11724909 at *2 (E.D.N.Y. Dec. 21, 2017) (finding that despite defaulting party's admission of proper service, the failure of the defaulting party to enter an appearance in a timely manner "may have been negligent or careless," but did "not constitute willfulness")).  Thus, there must be "more than mere[] neglect or carelessness" to support a finding of willfulness.  Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4 (finding defendant's explanations for letting the case "languish" plausible and acceptable).

A finding of willfulness does not, however, require that the default occurred due to bad faith, so long as the default is the "deliberate and intended consequence of movant's actions." Shariff v. Amanda Realty, Inc., 2013 WL 5522444 at *7 (citing Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d Cir. 1998)); see also S.E.C. v. McNulty, 137 F.3d 732, 739 (2d Cir. 1998) (affirming the district court's finding of willfulness where defendant's counsel failed to file an answer despite repeated warnings that plaintiff would move for default judgment), cert. denied, 525 U.S. 931 (1998); Dominguez v. United States, 583 F.2d 615, 618 (2d Cir. 1978) (finding that counsel's 10-month delay in seeking to vacate a dismissal could not be characterized as excusable neglect), cert. denied, 439 U.S. 1117 (1979); Dixon v. Ragland, No. 03 CV 826, 2005 WL 2649484, at *2 (S.D.N.Y. Oct. 14, 2005) (finding willfulness where defendants offered no explanation for their failure to respond to the complaint).

In <u>Swarna v. Al-Awadi</u>, for example, the Second Circuit found that although the individual defendants failed to answer the complaint, the defendants retained counsel just one day after receiving the motion for default judgment.  The court found that this delay did not rise to the level of "egregious or deliberate conduct" required to establish willfulness.  622 F.3d at 143 (citing <u>New York v. Green</u>, 420 F.3d 99, 108 (2d Cir. 2005)); <u>cf.</u> <u>Kuklachev v. Gelfman</u>, No. 08 CV 2214, 2009 WL 497576, at *3 (E.D.N.Y. Feb. 26, 2009) (finding willfulness where defendants "took a calculated risk that the case would be resolved in their favor" where they pursued insurance coverage and filed a motion to dismiss plaintiff's claim in lieu of answering another defendant's cross claims).

Here, defendant Pierre argues that his default was not willful because after receiving notice of the lawsuit, he promptly began searching for counsel to represent him on the matter. (Def's Mem. at 8).  Pierre acknowledges that at the time the answer was due, he "was represented by counsel in related matters;" however, that counsel was already in the process of withdrawing as counsel to Pierre in those matters.  (<u>Id.</u> at 7–8).  Pierre explains that he "attempted to negotiate with his original counsel to continue to represent him" and simultaneously "reached out to several [other] attorneys to discuss engaging their services."  (<u>Id.</u> at 8).  Pierre claims that despite his efforts to obtain an attorney, "he was unable to find counsel while there were motions pending from an existing attorney to be relieved and it was not a simple process to find new counsel."  (<u>Id.</u>)  Further, Pierre notes that as soon as he was able to secure his current counsel, his counsel promptly moved to work with plaintiff's attorney "to vacate the default and allow for an answer to be filed."  (<u>Id.</u>)  Pierre argues that given his "attempts to obtain time to answer" and his initial willingness to negotiate to pay "the costs of vacatur[]" to plaintiff's counsel, it is clear that he did not willfully default.  (<u>Id.</u>)

Having considered Pierre's arguments, the Court concludes that Pierre's default was not willful.  Courts in this district have previously held that a defendant's default was not willful when the defendant was not represented by an attorney at the time of service and had "made diligent efforts to reach out to various attorneys to engage them" following service.  <u>Martinez v. Feliks & Sons Storage Tank Corp.</u>, No. 21 CV 3613, 2022 WL 18859073 at *7 (E.D.N.Y. Nov. 1, 2022).  Even though Pierre admits that he was actively represented by counsel in related matters at the time of service, given that his counsel at the time was already in the process of withdrawing as counsel at the time the answer was due, the same principle applies here.  Indeed, when Pierre's counsel filed their motions to withdraw as counsel in the related cases on February 8, 2024, they cited "irreconcilable differences" between attorney and client.  This was less than one week before the answer to the Complaint in the instant motion was due.  <u>Allstate Ins. Co. v. Pierre</u>, No. 23 CV 6572 (E.D.N.Y.) (ECF No. 52-1 ¶ 11).  (<u>See also</u> ECF No. 61 at 2).  Therefore, it is reasonable to assume that his counsel of record in the other actions was in the process of withdrawing from representation at the time of service and had no intention of representing him in this action.

Further, while other courts have found that a defendant's default was willful when the defendant failed to prove that it made an effort to retain an attorney in a timely fashion,  <u>see, e.g., United We Stand America, Inc. v. United We Stand, America New York, Inc.</u> 128 F.3d 86, 89 (2d Cir. 1997), Pierre represents  that even while he was still represented in his other cases by his previous counsel, he began the process of contacting other attorneys.  (Def's Mem. at 8).  While six plus weeks passed after Pierre's former counsel moved to withdraw and Pierre's current counsel filed his notice of appearance, the Court finds it reasonable to assume that Pierre's

process to find new counsel "was not a simple process" given that he was facing several lawsuits and motions to withdraw in the related cases.  (Id.)

Plaintiff argues that Pierre's current counsel "had been representing Pierre's company, MRC, in a state court interpleader action," beginning on March 12, 2024, over two months before counsel filed a notice of appearance in the instant case.  (ECF No. 74 at 6).  However, the fact that Pierre's company was represented in a related case does not mean that the same counsel had already agreed to represent Pierre in this case.  Given that Pierre was actively litigating several cases at the same time, it is reasonable to assume that Pierre's failure to respond in a timely manner was a matter of negligence or confusion, rather than willfulness.  See Springs v. Clements, 202 F.R.D. 387, 394 (E.D.N.Y. 2001) (finding that the defendants did not willfully default simply because they did not understand that the two lawsuits they were simultaneously involved in were being litigated in separate courthouses).  Moreover, while it took plaintiff's current counsel three weeks between filing a notice of appearance and submitting a letter seeking an extension of time to file an answer, this can be explained by the fact that Pierre's counsel first attempted to negotiate with plaintiff's counsel to obtain a voluntary vacatur of default in exchange for the costs of moving for default before "seek[ing] court intervention."  (Def's Mem. at 8).  Accordingly, it is clear that Pierre took several steps to address the suit and did not deliberately avoid responding, and the Court thus concludes that Pierre did not willfully default.

If willfulness were the only factor to be considered in determining whether to vacate a default, the Court would have no hesitation in recommending that the motion to vacate be granted.  However, the Court must also consider the two remaining factors as they apply in this case: whether defendant has raised a meritorious defense, and whether vacating the default

would prejudice the plaintiff.  Shariff v. Amanda Realty, Inc., 2013 WL 5522444 at *6 (E.D.N.Y. 2013).

     B.    <u>Meritorious Defense</u>

To demonstrate a sufficiently meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense."  Shariff v. Amanda Realty, Inc., 2013 WL 5522444 at *8 (E.D.N.Y. 2013) (citing <u>Aetna Life Ins. Co. v. Licht</u>, 2004 WL 2389824, at *4).  In other words, the defendant must show that there is some determination to be made by the factfinder that could result in a finding of no liability for the defendant.  <u>American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.</u>, 92 F.3d 57, 61 (2d Cir. 1996).

Pierre claims that he has several meritorious defenses.  (Def's Mem. at 9–10).  In his Memorandum of Law in support of the instant Motion, Pierre notes that he "never pled guilty to the health care fraud charges against him" and instead "pled guilty to a bribery charge and a tax evasion charge."  (<u>Id.</u> at 11; <u>see also</u> Riopelle Decl. at 1).  He claims that in that criminal case, "the prosecutors were unable to prove" that Pierre "submitted fraudulent no-fault claims to insurance companies," and therefore, "[t]he health care fraud charges against Pierre were ultimately dismissed" in that case.  (Def's Mem. at 10–11).  Further, Pierre contends that he did not own, control, or operate either the Rutland or Nexray medical facilities, and therefore, those facilities submitted their claims "legitimately."  (<u>Id.</u> at 10).  Pierre also clarifies that both Rutland Medical Facility and his personal company, Medical Reimbursement Consultants ("MRC"), were "never indicted," nor did they ever plead guilty to health care fraud charges, and therefore, it is a "question of fact" as to whether or not plaintiff is entitled to the money it seeks. (Goldinger 2d Decl. ¶¶ 7, 9).

In plaintiff's June 26, 2024, letter to the Court, plaintiff argued that in Pierre's plea allocution in the related criminal case, Pierre acknowledged his active role in the alleged scheme that aimed to defraud plaintiff by collecting payments on non-compensable and fraudulent No-Fault insurance claims.  (ECF No. 63 at 2).  Plaintiff thus contends that Pierre's denial of the allegations against him in his proposed answer "is a blatant breach of his guilty plea and allocution, and in any event wholly lacking merit given the facts adduced in the criminal proceedings."  (Id. at 4).  However, Pierre asserts that since he never pled guilty to health care fraud charges, the criminal proceeding at which Pierre entered a guilty plea and the instant matter "are distinguishable," and that the funds at issue in the instant matter are not part of the criminal investigation.  (ECF No. 68 at 1–2; Def.'s Mem. At 11–12).

In response to Pierre's argument that "he did not operate the co-defendants medical companies," and therefore, the co-defendants "were eligible to collect the monies being sought by the Plaintiff," (Def's Mem. at 11–12), plaintiff cites the specific language of Pierre's plea allocution in the related criminal case, wherein Pierre admitted that he "knew that Clinics were unable to bill insurance companies for no-fault benefits if the medical facilities are controlled by non-physicians," but that he "nonetheless, agreed with others to submit bills to insurance companies, falsely representing that the Clinics were owned and operated by licensed medical practitioners . . . ."  (ECF No. 74 at 14 (citing ECF No. 74-2 at 20:20–21)).  In Mr. Goldinger's second declaration, Pierre's counsel reiterated the same points as before with respect to the assertion that Pierre "never pled guilty to health care fraud charges," adding that plaintiff's allegations of health care fraud are "frivolous and without merit."  (Golding 2d Decl. ¶¶ 8–9).

To prove a civil RICO fraud claim, "a plaintiff must establish: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering

activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.'"  Kades v. Organic Inc., No. 00 CV 03671, 2003 WL 470331 at *8 (S.D.N.Y. Feb. 24, 2003) (citing Moss v. Morgan Stanley, 719 F. 2d 5, 17 (2d Cir. 1983)).  Additionally, "a plaintiff must allege 'causation,' *i.e.*, that he or she was 'injured in his [or her] business or property by reason of a violation of section 1962."  Id.  To establish a RICO conspiracy claim under 18 U.S.C. § 1962(d), plaintiff must prove that defendant engaged in "a conspiracy to violate one or more of the substantive RICO provisions."  Id. (citing Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc., 187 F. 3d 229, 244 (2d Cir. 1999)).

As demonstrated by his allocution, Pierre did not plead guilty to healthcare fraud or conspiring to commit healthcare fraud.  In the plea allocution, the court confirms that he was only pleading guilty to engaging in a Travel Act bribery scheme and a tax conspiracy to defraud the IRS.  (See ECF No. 35-2).  The elements needed to prove the civil RICO claims alleged in this case are substantively different from the elements required to prove a Travel Act bribery charge and the elements necessary to prove the tax fraud charge.  (Id. at 10:17–24, 11:6–10, 12:12–25, 13:1–2 (listing the elements of the Travel Act bribery offense and the elements of the conspiracy to defraud the IRS offense that the government would have to prove had Pierre chosen to proceed to trial)).  Indeed, the plea allocution transcript does not mention "racketeering," "racketeering enterprise," or "patterns of racketeering," which are central elements of the RICO claims in this case.  (Id.)  Moreover, as Pierre claims, there is no evidence in the plea allocution transcript from which it could be determined if the Rutland and Nexray facilities were owned, controlled by, or even associated with Pierre.  (Id. at 20:22–25; 21:1–2).

In any event, it is not the Court's role to make factual or legal determinations in a motion to vacate an entry of default. Indeed, other courts in this district have held that in RICO cases, which are particularly complex and require that the plaintiff must "allege facts that give rise to a strong inference of fraudulent intent," the court should give defendants "the opportunity to test [the] Plaintiff's RICO allegations on the merits." Long v. Zhuang, No. 22 CV 1293, 2022 WL 19196270, at *7 (E.D.N.Y. Oct. 27, 2022) (citing San Leandro Emergency Med. Grp. Profit Sharing Plan v. Phillips Morris Cos., Inc., 75 F. 3d. 801, 812 (2d Cir. 1996)).

Therefore, while Pierre may have made some significant admissions during the course of his plea allocution in the criminal case, it is clear that plaintiff has the burden of proving all of the elements of a RICO and a RICO conspiracy claim in order to recover in this case and simply referring to the plea allocution is not enough. Had Pierre pled guilty to the healthcare fraud charges, instead of the bribery and tax fraud charges, some of these other elements may have been conceded. However, based on the information before the Court, including the plea allocution and defendant's assertions of a defense to the claims, the Court finds that a factfinder will have to determine whether plaintiff can satisfy all of the elements required, as well as Pierre's assertions that he did not own, control, or operate Rutland and Nexray medical facilities, and that those facilities, along with MRC, submitted their claims legitimately. (Def's Mem. at 10–1). Given that the record in this case is not fully developed, and taking into account the Court's strong preference to resolve a case on its merits, the Court finds that Pierre has adequately established the existence of a meritorious defense. See Shariff v. Amanda Realty, Inc., 2013 WL 5522444 at *8 (finding that defendant's factual assertions, "if proven at trial, would constitute a complete defense").

Further, in his June 19, 2024, letter to the Court, Pierre also claims that given the "substantial sum" involved in the case, the Court should disfavor the default and instead decide the case on its merits.  (ECF No. 61 at 3).  While this fact alone is not an adequate reason to vacate the default, other courts have held that the fact that "large sums of money are at stake … further tips the scale in favor of vacating the default."  See 131 Main Street Associates, Inc. v. Manko, 1998 WL 811875 at *5 (S.D.N.Y. 1998) (citing Sony Corp. v. Elm State Electronics, Inc., 800 F.2d 317, 320 (2d Cir. 1986))).  Here, given that Pierre has raised several factual assertions that may prove the existence of a meritorious defense, the Court concludes that the significant sum of money further supports a vacatur of default.

C.    Undue Prejudice

The third factor that the Court must consider in determining whether to excuse a default is prejudice to the plaintiff.  To determine whether a vacatur would cause prejudice to the plaintiff, courts must determine if in addition to a delay, the vacatur "will cause the loss of evidence, create increased difficulties for discovery, or provide greater opportunity for fraud and collusion."  Shariff v. Amanda Realty, Inc., 2013 WL 5522444 at *8 (E.D.N.Y. 2013).  Pierre argues that "this case is in the very earliest stages and this office has been actively participating in any preliminary discovery that has commenced."  (Def's Mem. at 8).  In response, plaintiff argues that it "is substantially prejudiced," because "Pierre's default has caused [AT] to needlessly incur significant expense . . . ."  (ECF No. 74 at 18).

Although Pierre's failure to act diligently has delayed the resolution of this case, plaintiff has not asserted that setting aside the default will cause the loss of evidence or create increased difficulties for discovery.  The Court thus concludes that plaintiff has not established meaningful prejudice for purposes of the instant motion to vacate.  See Ward v. Ramkalawan, No. 11 CV 4295, 2013 WL 1149108, at *5 (E.D.N.Y. Feb. 11, 2013), report and recommendation adopted,

14

2013 WL 1149068 (E.D.N.Y. Mar. 19, 2013) (finding that "delay alone is not a sufficient basis

for establishing prejudice"); see also Sacks v. Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home

Mortg. Inv. Tr. 2006-3, No. 12 CV 6338, 2016 WL 11480710 at *7 (E.D.N.Y. Aug. 15, 2016)

(holding that "costs incurred with respect to countering a defendant's motion to vacate do not

constitute prejudice." (quoting Gesuldi v. Gayle Bard Landscapes, Inc., No. 10 CV 5762, 2011

WL 2457882, at *3 (E.D.N.Y. May 31, 2011))), report and recommendation adopted, No. 12 CV

6338, 2016 WL 5338540 (E.D.N.Y. Sept. 23, 2016).

      D.     Summation

     As set forth above, the Court finds that the majority of relevant factors favor defendant

Pierre and thus that the default entered against him should be vacated pursuant to Rule 55(c) of

the Federal Rules of Civil Procedure.

 III.   Attorney's Fees and Costs

     Plaintiff also argues that if the Motion is granted, "Pierre's appearance at this stage

should be conditioned upon paying [AT]'s fees and expenses incurred to deal with his

delinquency."  (ECF No. 74 at 19.)  In response, Pierre asserts that "AT never had any intention

of resolving this issue in good faith" and that his "demand of $40,000.00" is "outrageous" and

"laughable."  (Goldinger 2d Decl. ¶ 10).

     Upon granting a motion to vacate default, other courts in this circuit have ordered that the

defendant pay the plaintiff "the reasonable attorney's fees and costs he incurred in connection

with the motion for default judgment."  Dacas v. Duhaney, No. 17 CV 03568, 2019 WL 5789749

(E.D.N.Y. Oct. 15, 2019), report and recommendation adopted, 2019 WL 5788322 (E.D.N.Y.

Nov. 6, 2019); Filo Promotions, Inc. v. Bathtub Gins, Inc., 311 F. Supp. 3d 645, 647 (S.D.N.Y.

2018) (noting that in vacaturs of default, courts can require "that the defaulting party reimburse

the plaintiff its reasonable attorneys' fees and costs incurred as a result of the default")

(collecting cases). To assess the reasonableness of attorney's fees in vacaturs of default, courts follow the same Second Circuit standards as they do in assessing attorney's fees requested in motions for default judgment. <u>Filo Promotions, Inc. v. Bathtub Gins, Inc.</u>, 311 F. Supp. 3d at 649. Specifically, the Second Circuit "requires a party seeking an award of attorneys' fees to support its request with contemporaneous time records that show 'for each attorney, the date, the hours expended, and the nature of the work done.'" <u>Id.</u> (citing <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F. 2d 1136, 1148 (2d Cir. 1983)).

Accordingly, the Court recommends that Pierre be ordered to pay plaintiff "reasonable" fees and costs associated with litigating the default in an amount to be determined by the Court at a later date. In order to determine the "reasonableness" of the requested fees, the Court recommends that plaintiff be ordered to submit records proving the reasonableness of the requested fees, "preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates." <u>Gunawan v. Sake Sushi Rest.</u>, 897 F. Supp. 2d at 94 (citing <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d at 1147–48).

<u>CONCLUSION</u>

In light of the above, the Court respectfully recommends that the district court: (1) grant defendant's motion to vacate the default; (2) grant defendant leave to interpose an Answer to the Complaint within twenty-one days of the date of the district court's order adopting this Report and Recommendation; (3) order Pierre to pay a reasonable portion of plaintiff's attorney's fees in an amount to be determined by the Court at a later date; and (4) order plaintiff to submit accounting records supporting his request for attorney's fees and costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. <u>See</u>

16

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 27, 2024

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York