# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

AMERICAN TRANSIT INSURANCE COMPANY,

Plaintiff,

- against –

BRADLEY PIERRE, MARVIN MOY, M.D.,
RUTLAND MEDICAL P.C., WILLIAM A. WEINER,
D.O., NEXRAY MEDICAL IMAGING, P.C. d/b/a
SOUL RADIOLOGY MEDICAL IMAGING and
JOHN DOES 1-15,

Defendants.

---

1:24-cv-00360-RPK-CLP

<br>

## PLAINTIFF AMERICAN TRANSIT INSURANCE COMPANY'S
## OBJECTION TO REPORT AND RECOMMENDATION CONCERNING DEFENDANT
## BRADLEY PIERRE'S MOTION TO VACATE CERTIFICATE OF DEFAULT

<br><br>

GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-9200
Fax: (212) 801-6400

SHORT & BILLY, P.C.
217 Broadway Suite 300
New York, New York 10007
Tel: (212) 732-3320
Fax: (212) 732-3326

*Attorneys for Plaintiff American Transit Insurance Company*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 4

ARGUMENT ......................................................................................................................... 11

I.      THE MAGISTRATE JUDGE ERRONEOUSLY FOUND THAT PIERRE
        SATISFIED HIS BURDEN OF PROOF ............................................................. 11

        A.      The Magistrate Judge Erred in Relying on Unsworn Assertions .............. 11
        B.      The Magistrate Judge Erred by Shifting Pierre's Evidentiary
                Burden to ATIC to Prove Its Claims ......................................................... 12

II.     THE MAGISTRATE ERRONEOUSLY FOUND THAT PIERRE'S
        DEFAULT WAS NOT WILLFUL ...................................................................... 13

        A.      The Magistrate Judge Erroneously Relied on Unsworn Statements
                as Satisfying Pierre's Burden .................................................................... 13
        B.      Counsel's Offered Explanations Do Not Establish a Lack of
                Willfulness ................................................................................................ 15

III.    THE MAGISTRATE ERRONEOUSLY FOUND THAT PIERRE
        DEMONSTRATED THE EXISTENCE OF A MERITORIOUS
        DEFENSE ....................................................................................................... 16

        A.      The Magistrate Erred by Discrediting Pierre's Allocution of Guilt ......... 17
        B.      Pierre's Conclusory Denials Do Not Establish the Existence of a
                Meritorious Defense .................................................................................. 23

IV.     ASSUMING PIERRE HAD OTHERWISE SHOWN A BASIS FOR
        VACATUR, THE MAGISTRATE JUDGE CORRECTLY
        CONDITIONED THE VACATUR OF PIERRE'S DEFAULT ON HIS
        PAYMENT OF ATIC'S FEES AND EXPENSES INCURRED AS A
        RESULT OF THE DEFAULT .......................................................................... 24

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aetna Life Ins. Co. v. Licht*,
  No. 03-CV-6764, 2004 U.S. Dist. LEXIS 21538 (S.D.N.Y. Oct. 25, 2004) ....................11, 13

*Allstate Ins. Co. v. Lyons*,
  843 F. Supp. 2d 358 (E.D.N.Y. 2012) ...................................................................................21

*Allstate Ins. Co. v. Mirvis*,
  No. 08-CV-4405, 2015 U.S. Dist. LEXIS 44669 (E.D.N.Y. Mar. 31, 2014)....................15, 23

*Allstate Ins. Co. v. Smirnov*,
  No. 12-CV-1246, 2014 U.S. Dist. LEXIS 127541 (E.D.N.Y. July 21, 2024),
  *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 126179
  (E.D.N.Y. Sept. 8, 2014).........................................................................................20, 21

*Am Tr. Ins. Co. v. Rutland Med., PC a/a/o Shareema Raney*,
  Index No. 652578/2024 (Sup. Ct. N.Y. Cnty. Sept. 5, 2024) .................................................22

*Andrade v. Cultural Care, Inc.*,
  No. 21-CV-5237, 2023 U.S. Dist. LEXIS 222002 (E.D.N.Y. Dec. 13, 2023) ........................18

*Bank of N.Y. Mellon v. Hatter*,
  No. 14-CV-1024, 2017 U.S. Dist. LEXIS 238669 (E.D.N.Y. Dec. 21, 2017) ........................13

*Cambridge Med., P.C. v. Allstate Ins. Co.*,
  899 F. Supp. 2d 227 (E.D.N.Y. 2012) ...................................................................................21

*Car-Freshner Corp. v. Scented Promotions, LLC*,
  No. 19-CV-1158, 2020 U.S. Dist. LEXIS 42902 (N.D.N.Y. Mar. 12, 2020) .........................13

*CIT Bank, N.A. v. Ji Youn Min*,
  No. 14-CV-6793, 2016 U.S. Dist. LEXIS 102694 (S.D.N.Y. Aug. 3, 2016).........................11

*City of New York v. Pollock*,
  No. 03-CV-0253, 2006 U.S. Dist. LEXIS 8391 (S.D.N.Y. Mar. 3, 2006) .............................17

*Crigger v. Fahnestock & Co.*,
  443 F.3d 230 (2d Cir. 2006)...................................................................................................22

*Dixon v. Ragland*,
  No. 03-CV-0826, 2005 U.S. Dist. LEXIS 23800 (S.D.N.Y. Oct. 14, 2005) ..........................13

*Doe v. Doe*,
  No. 16-CV-0332, 2017 U.S. Dist. LEXIS 109692 (S.D.N.Y. July 14, 2017) ...................17, 18

*Durso v. Barsyl Supermarkets Inc.*,
  No. 11-CV-5544, 2016 U.S. Dist. LEXIS 81986 (E.D.N.Y. June 23, 2016) .........................23

*Fed. Election Comm'n v. Beatty for Cong. Comm.*,
  No. 86-CV-3894, 1987 U.S. Dist. LEXIS 9642 (S.D.N.Y. Oct. 23, 1987)............................15

*Filo Promotions, Inc. v. Bathtub Gins, Inc.*,
 311 F. Supp. 3d 645 (S.D.N.Y. 2018)....................................................................24

*Geis Constr. S., LLC v. Delahunt*,
 No. 20-CV-3834, 2023 U.S. Dist. LEXIS 56955 (E.D.N.Y. Mar. 31, 2023).........12

*Grp. One Ltd. v. Gmbh*,
 625 F. Supp. 3d 28 (E.D.N.Y. 2022) .....................................................................12

*Guggenheim Cap., LLC v. Birnbaum*,
 722 F.3d 444 (2d Cir. 2013)...................................................................................11

*Kauhsen v. Aventura Motors, Inc.*,
 No. 09-4114, 2010 U.S. Dist. LEXIS 55554 (E.D.N.Y. June 7, 2010) ..................13

*Kiobel v. Royal Dutch Petroleum Co.*,
 No. 02-CV 7618, 2005 U.S. Dist. LEXIS 16514 (S.D.N.Y. Aug. 11, 2005) .........14

*Knox v. PLO*,
 248 F.R.D. 420 (S.D.N.Y. 2008) ...........................................................................24

*Kulhawik v. Holder*,
 571 F.3d 296 (2d Cir. 2009)...................................................................................12

*Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*,
 879 F. Supp. 2d 243 (E.D.N.Y. 2012) ...................................................................21

*Lowey Dannenberg Cohen PC v. Dugan*,
 249 F.R.D. 67 (S.D.N.Y. 2008) .............................................................................13

*Martinez v. Feliks & Son Storage Tank Corp.*,
 No. 21-CV-03613, 2022 U.S. Dist. LEXIS 199013 (E.D.N.Y. Nov. 1, 2022).................13, 14

*New York v. Green*,
 420 F.3d 99 (2d Cir. 2005)................................................................................13, 24

*Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*,
 94 F.3d 747 (2d Cir. 1996).....................................................................................20

*Pall Corp. v. Entegris, Inc.*,
 249 F.R.D. 48 (E.D.N.Y. 2008)..............................................................................25

*SEC v. Credit Bancorp, Ltd.*,
 738 F. Supp. 2d 376 (S.D.N.Y. 2010).....................................................................17

*State Farm Mut. Auto. Ins. Co. v. Cohan*,
 No. 09-CV-2990, 2010 U.S. Dist. LEXIS 21376 (E.D.N.Y. Mar. 8, 2010),
 *aff'd*, 409 F. App'x 453 (2d Cir. 2011)..................................................................24

*State Farm Mut. Auto. Ins. Co. v. Grafman*,
 655 F. Supp. 2d 212 (E.D.N.Y. 2009) ...................................................................22

*State Farm Mut. Auto. Ins. Co. v. Mallela*,
 4 N.Y.3d 313 (2005) ..........................................................................................16, 20

*Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic Republic*,
    No. 10-CV-5256, 2011 U.S. Dist. LEXIS 103378 (S.D.N.Y. Sept. 13, 2013) ........................11

*Trisura Ins. Co. v. Bighorn Constr. & Reclamation, LLC*,
    No. 23-CV-11053, 2024 WL 1658853 (S.D.N.Y. Apr. 17, 2024) ..........................................24

*In re Tyson*,
    No. 03-41900, 2007 Bankr. LEXIS 2832 (Bankr. S.D.N.Y. Aug. 17, 2007) .........................15

*United States v. One Hundred Sixty-Eight Thousand Fifty-Two Dollars & Twenty-Five Cents*,
    No. 14-CV-4219, 2016 U.S. Dist. LEXIS 34939 (E.D.N.Y. Mar. 16, 2016) .........................14

*Wyler v. United States*,
    725 F.2d 156 (2d Cir. 1983)........................................................................................14

## Statutes

18 U.S.C. § 1962 ............................................................................................................20

28 U.S.C. § 2201 ............................................................................................................20

28 U.S.C. § 2202 ............................................................................................................20

N.Y. Pub. Health L. §238-a ....................................................................................4, 16, 21

N.Y. Pub. Health L. §238-a(1)(a) .......................................................................................21

N.Y. Pub. Health L. §238-a(1)(b) .......................................................................................21

## Other Authorities

11 NYCRR § 65-3.16 ........................................................................................................20

Fed. R. Civ. P. 55(c) ........................................................................................................11

Fed. R. Civ. P. 72(a) ..........................................................................................................1

Local Civ. R. 7.1(a)...........................................................................................................11

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiff American Transit Insurance Company ("ATIC") respectfully submits this Objection to the Report and Recommendation of Magistrate Judge Cheryl L. Pollak, dated August 27, 2024, (ECF No. 77, the "R&R") concerning Defendant Bradley Pierre's ("Pierre") Motion to Vacate the Certificate of Default against him.

## PRELIMINARY STATEMENT

This suit arises out of a wide-ranging no-fault insurance criminal conspiracy that Defendants perpetrated, some of whom have pled guilty to crimes, including Pierre. After being served with the summons and complaint, a motion for preliminary injunction, a certificate of default, and a motion for default judgment, Pierre finally decided to appear over four months after the complaint was served on him. Pierre nonetheless demanded that ATIC unconditionally consent to vacatur of the default that was issued against him two months earlier. During a status conference, the Magistrate directed the parties to determine if they could agree to an amount of ATIC's legal expenses caused by the default that Pierre would pay, and if they could not agree, Pierre would have to move to vacate the default. After the parties could not agree, rather than follow the Magistrate's directive, Pierre filed a motion for an extension of time to file an answer to ATIC's complaint as if he were not in default. ATIC was forced to oppose that motion and the Magistrate denied it as procedurally improper.

Pierre then moved to vacate the default but did not submit his own declaration. Rather, Pierre's motion consisted of a memorandum of law and two attorney declarations, the latter of which did not address the reasons why Pierre defaulted or his alleged meritorious defenses. ATIC opposed the motion. On August 27, 2024, Magistrate Judge Pollak issued the R&R, finding that Pierre had established good cause for vacating the certificate of default, and recommending that the Court grant Pierre's motion, but that he should pay ATIC's reasonable fees and expenses in

addressing the default, with the amount to be later determined.  ATIC objects to the R&R for the following reasons:

*First*, the Magistrate Judge failed to apply the correct burden of proof on a motion to vacate a default certificate.  Pierre, as a defaulting defendant, has the burden to produce evidence that: his default was not willful, he has meritorious defenses to the claims, and ATIC is not prejudiced. Yet, in determining Pierre had satisfied his burden, and without facts set forth in a declaration, the Magistrate Judge relied on assertions in a legal brief that have no evidentiary value. They should not have been considered as fact, much less relied upon in concluding that Pierre had not willfully defaulted and that he had demonstrated facts that would establish a meritorious defense. (ECF No. 77 at 7-11.) The Magistrate Judge further erred in improperly shifting the burden of proof to ATIC to make a *prima facie* showing of its claims in order to defeat Pierre's motion. (*Id*. at 11-13.) ATIC had no burden to prove its claims in opposition to a motion to vacate a default.  The Magistrate's finding in this regard also runs counter to this Court's decision on ATIC's preliminary injunction motion that ATIC had demonstrated a likelihood of success on the merits of its claims.

*Second*, the Magistrate Judge erred in finding that Pierre's default was not willful. Pierre himself failed to provide any explanation whatsoever for his failure to timely respond to the complaint; instead, his lawyer argued reasons in the moving brief.  Even if the Court were to consider these unsworn assertions, they still do not, as a matter of law, demonstrate a lack of willfulness.  There is no explanation why Pierre or his multiple lawyers in related litigation (including in this District) did not communicate with plaintiff's counsel, even to seek an extension of time to respond, which ATIC repeatedly granted to Pierre's co-defendants.

*Third*, contrary to well-established Second Circuit precedent, the Magistrate Judge erroneously found that Pierre's conclusory and unsworn denials of ATIC's allegations constitute

facts that would establish a meritorious defense in this action.  In fact, Pierre failed to submit any evidence that would satisfy this critical requirement for vacatur.  The Magistrate further erred in disregarding the legal significance of the allocutions of Pierre and Defendant William A. Weiner, D.O. in the *United States v. Bradley Pierre*, Case No. 22-cr-00019-PGG (S.D.N.Y.) (the "Criminal Action") which demonstrate Pierre has no meritorious defense to ATIC's claims.  During his allocution, Pierre acknowledged (by confirming that he did not dispute the statement of facts the District Court presented), that he: (a) agreed "to unlawfully own and run clinics in the New York area" including Defendant Rutland Medical P.C. ("Rutland"); (b) "used control of the Clinics for personal profit", (c) "exercised substantial control over" Defendant Nexray Medical Imaging, P.C. d/b/a Soul Radiology Medical Imaging's ("Nexray") and (d) "hid his control over several of the Clinics and Nexray using phony loan agreements." (ECF No. 74-2 at 20-22.)  Pierre further acknowledged that he agreed with Rutland, Nexray and others to defraud insurance carriers out of millions of dollars by steering patients to them for unnecessary treatment and by bribing medical officers and others to obtain those referrals.  (*Id.* at 21-24.)

Not only did the Magistrate disregard these key admissions in crediting Pierre's contention that "he did not own, control or operate either Rutland or Nexray" and therefore their insurance claims were "legitimately" made (ECF No. 77 at 10), the Magistrate also overlooked the law that a criminal case allocution acts as an estoppel against the defendant and that Pierre is bound by his allocution here.  This Court recognized as much in holding in the preliminary injunction decision/order that Pierre's and Weiner's allocutions were legally binding on them and provided strong evidence that ATIC would likely succeed on the merits of the claims in this action.

The Magistrate Judge did correctly recommend that to address any prejudice caused to ATIC, the Court should order Pierre to pay the reasonable legal fees and expenses that ATIC

incurred in dealing with Pierre's default.  The Court should make clear that, as is provided in the case law cited by the Magistrate Judge and in other authorities, vacating the default and Pierre's participation in the case is conditioned on paying those determined fees and expenses.

Accordingly, ATIC respectfully requests that the Court reject the R&R and deny Pierre's motion, as he failed to meet his burden of proof, or, alternatively, clarify that the vacatur of the default is conditioned upon Pierre paying ATIC's reasonable fees and expenses.

## FACTUAL BACKGROUND

### A.    The Wide-Ranging No-Fault Conspiracy and Pierre's Default in Appearance

On January 17, 2024, ATIC filed its complaint.  (ECF No. 1.)  As detailed in the complaint, Rutland and Nexray submitted thousands of fraudulent no-fault claims seeking payment from ATIC for services that were either medically unnecessary or never performed and that are, in any event, invalid because those providers were owned and controlled by an unlicensed person— Defendant Pierre—in violation of New York law.  (*See, e.g., id.* at ¶¶ 6, 7, 10, 22, 35, 77, 85, 427, 434, 458.)   ATIC asserted claims against all of the defendants, including Pierre, for (1) a declaratory judgment that defendants had and have no right to receive insurance payments from ATIC because, among other things, Rutland and Nexray are owned or controlled by Pierre, and thus ineligible for such payments under New York law; (2) violations of the Racketeer Influenced and Corrupt Organizations Act; (3) violations of New York Public Health Law § 238-a; (4) fraud, and (5) unjust enrichment.  (*Id.* at ¶¶ 459-524.)

On January 24, 2024, ATIC personally served Pierre.  (ECF No. 14.)  By February 23, 2024, Pierre still had not responded to the complaint and his time to do so lapsed. ATIC then applied for a certificate of default against Pierre. (ECF No. 20.)  On March 1, 2024, the Clerk of the Court issued the certificate and entered a default against Pierre. (ECF No. 22.)  On April 25, 2024, ATIC served on Pierre the certificate and its motion for default judgment. (ECF No. 46.)

**B.      The Court Finds Likelihood Success on the Merits and Grants ATIC a Preliminary Injunction Against Rutland and Nexray**

On March 15, 2024, ATIC moved for a preliminary injunction against Rutland and Nexray, seeking (a) a stay of pending no-fault insurance collection arbitrations and lawsuits against ATIC and enjoining them and anyone acting on their behalf from prosecuting such proceedings, and (b) to enjoin them (and anyone acting on their behalf) from initiating any further no-fault insurance collection arbitrations or lawsuits against ATIC, all pending a determination of ATIC's declaratory judgment claim.  (ECF Nos. 25-27.)  ATIC then served copies of its motion papers on Pierre.  (ECF Nos. 30-31.)

On May 16, 2024, over Nexray's and Weiner's opposition, the Court issued its decision and order granting the motion in part. (ECF No. 52.)  Relying on Pierre and Weiner's "sworn statements" in the Criminal Action, the Court determined that "it is likely that plaintiff will demonstrate that Rutland and Nexray were not eligible to receive no-fault reimbursements in New York."  (*Id.* at 3.)  The Court noted Pierre's admission that "he agreed with others to falsely represent that Rutland was owned and operated by licensed medical practitioners, when it was in fact run and owned by Mr. Pierre."  (*Id.* at 5.)  The Court recited Pierre's acknowledgement during his allocution that:

> (i) he is not a licensed medical provider, . . . ; (ii) he agreed with others to unlawfully own and run medical clinics, including Rutland, . . . ; (ii) he knew that medical clinics were unable to bill insurance companies for no-fault benefits if they were controlled by non-physicians, . . . ; (iii) he nevertheless agreed with others to submit bills to insurance companies and falsely represented that the clinics were owned and operated by licensed medical practitioners, . . . ; (iv) he coached medical practitioners to lie during examinations under oath about the ownership, control, and finances of the clinics, . . . ; (v) he used his control of the clinics to steer patients to seek MRIs at Nexray, a medical facility over which he also exercised substantial control, . . . ; (vi) Mr. Pierre agreed with Dr. Weiner that Dr. Weiner would falsely report injuries in MRI reports and that Dr. Weiner would lie about Mr. Pierre's role in Nexray, . . . ; (vii) Mr.

> Pierre agreed to pay bribes to hospital employees, 911 dispatchers, and others who would help induce victims to receive medical treatment at Rutland and other clinics, . . . ; and (viii) Mr. Pierre agreed to bribe medical officers to send patients to Nexray for MRIs.

(*Id.* at 3-4 (citations omitted).)   The Court also noted that Weiner "admitted that he made false statements under oath about Mr. Pierre's role in his medical practice, Nexray, to obtain reimbursements from insurance companies." (*Id.* at 4.)   Specifically, the Court noted Weiner's acknowledgements that:

> he both had an "overall understanding with Mr. Pierre" and "a more specific agreement with the attorney representing [him] during the examination under oath" that Dr. Weiner would "falsely minimize [Mr. Pierre's] role in [Dr. Weiner's] medical practice in order to facilitate claim reimbursement." . . . When asked whether he was "saying that the attorney was aware that as a result of Bradley Pierre's role in your medical practice, that it was not lawful to obtain medical reimbursement from the insurance company?" Dr. Weiner replied, "[t]hat's fair to say, your Honor." . . . While Dr. Weiner equivocated as to whether he "understood at the time" that Dr. Pierre's involvement in his practice made Nexray ineligible to obtain no-fault reimbursements, . . . Dr. Weiner's admissions, along with Mr. Pierre's comprehensive allocution, make it likely that plaintiff will succeed in proving that Nexray and Rutland were ineligible to recover no-fault benefits from America Transit

(*Id.* at 4.)

The Court preliminarily enjoined Rutland and Nexray and anyone acting on their behalf from filing additional no-fault arbitrations and lawsuits against ATIC and from prosecuting no-fault arbitrations against ATIC during the pendency of this action.  (*Id.* at 1.)  The Court declined to enjoin them from further prosecuting pending state court suits, holding that the Anti-Injunction Act precludes such relief. (*Id.* at 1.)

C.      **ATIC Moves for a Default Judgment Against Pierre**

On April 9, 2024, having still not heard from Pierre, ATIC moved for a default judgment

against him. (ECF Nos. 34-39.)[1] On April 25, 2024, ATIC personally served Pierre with its motion

papers.  (ECF No. 46.)  Pierre failed to appear by the time his opposition to the motion was due.

On May 29, 2024, over a month after ATIC moved for default judgment, Pierre's attorneys,

the Law Office of Cary Scott Goldinger P.C., filed a notice of appearance in this action.  (ECF No.

55.)  Since March 12, 2024, Mr. Goldinger had been representing Pierre's company, MRC, in a

state court interpleader action, *The Russell Friedman Law Group, LLP f/k/a Russell Friedman and*

*Associates, LLP v. Rutland Medical P.C. and Medical Reimbursements, Inc.*, Index No.

621026/2023 (Sup. Ct. Nassau Cnty.) (the "RF Action"), to determine rights in no-fault payments

to Rutland that plaintiff allegedly held.  (ECF No. 74-1 at ¶ 6.)  On May 30, 2024, Mr. Goldinger

emailed ATIC's counsel requesting that ATIC withdraw its "pending application for a certificate

of default" (which had already been issued over two months earlier) and "agree to an extension of

time [for Pierre] to answer." (ECF No. 74-9.) Pierre's counsel did not explain why Pierre was in

default or had not contacted ATIC before that date.  (*Id.*)

Nor did his counsel explain why Pierre had been actively defending a similar case in this

Court—*Allstate Insurance Company, et al. v. Bradley Pierre, et al.*, Case No. 1:23-cv-06572-

NGG-LB (E.D.N.Y.) (the "Allstate Action")—since October 12, 2023,[2] but had not bothered

responding in this one.  At the time Pierre received service of the complaint in this action, he was

being represented by Mintz & Gold, LLP in the Allstate Action.  (ECF No. 74-1 at ¶ 5.)  On

February 8, 2024, Mintz & Gold moved to withdraw as counsel for Pierre, two weeks after ATIC

---

[1] ATIC also moved for a default judgment against Rutland, which has yet to appear.

[2] Pierre appeared in the Allstate Action on October 12, 2023 (ECF No. 20-21), filed his answer on November 13, 2023 (ECF No. 36) and filed a status report on January 31, 2024 (ECF No. 50).

served Pierre with the complaint in this action.  (*Id.*)  By Court order dated February 12, 2024, that firm was relieved as counsel to Pierre in the Allstate Action.  (*Id.*)  Mintz & Gold was also representing Pierre's company, MRC, in a state court action, *Leon Kucherovsky, Esq. v. Rutland Medical P.C. and Medical Reimbursement Consultants, Inc.*, Index No. 609430/2023 (Sup. Ct. Nassau Cnty.) (the "Kucherovsky Action").  (ECF No. 74-1 at ¶ 6.)  Demonstrating that Pierre's counsel knew about this case, ATIC referenced it in the Kucherovsky Action as a reason for its right to intervene to recover funds fraudulently paid to Rutland that Pierre's wholly-owned company MRC had claimed.  (ECF No. 74-8 at 4.)

Moreover, since January 2022, Pierre has been represented in the Criminal Action by another attorney, Roland G. Riopelle of Sercarz & Riopelle, LLP.  Mr. Riopelle appeared for Pierre at his January 12, 2022 arraignment (ECF No. 74-4), December 18, 2023 allocution (ECF No. 74-2), and June 3, 2024 sentencing.  (ECF No. 74-5.)  Mr. Goldinger's May 30, 2024, email to ATIC's counsel also did not explain why neither he—who had appeared for MRC in the RF Action on March 12, 2024, and for Pierre in the Allstate Action on April 16, 2024—nor Mintz & Gold, nor Mr. Riopelle contacted ATIC to request an extension of time for Pierre to respond in this action.

In response to Mr. Goldinger's email, ATIC's counsel stated that ATIC would not agree to lift the default unless Pierre paid ATIC the legal expenses he caused it to incur in addressing the default.  (ECF No. 74-1 at ¶ 9.)  The parties were unable to reach such an agreement.  (*Id.* ¶ 11.)

### D.   The Magistrate Orders Pierre Either to Pay ATIC's Agreed Costs of the Default and Motion, or to Move to Vacate the Default, But Pierre Does Neither

The Magistrate held an Initial Conference on June 12, 2024. (June 13, 2024 Minute Entry.) As discussed during the conference, the Magistrate issued an order requiring Pierre "to either arrange with plaintiff to pay costs of default judgment motion or file [a] motion to vacate."  (*Id.*) ATIC's counsel advised Pierre's counsel that it would stipulate to lifting the default if Pierre paid

it $40,000, approximately half ATIC's fees and expenses incurred to that point to obtain the certificate of default and move for the default judgment (the other half allocable to Rutland's default). (ECF No. 74-1 at ¶ 10.) On June 19, 2024, rather than agree to pay that sum, and ignoring both the Magistrate's order and his own default, Pierre filed a letter motion for an extension of time to file an answer to the complaint. (ECF No. 61.) ATIC was forced to oppose that letter motion. (ECF No. 63.)

On July 19, 2024, the Magistrate denied Pierre's letter motion, noting that "Pierre has not complied with the basic filing requirements set out in the Local Civil Rules" and "Pierre's letter motion is substantively inadequate to be construed as a formal motion to vacate." (ECF No. 69 at 5.) The Magistrate explained that Pierre's letter motion was also deficient because it did "not address whether he 'made diligent efforts to reach out to various attorneys to engage them' following service of the complaint, as is relevant to the question of willfulness." (*Id.* at 4 (citation omitted).) Moreover, Pierre did not "demonstrate a sufficiently meritorious defense by 'presenting evidence of facts that, if proven at trial, would constitute a complete defense.'" (*Id.* (citation omitted).) The Magistrate noted that Pierre's general denial of "all substantive allegations against him in his [proposed] answer" and his "assert[ion of] numerous affirmative defenses" (*id.* at 5 (citing ECF No. 61 at 3)) is "not enough to warrant vacating the default in the absence of 'any evidence to contradict plaintiff's factual allegations.'" (*Id.* (citation omitted).) The Magistrate granted Pierre one final opportunity to move to vacate the default. (*Id.*)

### E.   Pierre's Motion to Vacate the Default

On July 26, 2024, Pierre filed his Motion to Vacate Certificate of Default. (ECF No. 73.) In support of the motion, Pierre did not submit his own declaration, rather a memorandum of law (ECF No. 73-3) and two attorney declarations. The Declaration of Cary Scott Goldinger (ECF No. 73-1) merely attaches a copy of the complaint (ECF No. 73-4), a copy of the Certificate of

Default (ECF No. 73-5), and a proposed Answer (ECF No. 73-6). The Declaration of Roland G. Riopelle states that Pierre "was charged in a multi-defendant case with a series of different federal crimes" including "health care fraud charges which were based on a Mallela type theory." (ECF No. 73-2 at ¶ 3.) It further states Pierre "never pled guilty to the health care fraud charges against him," he "pled guilty only to a bribery charge and a tax evasion charge," and the "healthcare fraud charges against Pierre were ultimately dismissed." (*Id.* at ¶¶ 5-6.) Neither declaration addresses (a) whether Pierre "made diligent efforts to reach out to various attorneys to engage them following service of the Complaint" (ECF No. 69 at 4) nor (b) any defenses Pierre has to ATIC's claims, nor (c) lack of prejudice to ATIC. ATIC opposed the motion. (ECF No. 74.)

On reply, Pierre submitted another attorney declaration from Mr. Goldinger. (ECF No. 75.) That declaration attaches a UCC Financing Statement (ECF No. 75-1) purportedly evidencing Rutland and Moy's indebtedness to Pierre's company MRC, which, as Pierre acknowledged during his December 18, 2023 allocution in the Criminal Action, he used "in connection with the healthcare fraud and bribery schemes." (ECF No. 74-4 at 24:7-10.) The declaration also attaches a Decision and Order by New York State Supreme Court Justice Thomas Rademaker in the RF Action, which orders, in view of the "criminal allegations pending before the United States District Court" involving Rutland, Moy, and Pierre, that the disputed res is to be deposited with that court. (ECF No. 75-2 at 3.)

Pierre's vacate motion was referred to Magistrate Judge Pollak to prepare a Report and Recommendation. (Electronic Order, dated August 6, 2024.) On August 27, 2024, the Magistrate issued the R&R recommending that the District Court grant Pierre's motion, but ordered Pierre to pay ATIC's reasonable fees and costs incurred in addressing Pierre's default.

## ARGUMENT

**I.     THE MAGISTRATE JUDGE ERRONEOUSLY
        FOUND THAT PIERRE SATISFIED HIS BURDEN OF PROOF**

Rule 55(c) permits the Court to set aside an entry of default for "good cause." Fed. R. Civ.

P. 55 (c).  Under this standard, a court must weigh (1) the willfulness of default, (2) the existence

of any meritorious defenses, and (3) prejudice to the non-defaulting party.  *See Guggenheim Cap.,*

*LLC v. Birnbaum*, 722 F.3d 444, 454-55 (2d Cir. 2013).  The "[t]he party seeking relief from an

entry of default bears the burden of proof" on a motion to vacate a default (ECF No. 77 at 4 (citing

*Aetna Life Ins. Co. v. Licht*, No. 03-CV-6764, 2004 U.S. Dist. LEXIS 21538, at *11 (S.D.N.Y.

Oct. 25, 2004)), and must submit "evidence sufficient to meet its burden of proof."  *CIT Bank,*

*N.A. v. Ji Youn Min*, No. 14-CV-6793, 2016 U.S. Dist. LEXIS 102694, at *5 (S.D.N.Y. Aug. 3,

2016) (referencing prior order); *see also* Local Civ. R. 7.1(a) (motion to vacate default requires

"[s]upporting affidavits and exhibits thereto containing any factual information and portions of the

record necessary for the decision of the motion").  The Magistrate failed to apply this standard.

As a result, the Magistrate erroneously concluded that Pierre had satisfied his burden.

**A.     The Magistrate Judge Erred in Relying on Unsworn Assertions**

As mentioned, Pierre failed to submit his own fact declaration and instead submitted

declarations of two of his attorneys, neither of whom claim to have firsthand knowledge of Pierre's

purported defenses.  *See Thai Lao Lignite (Thailand) Co. v. Gov't of the Lao People's Democratic*

*Republic*, No. 10-CV-5256, 2011 U.S. Dist. LEXIS 103378, at *14 (S.D.N.Y. Sept. 13, 2013)

("Statements in an attorney's affidavit not based on personal knowledge are not entitled to

evidentiary weight").  Nor do either of these declarations address the facts meeting the three

elements necessary for a vacatur: (1) excuse for the default, (2) meritorious defense, (3) no

prejudice to the opposing party.  Those elements were addressed in Pierre's brief, but it has no

evidentiary value. *See Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence.") Yet, the Magistrate erroneously credited the brief's unsworn assertions as fact to support her findings. (ECF No. 77 at 7-13.) Because Pierre failed to offer any probative evidence in support of his motion, the Magistrate Judge should have recommended to deny the motion.

**B.      The Magistrate Judge Erred by Shifting Pierre's Evidentiary Burden to ATIC to Prove Its Claims**

After reciting Pierre's counsel's arguments about the merits of ATIC's claims (ECF No. 77 at 10), the Magistrate Judge turned to ATIC's obligation to plead and prove its claims in the case, indicating first that "plaintiff must 'allege facts that give rise to a strong inference of fraudulent intent'" and that "plaintiff has the burden of proving all of the elements of a RICO and a RICO conspiracy claim in order to recover in this case and simply referring to the plea allocution is not enough." (ECF No. 77 at 13, citing and quoting cases.) The Magistrate then stated: "the Court finds that a factfinder will have to determine whether plaintiff can satisfy all of the elements required, as well as Pierre's assertions that he did not own control, or operate Rutland and Nexray medical facilities." (*Id.*) Based on this supposed lack of definitive proof one way or the other, the Magistrate found "that Pierre has adequately established the existence of a meritorious defense." (*Id.*) In so finding, the Court erred in basing its ruling on a burden that ATIC might later carry. A plaintiff opposing a motion to vacate a default judgment need not prove its claims. *See Grp. One Ltd. v. Gmbh*, 625 F. Supp. 3d 28, 58 (E.D.N.Y. 2022) (rejecting report of recommendation that in evaluating whether defaulting defendant has meritorious defense, "improperly shift[ed] the burden to Plaintiff" to prove the validity of its patents). Rather, "the defaulting defendant bears the burden of offering evidence sufficient to establish a complete defense." *Geis Constr. S., LLC v. Delahunt*,

No. 20-CV-3834, 2023 U.S. Dist. LEXIS 56955, at *22 (E.D.N.Y. Mar. 31, 2023) (denying motion to vacate default).

## II.     THE MAGISTRATE ERRONEOUSLY FOUND THAT PIERRE'S DEFAULT WAS NOT WILLFUL

### A.     The Magistrate Judge Erroneously Relied on Unsworn Statements as Satisfying Pierre's Burden

Willfulness includes conduct that is "not satisfactorily explained." *Kauhsen v. Aventura Motors, Inc.*, No. 09-4114, 2010 U.S. Dist. LEXIS 55554, at *13 (E.D.N.Y. June 7, 2010) (denying motion to vacate default judgment) (citation omitted); *New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005) (affirming District Court's finding of willfulness where defendants "offered no explanation for their counsel's failure to appear or seek any extension of time to respond to the complaint" nor "any justification for their failure to take action after receiving notice that the clerk had entered a default against them").  An explanation must be supported by admissible evidence such as a sworn declaration to be adequate. *See Car-Freshner Corp. v. Scented Promotions, LLC*, No. 19-CV-1158, 2020 U.S. Dist. LEXIS 42902, at *9 (N.D.N.Y. Mar. 12, 2020) (finding willfulness where defendant failed to submit affidavit explaining default and instead relied on counsel's statements in legal brief); *Dixon v. Ragland*, No. 03-CV-0826, 2005 U.S. Dist. LEXIS 23800, at *23 (S.D.N.Y. Oct. 14, 2005) (concluding that defendants "have not provided any evidence" to demonstrate "that their defaults were not willful"); *Lowey Dannenberg Cohen PC v. Dugan*, 249 F.R.D. 67, 69-70 (S.D.N.Y. 2008) (finding willfulness where defendants "have offered no explanation at all under oath," rendering their "unsworn excuse, to put it more charitably than it deserves, 'flimsy'").[3]  This case is no different.

---

[3] The cases cited in the R&R confirm this requirement. (*See* ECF No. 77 at 6-9.)  For example, in *Bank of N.Y. Mellon v. Hatter*, the defendants submitted affidavits explaining their default.  No. 14-CV-1024, 2017 U.S. Dist. LEXIS 238669, at *4-5 (E.D.N.Y. Dec. 21, 2017).  In *Aetna Life Ins. Co. v. Licht*, the district court found the "explanations" set forth in defendant's counsel's declaration to be "plausible and acceptable" and concluded that defendants' default was not willful.  No. 03-CV-6764, 2004 U.S. Dist. LEXIS 21538, at *12 (S.D.N.Y. Oct. 25, 2004).  In *Martinez v.*

The Magistrate Judge found that Pierre's default was not willful based on (and quoting) the following unsworn assertions that Pierre's attorney made in the moving brief:

- "after receiving notice of the lawsuit, [Pierre] promptly began searching for counsel to represent him on the matter" (ECF No. 77 (citing ECF No. 73-3 at 8));

- Pierre "attempted to negotiate with his original counsel to continue to represent him" and simultaneously "reached out to several [other] attorneys to discuss engaging their services" (*id.* (quoting ECF No. 73-3 at 8));

- "as soon as he was able to secure his current counsel, his counsel promptly moved to work with plaintiff's attorney to vacate the default and allow for an answer to be filed." (*id.*);

- Pierre "was unable to find counsel while there were motions pending from an existing attorney to be relieved and it was not a simple process to find new counsel" (*id.*);

- "even while he was still represented in his other cases by his previous counsel, [Pierre] began the process of contacting other attorneys." (*Id.*)

None of these assertions appears in sworn statements, or even in contemporaneous correspondence.[4]  Because Pierre's purported explanations were not evidence, but argument, they should not have been considered as a basis for a reasonable excuse.  *See Kiobel v. Royal Dutch Petroleum Co.*, No. 02-CV 7618, 2005 U.S. Dist. LEXIS 16514, at *8 (S.D.N.Y. Aug. 11, 2005) ("Defendants have, however, failed to submit an affidavit or an affirmation to support these statements, and, thus, their statements have no evidentiary weight");  *United States v. One Hundred Sixty-Eight Thousand Fifty-Two Dollars & Twenty-Five Cents*, No. 14-CV-4219, 2016 U.S. Dist.

---

*Feliks & Son Storage Tank Corp.*, the district court relied on the defendant's affidavit and "testimony" in concluding that defendant's default was not willful.  No. 21-CV-03613, 2022 U.S. Dist. LEXIS 199013, at *16 (E.D.N.Y. Nov. 1, 2022).  Pierre submitted no such evidence.

[4] These unsworn statements are also deficient because they concern purported events that occurred before defense counsel's appearance on May 29, 2024 without explanation of how he has firsthand knowledge of them.  *Accord Wyler v. United States*, 725 F.2d 156, 160 (2d Cir. 1983) (an attorney affidavit "which does not contain specific facts or is not based on first-hand knowledge is not entitled to any weight").

LEXIS 34939, at *17 (E.D.N.Y. Mar. 16, 2016) ("unsworn statements in a brief do not constitute evidence").

**B.      Counsel's Offered Explanations Do Not Establish a Lack of Willfulness**

Even if the Court were to consider Pierre counsel's unsworn statements, they do not support the Magistrate's conclusion to "reasonabl[y] assume that Pierre's failure to respond in a timely manner was a matter of negligence or confusion, rather than willfulness." (ECF No. 77 at 9.) Defense counsel does not claim that Pierre's failure to respond to the complaint was a mistake. He does not even claim that Pierre was confused. Pierre admits he was served with the complaint in this action (while being represented by counsel in other lawsuits, including one in this District with a nearly identical fact pattern).

Additionally, Pierre's failure to proceed *pro se* or to contact plaintiff's counsel directly after being served with multiple papers in this action over the course of four months or while "attempt[ing] to negotiate with his original counsel to continue to represent him" (ECF No. 77 at 7) cannot be explained by negligence. *See Allstate Ins. Co. v. Mirvis*, No. 08-CV-4405, 2015 U.S. Dist. LEXIS 44669, at *9-10 (E.D.N.Y. Mar. 31, 2014) (finding willful default where defendant "does not explain why he has not acted *pro se* to file an answer or defend himself in this action"); *In re Tyson*, No. 03-41900, 2007 Bankr. LEXIS 2832, at *13 (Bankr. S.D.N.Y. Aug. 17, 2007) (finding default willful where, among other things, plaintiffs claimed lack of funds to defend but did not seek to proceed *pro se*); *Fed. Election Comm'n v. Beatty for Cong. Comm.*, No. 86-CV-3894, 1987 U.S. Dist. LEXIS 9642, at * 5 (S.D.N.Y. Oct. 23, 1987) (noting that "a party may not decide *ex parte* that it is justified in not defending an action because of lack of funds" (internal quotation marks and citation omitted)). Rather, Pierre's conduct indicates studied avoidance.

Finally, the Magistrate Judge erred in concluding there was no willfulness based on the finding that Pierre's was "initial[ly] willing[] to negotiate" to pay the ATIC its costs and fees

incurred in seeking the default.  (ECF No. 77 at 7.)  There is no record support for this finding.

Pierre did not offer ATIC to pay its costs and fees; rather, defense counsel first demanded that

ATIC consent to vacate the default without offering anything.  (ECF No. 74-9.)  It was only after

ATIC requested reimbursement that Pierre's counsel asked ATIC to provide a number to pay.

(ECF No. 74-1 at ¶ 9-10.)  Neither Pierre nor his counsel ever stated that Pierre was willing to pay

ATIC any amount in counsel fees, much less the $40,000 ATIC requested.  (*Id.* ¶ 11.)

In short, Pierre provides no valid explanation for failing to respond to the complaint.  The

Magistrate Judge erred in finding he did, and that Pierre's default was not willful.

## III.   THE MAGISTRATE ERRONEOUSLY FOUND THAT PIERRE DEMONSTRATED THE EXISTENCE OF A MERITORIOUS DEFENSE

ATIC sues Pierre for a declaratory judgment, violations of RICO, violations of New York

Public Health Law § 238-a, fraud, and unjust enrichment.  These claims are predicated on, among

other wrongful acts and omissions, Pierre's unlawful ownership and control of Rutland and

Nexray.  *See State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313 (2005).  During his allocution

in the Criminal Action, Pierre acknowledged (by stating he did not dispute the facts of) his

surreptitious ownership and control of Rutland and Nexray.  It is unlawful in New York for Pierre

to own or control either provider and, consequently, as a matter of law, any no-fault claims of such

providers are invalid.  *Id.*  Based on Pierre's acknowledgment of these facts, this Court entered a

preliminary injunction against Rutland and Nexray, concluding it was "likely that plaintiff will

demonstrate that Rutland and Nexray were not eligible to receive no-fault reimbursements in New

York" (ECF No. 52 at 3) and that in particular, "Pierre's role in Rutland and Nexray made those

companies ineligible to receive no-fault benefits." (*Id.* at 5.)

Despite the criminal allocution and the findings of this Court, the Magistrate Judge

nevertheless found that Pierre "adequately established the existence of a meritorious defense."

(ECF No. 77 at 13.)  This finding is erroneous for three reasons.  First, the Magistrate Judge overlooked the legal significance of Pierre's acknowledgement of the facts providing a basis for liability here, which establish that Pierre has no meritorious defense.  Second, the Magistrate overlooked that Pierre had failed to identify any facts that would establish the existence of a meritorious defense to ATIC's claims. Third, as discussed above, the Magistrate reached the finding of a meritorious defense, only after shifting the burden to ATIC to provide *prima facie* proof of its claims.

### A.    The Magistrate Erred by Discrediting Pierre's Allocution of Guilt

The Magistrate Judge credited Pierre's argument that because he pled guilty to Travel Act bribery and tax fraud and not health care fraud, the Criminal Action proceedings were immaterial. According to Pierre, because the two counts to which he pled guilty did not match the civil claims in this case, ATIC's claims start on a fresh slate of proof, which ATIC had not presented, and which Pierre was free to deny. (ECF 77 at 10-13.)  The Magistrate erred in accepting Pierre's reasoning.

First, the Magistrate erroneously overlooked the law that criminal allocutions are binding in civil cases.  *See SEC v. Credit Bancorp, Ltd.*, 738 F. Supp. 2d 376, 395-396 (S.D.N.Y. 2010) ("Whether established at plea allocution or at trial, all facts material to the conviction bind the criminal defendant in later civil litigation.") (citation omitted).  Allocutions, like Pierre's here, constitute a collateral estoppel when the facts allocuted underlie the facts of the civil claims.  *See Doe v. Doe*, No. 16-CV-0332, 2017 U.S. Dist. LEXIS 109692, at *34 (S.D.N.Y. July 14, 2017) (given defendant's allocution in criminal action, "[p]rinciples of collateral estoppel render Defendant liable for Plaintiff's injuries, whatever they may be, as a matter of law"); *City of New York v. Pollock*, No. 03-CV-0253, 2006 U.S. Dist. LEXIS 8391, at *13 (S.D.N.Y. Mar. 3, 2006) (applying collateral estoppel to plea allocution admissions and concluding that admissions "satisfy

17

each and every element of a substantive RICO violation"). Contrary to the Magistrate's ruling, there need not be "a precise identity of issues between [a] [p]laintiff's civil claims and [a defendant's] criminal plea" for collateral estoppel to apply to the plea. *Andrade v. Cultural Care, Inc.*, No. 21-CV-5237, 2023 U.S. Dist. LEXIS 222002, at *37 (E.D.N.Y. Dec. 13, 2023) (applying collateral estoppel in civil action for hostile work environment on basis of sex and/or gender, constructive discharge, and intentional infliction of emotional distress to defendant's plea in criminal action for unlawful surveillance and attempt); *Doe*, 2017 U.S. Dist. LEXIS 109692, at *13 ("[i]t is the conduct complained of in both cases . . . that must be identical for purposes of collateral estoppel, not the named cause of action against [d]efendant").

As this Court's found in the preliminary injunction decision, Pierre's acknowledgments in his allocution bind him because they form the predicate of each of ATIC's claims. The Magistrate correctly observed that ATIC must prove the elements of its claims, but erred by not completing the analysis of whether the facts allocuted fit those elements. As discussed in ATIC's opposition (ECF No. 74 at 14-15), Pierre acknowledged the following material facts:

- "From at least in or about 2008, up to and including in or about 2021, the defendant agreed, with others, (collectively, the 'Clinic Controllers') to unlawfully own and run clinics located in the New York area including, among others, . . . Rutland Medical, which are referred to as the 'Clinics'. The defendant knew that Clinics are unable to bill insurance companies for no-fault benefits if the medical facilities are controlled by non-physicians. The defendant, nonetheless, agreed with others to submit bills to insurance companies, falsely representing that the Clinics were owned and operated by licensed medical practitioners, and for medical practitioners to lie under oath during Examinations Under Oath ('EUOs') about the ownership, control, and finances of the Clinics. The defendant personally coached medical practitioners to lie under oath." (ECF No. 74-2 at 20:22-11.)

- "The defendant used his control of the Clinics for personal profit. Between 2008 and 2021, the defendant took over $20 million from the clinics by either transferring the funds directly to bank accounts under his control, or using the Clinics' bank accounts to pay his personal finances. . . ." (*Id.* at 21:12-16.)

- "The defendant used his control of the Clinics, and his managerial role at the law firm, to also steer patients to seek MRIs at a medical facility over which he exercised substantial control, Nexray Medical Imaging, which is referred to as 'Nexray.' The defendant agreed with William Weiner, the purported sole owner of Nexray, that Weiner would falsely report injuries in MRI reports. These falsified injuries allowed the Clinics to bill insurance companies for additional unnecessary medical services and allowed attorneys to falsely claim injuries in lawsuits against insurance companies. The defendant and Weiner agreed that Weiner would lie under oath about the defendant's role in Nexray." (*Id.* at 21:25-22:11.)

- "The defendant hid his control over several of the Clinics and Nexray using phony loan agreements. These agreements claimed that the defendant was making non-recourse loans to the Clinics and Nexray, which would only have to be paid back if the insurance companies paid the medical practices' claims. . . . However, in reality, the defendant took almost $10 million in excess of what these purported loan agreements permitted." (*Id.* at 22:12-20.)

- "The defendant further agreed to pay bribes to fill the Clinics and Nexray with patients. From at least in or about 2015, up to and including 2021, the defendant agreed, with others, to pay bribes to hospital employees, 911 dispatchers, and other individuals collectively referred to as the Lead Sources, for the confidential names and numbers of motor vehicle accident victims." (*Id.* at 22:21-23:2.)

- "The defendant also agreed to bribe medical officers to sent . . . patients to Nexray for MRIs." (*Id.* at 23:25-1.)

- "The defendant utilized two companies in connection with the healthcare fraud and bribery schemes: Medical Reimbursement Consultants, or 'MRC,' and Marketing 4 You or 'M4Y.'" (*Id.* at 24:8-10.)

Moreover, although not referenced in the R&R, Weiner also acknowledged in his allocution that "[d]uring an examination under oath in May of 2017, and during one in February 2021, I falsely minimized Bradley Pierre's role in my medical practice to facilitate the payment of claims." (ECF No. 74-3 at 19:14-17.) When asked by Judge Gardephe whether the attorney who represented him at his EUO [Russell Friedman] was "aware that as a result of Bradley Pierre's role in [his] medical practice, that it was not lawful to obtain medical reimbursement from the insurance company," Weiner responded, "[t]hat's fair to say, your Honor." (*Id.* at 21:6-9.) Weiner also

admitted that he did not disclose to insurance companies Pierre's role in his medical practice because insurance companies would deny payments based on that role. (*Id.* 21:16-22.)

Thus, the Magistrate Judge erred in finding that "there is no evidence in the plea allocution transcript from which it could be determined if the Rutland and Nexray facilities were owned, controlled by, or even associated with Pierre." (ECF No. 77 at 12.)  As shown above, Pierre and Weiner specifically acknowledged that they were.   Moreover, contrary to the Magistrate's findings, these acknowledged facts meet the elements of ATIC's claims, and eliminate Pierre's claim defenses:

*Declaratory Judgment*. ATIC seeks a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that Pierre had and has no right to the paid and unpaid billings to ATIC because, among other things, he, an unlicensed person, unlawfully owned and controlled Rutland and Nexray in violation of New York law. The parties' contentions show there is a "a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996). The Criminal Action proceedings show that Pierre lacks a meritorious defense to ATIC's declaratory judgment claim based on his acknowledgement that he owned and controlled Rutland and Nexray.  *See Mallela*, 4 N.Y.3d 313; 11 NYCRR § 65-3.16.

*RICO*.  To establish a civil RICO claim, a plaintiff must show "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962."  *Allstate Ins. Co. v. Smirnov*, No. 12-CV-1246, 2014 U.S. Dist. LEXIS 127541, at *13-14 (E.D.N.Y. July 21, 2024), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 126179 (E.D.N.Y. Sept. 8, 2014) (citation omitted).  A plaintiff must establish that the defendant, "through the commission of two or more acts constituting a pattern of

racketeering activity, directly or indirectly participated in the affairs of an enterprise involved in interstate commerce." *Id.* (citations omitted).  Pierre's confessed guilt meets this test:

- he owned and controlled professional corporations, including Rutland and Nexray, constituting an enterprise. *See Liberty Mut. Ins. Co. v. Excel Imaging, P.C.*, 879 F. Supp. 2d 243, 274 (E.D.N.Y. 2012) ("RICO requirements are most easily satisfied when the enterprise is a formal legal entity" and "[c]orporations are expressly included in the definition of enterprise");

- he, Rutland, and Nexray participated in a scheme to defraud insurance companies by "by seeking reimbursement they attested, at least implicitly, that their medical clinics were owned and operated by licensed physicians when in fact they were not." *Smirnov*, 2014 U.S. Dist. LEXIS 127541, at *19; *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 371 (E.D.N.Y. 2012) ("a healthcare provider commits fraud if it submits a claim for reimbursement but is fraudulently incorporated because it is owned or controlled by non-physicians"); and

- by submitting bills to insurance companies, including ATIC, between about 2008 and 2021, his scheme involved related "acts of racketeering" with "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Smirnov*, 2014 U.S. Dist. LEXIS 127541, at *19 (citation omitted).

Pierre's conduct clearly constitutes a RICO violation.  *See Smirnov*, 2014 U.S. Dist. LEXIS 127541, at *22.

*New York Public Health Law § 238-a.*  Section 238-a prohibits certain healthcare service providers from referring the performance of services such as x-ray or imaging services and physical therapy to those with whom they have financial relationship.  *See* N.Y. Pub. Health L. §238-a(1)(a).  "In the event that Section 238-a is violated, neither the referring provider nor the provider of the service are entitled to payment from a third-party insurer" such as ATIC. *Cambridge Med., P.C. v. Allstate Ins. Co.*, 899 F. Supp. 2d 227, 232 (E.D.N.Y. 2012) (citing N.Y. Pub. Health L. §238-a(1)(b)).  Pierre acknowledged that he "used his control" of the clinics, including Rutland, "to steer patients to seek MRIs" at Nexray and "agreed with William Weiner, the purported sole owner of Nexray, that Weiner would falsely report injuries in MRI reports"

which "allowed the Clinical to bill insurance companies for additional unnecessary medical services." (ECF No. 74-2 at 21:24-22-8.) This is a paradigmatic § 238-a violation.

*Fraud*.   Under New York law, the elements of a fraud claim are: (1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). As this Court already found in granting ATIC a preliminary injunction, Pierre acknowledged that he unlawfully owned and controlled Rutland and Nexray and sought to collect illegitimate no-fault claims through them by submitting them to insurers, including American Transit, which relied on these claims to pay millions to Pierre.[5] (ECF No. 52 at 4-5.)

*Unjust Enrichment*.   "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution" *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 222 (E.D.N.Y. 2009) (citation omitted). Pierre acknowledged that he unlawfully owned and controlled Rutland and Nexray, which means that under *Malella*, insurance companies, including ATIC, were "not required to pay monies to an improperly licensed P.C." and ATIC "is entitled to recoup such monies through an affirmative unjust enrichment cause of action." *Id.*

The Magistrate further erred by overlooking that even the factual basis for the crimes to which Pierre pled guilty—bribery and tax fraud—provide a basis for a finding of liability on the claims in this action and, thus, eliminate any meritorious defense. In fact, Pierre acknowledged

---

[5] Employing a similar analysis, the New York Supreme Court (Engoron, J.) recently concluded that Pierre's acknowledgement regarding his ownership and control of Rutland demonstrates Rutland's no-fault claims to ATIC were fraudulent and on that basis, vacated an arbitration award in Rutland's favor. *See Am Tr. Ins. Co. v. Rutland Med., PC a/a/o Shareema Raney*, Index No. 652578/2024 at NYSCEF Doc. No. 31 (Sup. Ct. N.Y. Cnty. Sept. 5, 2024) ("Here, [ATIC] has shown that the underlying award was based on fraud by providing, inter alia, the allocution of William[sic] Pierre admitting that he unlawfully owned and operated respondent Rutland, . . . despite not being a medical professional himself. This fraudulent award obviously prejudiced petitioner".)

that he participated in a "healthcare fraud . . . scheme[]" (ECF No. 74-2 at 25:9) and did not dispute any of the allocuted facts "**[a]s part of** the offense conduct for Count Four [i.e. Travel Act bribery] and Seven [i.e. conspiracy to defraud the IRS]." (*Id.* at 20:20-21 (emphasis added).) As shown above, these facts provide the basis for ATIC's claims. For example, Pierre acknowledged that he "agreed to pay bribes"—the bribes that form the basis of the Travel Act bribery count—"to fill the Clinics [including Rutland] and Nexray with patients." (*Id.* at 22:21-22.) He further acknowledged that he "agreed to bribe medical officers to . . . send patients to Nexray for MRIs." (*Id.* at 23:25-1.) ATIC's claims here are likewise grounded on the allegation that Pierre "arranged for a network of No-Fault doctors and attorneys to refer patients to Nexray for medical care—often through bribery—in addition to the No-Fault clinics under his control." (ECF No. 1 at ¶ 86.)

## B. Pierre's Conclusory Denials Do Not Establish the Existence of a Meritorious Defense

As discussed above, aside from criminal defense counsel's observation that Pierre pled guilty to two of multiple crimes charged,[6] Pierre's showing was comprised of assertions made in a legal brief; he failed to identify any required "evidence of facts, that if proven at trial, would constitute a complete defense." *Durso v. Barsyl Supermarkets Inc.*, No. 11-CV-5544, 2016 U.S. Dist. LEXIS 81986, at *8 (E.D.N.Y. June 23, 2016). Pierre failed to offer any evidence in his papers that would refute his acknowledged unlawful ownership or control over Rutland and

---

[6] Pierre made the unsupported assertion that because he pled to two crimes, the Government could not prove the others, suggesting his innocence. (*See* ECF No. 73-3 at 4 (arguing that "after an approximately two (2) year investigation by federal prosecutors, they were unable to prove any of those allegations and/or crimes and ultimately entered into a plea agreement with Mr. Pierre, who never pleaded guilty to the health care fraud charges brought against him. Instead, he only pleaded guilty to a bribe charge and a tax evasion charge.")). Agreeing to plead guilty to two crimes rather than others, means only that: it is part of a plea deal; it does not mean the Government's other claims fail for lack of proof. *See Allstate Ins. Co. v. Mirvis*, No. 08-CV-440, 2015 U.S. Dist. LEXIS 44669, at *10 (E.D.N.Y. Mar. 31, 2015*)* (rejecting defaulting defendant's "bald and unsworn assertion that the 'so called Criminal Enterprise was investigated by State and Federal Government Agencies including IRS audit' and that he was never charged with any misconduct" as meritorious defense). The fact Pierre was sentenced for 10 years for the two crimes to which he pled guilty indicates the gravity of the no-fault insurance conspiracy that he orchestrated. The claims in this action are based on the facts of that conspiracy.

Nexray.  Nor did he try to explain why he told Judge Gardephe that he did not dispute the facts of his ownership and control, but then argued to the Magistrate another set of facts which he claimed provide a defense.  Pierre's denial here was nothing more than a conclusion and does not establish the existence of a meritorious defense.  *See New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) ("defendant must present more than conclusory denials when attempting to show the existence of a meritorious defense"); *State Farm Mut. Auto. Ins. Co. v. Cohan*, No. 09-CV-2990, 2010 U.S. Dist. LEXIS 21376, *9 (E.D.N.Y. Mar. 8, 2010), *aff'd*, 409 F. App'x 453 (2d Cir. 2011) ("simply saying 'I didn't do it,' is not a meritorious defense") (citation omitted).[7]

## IV.   ASSUMING PIERRE HAD OTHERWISE SHOWN A BASIS FOR VACATUR, THE MAGISTRATE JUDGE CORRECTLY CONDITIONED THE VACATUR OF PIERRE'S DEFAULT ON HIS PAYMENT OF ATIC'S FEES AND EXPENSES INCURRED AS A RESULT OF THE DEFAULT

The Magistrate Judge recommended that Pierre be ordered to pay ATIC's reasonable fees and costs associated with litigating the default "in an amount to be determined by the Court at a later date."  (ECF No. 77 at 16.)  Assuming Pierre had shown a basis for vacatur of his default, the Magistrate's recommendation correctly requires payment of such fees and costs as a condition to the vacatur of Pierre's default.  *See Trisura Ins. Co. v. Bighorn Constr. & Reclamation, LLC*, No. 23-CV-11053, 2024 U.S. Dist. LEXIS 69869, at *11 (S.D.N.Y. Apr. 17, 2024) (conditioning vacatur of default on defendant's payment of plaintiff's "reasonable attorneys' fees incurred as a result of its default") (citing *Filo Promotions, Inc. v. Bathtub Gins, Inc.*, 311 F. Supp. 3d 645, 649 (S.D.N.Y. 2018)); *Knox v. PLO*, 248 F.R.D. 420, 429 (S.D.N.Y. 2008) (conditioning vacatur of default on payment of plaintiff's "reasonable costs and expenses incurred as a result of defendant's

---

[7] Defense counsel devoted much of his reply declaration advocating for Pierre's wholly-owned corporation, MRC. (ECF No. 75 at ¶¶ 7-11, 14-16.)  But MRC is not a defendant in this action and that misplaced focus underscores Pierre's failure to demonstrate the existence of a meritorious defense that would warrant vacatur of his default. Notably, the purported UCC Financing Statement attached to the reply declaration (ECF No. 75-1) is dated March 8, 2024, after Pierre pled guilty and a month *after* it learned of ATIC's claim to the interpleader funds in that case.

default"); *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 52 (E.D.N.Y. 2008) ("[C]ourts in this Circuit have consistently permitted an award of attorney's fees incurred in bringing the default motion as a condition to vacating a default judgment" (internal quotation marks and citation omitted)). Although the R&R suggests that Pierre's filing an answer in this case may precede a determination and payment of ATIC's fees and expenses caused by Pierre's default, following the authorities, Pierre's payment would and should be a condition to vacatur of the default.

## <u>CONCLUSION</u>

For the foregoing reasons, ATIC respectfully requests that the Court reject the R&R, enter an order denying Pierre's motion, or, alternatively, clarify that the vacatur of the default is conditioned upon Pierre paying ATIC's reasonable fees and expenses, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
      September 10, 2024

                                GREENBERG TRAURIG, LLP

                                By: <u>/s/ *James W. Perkins*     </u>
                                     James W. Perkins
                                     Elizabeth Sullivan
                                     Noah Lindenfeld
                                     Gina Faldetta
                                     One Vanderbilt Avenue
                                     New York, New York 10017
                                     (212) 801-9200
                                     perkinsj@gtlaw.com
                                     sullivanel@gtlaw.com
                                     noah.lindenfeld@gtlaw.com
                                     gina.faldetta@gtlaw.com

                                SHORT & BILLY, P.C.

                                     Skip Short
                                     Ioanna Zevgaras
                                     217 Broadway Suite 300
                                     New York, New York 10007
                                     (212) 732-3320
                                     sshort@shortandbilly.com

ioanna@shortandbilly.com

*Attorneys for American Transit*
*Insurance Company*