UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
            Docket No.: 1:24-cv-00360
--------------------------------------------------------------

AMERICAN TRANSIT INSURANCE COMPANY,


      Plaintiffs,


    -against-

BRADLEY PIERRE, MARVIN MOY, M.D., RUTLAND
MEDICAL P.C., WILLIAM A. WEINER, D.O., NEXRAY
MEDICAL IMAGING, P.C. d/b/a SOUL  RADIOLOGY
MEDICAL IMAGING and JOHN DOES 1-15,


      Defendants.

--------------------------------------------------------------


### <u>DEFENDANT, BRADLEY PIERRE'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PREJUDGMENT ATTACHMENT</u>


        Defendants,

        Bradley Pierre

        By Counsel,

        Cary Scott Goldinger, Esq.
        Adam Dressler, Esq.
        Law Office of Cary Scott Goldinger, P.C.
        400 Garden City Plaza Suite 420
        Garden City, New York 11530
        (516) 227-3344

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT……………………………………………………….     7

FACTUAL BACKGROUND……………………………………………………….     8

ARGUMENT

I.      Prejudgment Attachment Standard………………………………………..     15

II.     American Transit has Failed to Demonstrate a Probability of Success
        on the Merits……………………………………………………………     18

III.    American Transit has Offered no Evidence that Pierre
        have secreted or Disposed of Property with Intend to Defraud Creditors…     20

CONCLUSION………………………………………………………………………..     24

TABLE OF AUTHORITIES

**Federal Cases**                                                                 **Page(s)**

*Allstate Ins. Co. v. Levy*,
    2011 U.S. Dist. LEXIS 9539, *4-5…………………………………………    20

*Allstate v. Rozenberg*,
    EDNY Case No._08-cv-00565 (Document 119) …………………………    21

*Bank of Leumi Trust Co. of N.Y. v. Istim, Inc.*,
    892 F. Supp. 478, 483 (S.D.N.Y. 1995) ………………………………… 15

*Brastex Corp. v. Allen Int'l, Inc.*,
    702 F.2d 326, 331-32 (2d Cir. 1983) …………………………………    15

*Burns Jackson Miller Summit & Spitzer v Lindner*,
    9 NY2d 314, 329-331, 451 NE2d 459, 464 NYS2d 712 [1983] ………….. 18

*Cap. Ventures Int'l v. Republic of Arg.*,
    443 F.3d 214 (2d Cir. 2006) …………………………………………    14

*CF 135 Flat LLC v. Triadou SPV N.A.*,
No. 15-CV-5345, 2016 U.S. Dist. LEXIS 82821, 2016 WL 5945912, at *10
(S.D.N.Y. June 24, 2016) …………………………………………………    16

*Coley v. Vannguard Urban Improvement Ass'n,*
*No. 12-CV-5565* (PKC) (RER), 2016 U.S. Dist. LEXIS 172378, 2016 WL 7217641
(E.D.N.Y. Dec. 13, 2016) …………………………………………………    16

*Colon v. Cole Bros. Circus, Inc., No. 04-CV-3606,*
    2007 U.S. Dist. LEXIS 76473, 2007 WL 3014706 (E.D.N.Y. Oct. 12, 2007)….15

*CPC Intl. v McKesson Corp.*,
70 NY2d 268, 276-277, 514 NE2d 116, 519 NYS2d 804 [1987] ………… …   18

*Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Commercial Corp.*,
    54 F. Supp. 3d 287 (E.D.N.Y. 2014) …………………………………………   15

*DLJ Mortg. Cap., Inc. v. Kontogiannis*,
    594 F. Supp. 2d 308 (E.D.N.Y. 2009)……………………………………….. 13

*Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*,
    862 F. Supp. 1070 (S.D.N.Y. 1994)……………………………………….. 14

*JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*,
    306 F. Supp. 2d 482 (S.D.N.Y. 2004)…………………………………………… 15

*Musket Corp. v. PDVSA Petroleo, S.A.*,
    512 F. Supp. 2d 155 (S.D.N.Y. 2007)……………………………………..   14

*Prabir v. Bukhara Indian Cuisine, Inc.*,
No. 17-CV-3704 (AJN) (HBP), 2018 U.S. Dist. LEXIS 94563, 2018 WL 2709231
(S.D.N.Y. May 17, 2018)(3) ……………………………………………………   13

*Sheehy v Big Flats Community Day*,
73 NY2d 629, 633, 541 NE2d 18, 543 NYS2d 18 [1989]………………………   18

*Silverman Partners, L.P. v. First Bank*,
    687 F. Supp. 2d 269 (E.D.N.Y. 2010)………………………………………….   15

*State Farm Ins. Co. v. Mallela et al.*,
    372 F.3d 500 (2004) ………………………………………………………….   16

**Federal Statutes**

18 U.S.C. 1962…………………………………………………………..   16

**State Cases**

*Brian Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*,
     76 NY2d 207, 556 NE2d 1087, 557 NYS2d 280 [1990]  …………………… 17

*Computer Strategies v. Commodore Bus. Machs.*,
     105 A.D.2d 167 (2d Dept. 1984) ………………………………………… 18

*Elton Leather Corp. v. First Gen. Resources Co.*,
     138 A.D.2d 132 (1st Dept. 1988) ……………………………………….. 19

*Haar v Nationwide Mut. Fire Ins. Co.*,
     34 NY3d 224, 229,  [**639]  115 NYS3d 197, 138 NE3d 1080 [2019]………… 18

*Mascis Inv. P'ship v. SG Cap. Corp.*,
     2017 NY Slip Op 30813 (Sup. Ct., N.Y. Co. Apr. 21, 2017) …………………... 19

*Ne. United Corp. v. Lewis*,
     137 A.D.3d 1387, 26 N.Y.S.3d 810 (N.Y. App. Div. 2016)……………………….. 14

*Skycom SRL v. FA & Partners, Inc.*,
     2016 NY Slip Op 32405 (Sup. Ct., N.Y. Co. Dec. 7, 2016) ………………………… 18
*Societe Generale Alsacienne De Banque, Zurich v. Flemingdon Dev. Corp.*,
     118 A.D.2d 769 (2d Dept. 1986) ……………………………………………….. 15

*VisionChina Media Inc. v. Shareholder Representative Servs., LLC*,
     *109 A.D.3d 49, 60 (1st Dept. 2013)*……………………………………………... 13

*VNB NY, LLC v. Rapaport*,
     2016 NY Slip Op 50099 (Sup. Ct., Kings Co. Jan. 29, 2016)…………………… 18

**State Statutes**

CPLR § 6201 ……………………………………………………………….. 13

Defendant Bradley Pierre ("Pierre") respectfully submits this Memorandum in opposition to Plaintiff's Motion for a Writ of Attachment pursuant to Federal Rules of Civil Procedure Rule 64 applying Rules 6201 and 6212 of the New York C.P.L.R.  For the reasons more fully discussed below, Plaintiff's Motion must be denied in its entirety and with prejudice. Pierre further adopts the Memorandum of Law and Factual Background contained in the opposition papers of defendants WILLIAM A. WEINER, D.O., and NEXRAY MEDICAL IMAGING, P.C. d/b/a SOUL RADIOLOGY MEDICAL IMAGING and incorporates all facts presented in the prior submissions by Pierre to this court.

6

## PRELIMINARY STATEMENT

Plaintiff commenced this action on January 17, 2024 alleging civil RICO violations, fraud, unjust enrichment, violation of Public Health Law 238-a and a Declaratory Judgment count seeking a declaration that the professional corporations are ineligible for reimbursement for unpaid claims. That was almost one (1) year ago.

On November 13, 2024, nearly ten (10) months later, Plaintiff served the instant motion seeking a Writ of Attachment. As detailed more fully below, Plaintiff's motion must be denied as it has offered no evidence that Pierre has transferred, secreted or dissipated his assets in any way whatsoever, nor have they offered any evidence that Pierre has engaged in any conduct at all with the intent of defrauding creditors. In addition, Plaintiff has failed to advance a single iota of proof, let alone sufficient proof, for this Court to conclude that Pierre owned and controlled defendants Nexray and Rutland, which is the only factual finding that can support the claims asserted by Plaintiff. Pierre was never proven guilty of and did not plead guilty to any type of *Mallela* violation, notwithstanding Plaintiff's continued false allegations to the contrary.

The Plaintiff's allegations against Mr. Pierre in its most simplistic form, is that since Mr. Pierre was charged in a multi-defendant case with a series of different federal crimes, somehow he is not entitled to collect funds that his company, Medical Reimbursement Consultants, Inc. ("MRC") is entitled to collect. However that is not the case. Two of the counts in the indictment were health care fraud charges which were based on a *Mallela* type of theory of fraud-namely, that Pierre was the *de facto* owner of certain medical clinics

(allegedly defendants Nexray and Rutland) that submitted fraudulent no-fault claims to insurance companies, because the clinics were not able to submit those claims legitimately, given the ownership and control of the clients by a person who was not a medical professional. MRC was not charged and did not plead guilty to any crimes and MRC is not a party to this action.

However, after an approximately two (2) year investigation by federal prosecutors, they were ***__unable to prove any of those allegations__*** and/or crimes and ultimately entered into a plea agreement with Mr. Pierre, who never pleaded guilty to the health care fraud charges brought against him. Instead, he only pleaded guilty to a bribe charge and a tax evasion charge.

At the end of its investigation, the government accepted a plea bargain from Pierre, which did not involve health insurance fraud or a *Mallela* violation. All Pierre pleaded guilty to was a single count of bribery and a single count of tax evasion. Pierre is currently serving a 10 year prison sentence in the United States Penitentiary, in Lewisburg Pennsylvania. Plaintiff's allegation that Pierre is somehow moving assets from Federal Prison, absent a single shred of evidence, is preposterous.

## FACTUAL BACKGROUND

For the record, American Transit Insurance Company ("AT") is a privately owned and operated insurance company based out of Freeport, Long Island that was able to corner the marker on roughly 117,000 commercial taxis, livery cabs, black cars and rideshare vehicles by

8

undercutting the market on its premiums and thus now controls approximately 60% of that market

in New York State. AT then took those premiums and paid its owners millions of dollars in

commissions in lieu of placing funds in reserve for claims. AT also engaged in a pattern of non-

payment of no fault claims and instead spent tons of money fighting those claims in arbitration

and court cases. Based upon recent articles in several publications including Bloomberg News and

the Insurance Journal, AT is insolvent. According to a filing with the National Association of

Insurance Commissioners,  AT suffered more than $700 million in net losses. These losses follow

years of warnings from industry analysts and according to a report by Huggins Actuarial Services,

a consultant hired by AT, New York's Department of Financial Services-which regulates insurers-

could now be forced to step in to place the company into receivership or liquidate it.

Pierre is the sole shareholder of Medical Reimbursement Consultants, Inc.  which provides financial advances to medical facilities, including defendants Nexray and Rutland. MRC was ***not*** named as a party by the Plaintiff in this action.

The court should also take judicial notice of the fact that MRC was not charged, nor did MRC plead guilty to any crime.

In addition to this case, there are two (2) pending interpleader actions in the Supreme Court for the State of New York, County of Nassau. These interpleader actions, Bearing Index Numbers  and ,609430/2023 and 621026/2023, respectively, which  are identical as to the relief requested, were commenced by two (2) separate collection law firms in Nassau County who were each engaged separately by defendants Rutland and Nexray respectively,  to pursue claims for reimbursement of fees for medical services rendered that were not paid by suit, settlement or otherwise, including arbitrations. Both state court actions name MRC and  Rutland as defendants. Pierre, Nexray and Weiner are not parties to the state court actions.

AT made identical motions to intervene in each state court action, claiming its absolute entitlement to all funds collected by plaintiffs on behalf of Rutland. AT essentially alleged the identical theory of relief raised in this action-which as indicated is based on false allegations

9

against Pierre and MRC that they were guilty of health insurance fraud and a *Mallela* violation, when that is not the case.All of AT's allegations against Pierre are conclusory and devoid of evidence.

In one action, Justice Rademaker denied AT's motion to intervene outright, and in the second action, the same motion is pending before Justice Muraca. A copy of Judge Rademaker's July 1, 2024, Decision and Order denying AT's motion to intervene is annexed as Ex. "C."

Accordingly, AT is out of one case and not in the other. As such, AT is not a party and has no standing in either state court case. Further AT moved to renew/reargue before Judge Rademaker, and said motion has been denied. The same applies to the pending motion before Judge Muraca, who occupies a courtroom on the same floor in the same courthouse as Judge Rademaker and who requested that we provide him with a copy of Judge Rademaker's decision.

As with the instant action, AT's entire case in the state court actions is predicated on the false allegation that it is somehow entitled to funds that were collected on behalf of Rutland, (and Nexray in the instant action), that are all due and owing to MRC. As in this case, AT argued conclusory theories absent proof and evidence that it is not only entitled to the funds collected, which it is not the case at all, but that AT will ultimately prevail in this federal action, which is far from the realty of the situation, where AT has not proven anything to date, let alone its entitlement to funds collected in the state court interpleader actions where AT's motion in one case was denied and ultimately, there will be the identical result in the second state court action..

Moreover, AT's claims that it has only recently discovered that there was money collected in the state court actions belies its active involvement since the commencement of the two (2) interpleader actions. It has been involved in both state court actions for more than one year, so nothing was 'recently' discovered. The only reason AT moved to intervene was because it knew of the collections.

The controlling document between MRC and Rutland is the Finance Agreement ("Agreement") dated January 1, 2017. A copy of the Agreement is annexed hereto as Ex. "A."

The controlling document between MRC and Nexray is the Finance Agreement ("Agreement") dated January 1, 2017. A copy of the Agreement is annexed hereto as Ex. "B."

Those Agreements specifically grant MRC a first lien against all of the Nexray and Rutland collections and allows MRC to perfect its lien by filing a UCC-1 at any time.

Accordingly, MRC filed its UCC-1 against Rutland and Moy on or about March 8, 2024. A copy of the filed UCC-1 is annexed hereto as Ex. "D".   MRC also filed its UCC-1 against

Nexray and Weiner on or about March 27, 2024. A copy of the filed UCC-1 is annexed hereto as Ex. "E".

The UCC's filed by MRC give it a first lien secured interest against the collections of both Nexray and Rutland and MRC's claims are superior to any other claim. Again, MRC was not charged with any crimes and did not plead guilty to any crimes. MRC is also not a party to this action.

Healthcare providers widely use factoring or funding agreements. These types of agreements can often be the least expensive capital for such providers. In addition, factoring or funding agreements are often used by providers who are reliant on payment from insurance companies. Because insurance companies can and often do refuse to pay in a timely manner (if at all as is the modus operandi of AT) or raise issues as to whether or not the procedure was medically necessary, many providers seek to mitigate their risks through funding arrangements.

The Financing Agreement between Nexray and MRC was drafted by Eric Fader, Esq. an ivy league educated attorney, at the time a partner at Day Pitney, LLP, a preeminent healthcare law firm in existence since 1902.

The Financing Agreement between MRC and Rutland was similarly negotiated and signed by MRC and Rutland.

The Financing Agreement provided that MRC would advance payment on accounts receivable. Per the Agreement, the accounts receivable served as collateral for the advances. Nexray was obligated to repay the amounts funded plus interest, but only to the extent that it

actually collected the accounts receivable. These were essentially non-recourse advances. If no money was collected, no funds had to be paid back.

The Finance agreement did not grant MRC any form of legal control over Nexray or Rutland.

Neither Nexray's foundational business documents nor Rutland's exhibit any of the indicia that could lead an insurance company under the dictates of *State Farm Mutual Automobile Insurance Co. v. Mallela*, to withhold reimbursement for no-fault claims that were "provided by fraudulently incorporated enterprises to which patients have assigned their claims

The Financing Agreement between Nexray and MRC and Rutland and  MRC does not provide any mechanism that would have allowed MRC to assert control over Nexray or Rutland or the practice of medicine.

In factual support of its motion, Plaintiff offers the declaration of one Cherly B. Glaze, a low level employee of AT who could not possibly know any of the specific facts as alleged in her declaration. Moreover, Ms. Glaze's declaration contains the same false allegation as alleged by the plaintiff in its complaint regarding what Pierre actually pled guilty to and numerous conclusory statements absent evidence or proof. Indictments that were never proven after an exhaustive investigation by the government are not evidence or proof of the allegations asserted by the plaintiff.

One glaring example of this is in the Introduction paragraph on page 2, where Ms. Glaze avers that*" Pierre acknowledged that he concealed his ownership and control of Defendants

*Rutland and Nexray, which made those providers ineligible to collect No-Fault insurance claims under New York law,"...* That is simply not true. Again, Pierre only pleaded guilty to a single count of bribery and a single count of tax evasion. Period.

Ms. Glaze goes on to allege that *"Pierre acknowledged in his criminal case that he received over $10 million more than he should have in disguising his bribery scheme through fictitious loan".* Again that was alleged by the government, but it could not prove any of it.

Ms. Glaze then goes on to conclude, without evidence, that an *'attachment order will provide ATIC some protection by preventing further disruption of Defendants' assets before ATIC can obtain a judgment in this case".*

With these baldfaced, conclusory and false allegations, Ms. Glaze's declaration should be given no consideration by this Honorable Court. It is certainly not proof that Pierre is moving assets or that AT will prevail and win this case and obtain a judgment. The fact that there may not be any funds to collect at the conclusion of the case should AT somehow manage to prevail, is not grounds for a pre-judgment attachment. If that were the case, every plaintiff suing for money damages would make the motion at the onset of every case. Clearly that was not even the case here where AT sat on its hands for almost one (1) year before requesting permission for the instant motion.

In paragraph 21 of her declaration, Ms. Glaze alleges (how would she have personal knowledge of same if it were true, which it isn't) that *"AT recently learned that approximately $4.4 million in unaccounted for Rutland insurance payments may be in the possession of one or*

*more of these firms".* As with several other conclusory statements contained in her declaration, there is no offer of proof or any evidence annexed in support of this allegation, because it is simply not true. It is made up as to the amount and the claim of 'recently found' money that was collected. AT is using the identical attorneys in the two (2) state court actions that it has engaged in this federal case, and they are the same attorneys that filed the instant motion, so they are acutely aware of all proceedings that have transpired, and this claim is not accurate to any degree. AT and its same attorneys have been involved in the two state court actions for approximately one year.

While serving his sentence in federal prison, the government secured a lien of approximately $5 million dollars for restitution against Pierre, so there are no unencumbered assets to move. The court should be reminded that MRC was not charged nor did MRC plead guilty to any crime. As such, MRC is perfectly within its rights to enforce its legal remedies under its Financing Agreements with both Nexray and Rutland, both of which are secured by the filing by MRC of UCC-1's against both Nexray and Weiner, Rutland, and Moy and collect money justly due and owing to MRC, not AT.

## ARGUMENT

### I. *Legal Standard for a Writ of Attachment*

It is well settled 2d Circuit law that Rule 64 of the Federal Rules of Civil Procedure permits litigants to seek an order of attachment in the manner provided by the law of the state in which the district court sits. See *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 318

(E.D.N.Y. 2009). New York law authorizes prejudgment attachment pursuant to CPLR §§ 6201(3) and 6212(a). *See Prabir v. Bukhara Indian Cuisine, Inc.*, No. 17-CV-3704 (AJN) (HBP), 2018 U.S. Dist. LEXIS 94563, 2018 WL 2709231, at *2 (S.D.N.Y. May 17, 2018) (quoting N.Y. C.P.L.R. §§ 6212(a), 6201(3)) (collecting cases), *report & recommendation adopted*, 2018 U.S. Dist. LEXIS 94423, 2018 WL 2694435 (S.D.N.Y. June 5, 2018).

It is equally settled law in New York that attachment is "a drastic remedy," and is "strictly construed in favor of those against whom it may be employed." *Ne. United Corp. v. Lewis*, 137 A.D.3d 1387, 26 N.Y.S.3d 810, 812 (N.Y. App. Div. 2016); *see also Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F. Supp. 1070, 1073 (S.D.N.Y. 1994) ("Attachment is a harsh remedy, and should not be lightly granted by the court.").

A plaintiff seeking an order of attachment must show:

(a) that there is a cause of action;

(b) that it is probable that the plaintiff will succeed on the merits;

(c) that one or more grounds for attachment provided in [CPLR §] 6201 exist; and

(d) that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.

See *Cap. Ventures Int'l v. Republic of Arg.*, 443 F.3d 214 (2d Cir. 2006) (quoting N.Y. C.P.L.R. § 6212(a).

In this case, Plaintiff satisfies only the first and fourth requirements. Plaintiff has brought an action seeking money damages and Defendants have not asserted counterclaims and as such,

15

it is undisputed that the amount demanded from Defendants exceeds all counterclaims asserted against Plaintiff.

This motion turns on whether the Plaintiff can satisfy the second and third requirements. As to the second requirement, probability of success on the merits for purposes of an order of attachment requires that "the moving party demonstrate that it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facie case." *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007) (citations omitted); *see also DLJ Mortg. Cap., Inc.*, 594 F. Supp. 2d at 319 (same).

"In assessing whether a plaintiff can show a probability of success on the merits, the court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts." *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 293 (E.D.N.Y. 2010) (citation and internal quotation marks omitted); *see also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004) (same). Despite giving Plaintiff the benefit of favorable inferences, the moving papers must contain evidentiary facts — as opposed to conclusions — proving the basis upon which the attachment remedy is sought. *Societe Generale Alsacienne De Banque, Zurich v. Flemingdon Dev. Corp.*, 118 A.D.2d 769, 773 (2d Dept. 1986).

Finally, the Plaintiff must demonstrate that grounds for attachment exist. Plaintiff must advance evidence showing that "with intent to defraud [their] creditors or frustrate the enforcement of a judgment that might be rendered in [P]laintiff's favor, [have] assigned, disposed

of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." N.Y. C.P.L.R. § 6201(3).

Under CPLR § 6201(3), "it is incumbent upon [the plaintiff] to demonstrate that the defendant is acting with intent to defraud." *Colon v. Cole Bros. Circus, Inc.*, No. 04-CV-3606, 2007 U.S. Dist. LEXIS 76473, 2007 WL 3014706, at *2 (E.D.N.Y. Oct. 12, 2007) (quoting *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 331-32 (2d Cir. 1983)). It is "well established in New York" that "the mere removal or other disposition of property by a debtor is not a sufficient ground for an attachment." *Dafeng Hengwei Textile Co., Ltd. v. Aceco Indus. & Commercial Corp.*, 54 F. Supp. 3d 287, 293-94 (E.D.N.Y. 2014) (quoting *Bank of Leumi Trust Co. of N.Y. v. Istim, Inc.*, 892 F. Supp. 478, 483 (S.D.N.Y. 1995)).

Courts in the Second Circuit have identified the following non-exhaustive list of "badges of fraud" that may be considered:

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events [*12] and transactions under inquiry.

17

*See Coley v. Vannguard Urban Improvement Ass'n*, No. 12-CV-5565 (PKC) (RER), 2016 U.S. Dist. LEXIS 172378, 2016 WL 7217641, at \*7 (E.D.N.Y. Dec. 13, 2016) (quoting *CF 135 Flat LLC v. Triadou SPV N.A.*, No. 15-CV-5345, 2016 U.S. Dist. LEXIS 82821, 2016 WL 5945912, at \*10 (S.D.N.Y. June 24, 2016)).

For the reasons argued below, the Plaintiff's Motion must be denied in its entirety.

### II.    *American Transit has Failed to Demonstrate a Probability of Success on the Merits*

Plaintiff has asserted five claims against Pierre seeking money damages:  a violation of 18 U.S.C. 1962(c) and (d), Common Law Fraud, Unjust Enrichment and a violation of NY Public Health Law 238-a.

The first four claims involve the same factual premise: that Plaintiff is entitled to be reimbursed all moneys paid to Nexray because Nexray was secretly owned and controlled by Pierre in violation of *State Farm Ins. Co. v. Mallela et al.,* 372 F.3d 500 (2004).

As the Court is well aware, *Mallela* permits insurance companies to look beyond facially valid licensing documents to determine whether a medical provider truly owns and controls the professional corporation.  In the event an insurance company can establish that a professional corporation is ***not*** in compliance with foundational licensing requirements, it can deny claims and seek reimbursement for voluntary payments made to the professional corporation.

In this matter, Plaintiff has not advanced ***any*** actual financial or operational evidence regarding Nexray or Pierre.  Plaintiff's evidence is based entirely on purported admissions made by Weiner and Pierre in their sentencing allocutions, which were never proven and not pleaded to

18

by Pierre. Again, Pierre only plead guilty to a single count of bribery and a single count of tax evasion.

Further, the United States Attorney's office has conceded that "no doctor changed a medical report as a result of any communication with Dr. Weiner. See correspondence of Matthew Andrews to Judge Gardephe dated August 09, 2024, attached to the Declaration of Matthew J. Conroy, Esq. as Exhibit "D".

The Fifth cause of action for a violation of NY Public Health Law 238-a. Plaintiff has no standing to assert a private right of action under NY PH 238-a. It is undisputed that the Public Health Law contains no express private plenary action for violations of section 238-a.

In New York, where a statute does not make express provision for a private remedy, such a remedy may be had "only if a legislative intent to create such a right of action is 'fairly implied' in the statutory provisions and their legislative history" (*Brian Hoxie's Painting Co. v Cato-Meridian Cent. School Dist.*, 76 NY2d 207, 211, 556 NE2d 1087, 557 NYS2d 280 [1990]).

To evaluate whether the legislative intent favors such implied private rights of action, Courts have identified three relevant factors:

"(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme" (*Sheehy v Big Flats Community Day*, 73 NY2d 629, 633, 541 NE2d 18, 543 NYS2d 18 [1989], citing *CPC Intl. v McKesson Corp.*, 70 NY2d 268, 276-277, 514 NE2d 116, 519 NYS2d 804 [1987],

19

and *Burns Jackson Miller Summit & Spitzer v Lindner*, 59 NY2d 314, 329-331, 451 NE2d 459, 464 NYS2d 712 [1983]). "Critically, all three factors must be satisfied before an implied private right of action will be recognized" (*Haar v Nationwide Mut. Fire Ins. Co.*, 34 NY3d 224, 229, [**639] 115 NYS3d 197, 138 NE3d 1080 [2019]).

The Public Health law requires financial interest disclosures to patients and financial reporting to the Public Health Commissioner.  There is nothing the all of section 238 that recognizes an insurance company as a class of person or entity for whose benefit this statute was enacted.

### III.    American Transit has Offered no Evidence that Pierre secreted or Disposed of Property with Intent to Defraud Creditors

Where fraud is alleged, under CPLR 6201(3), "the plaintiff must demonstrate that the defendant has concealed or is about to conceal property in one or more of several enumerated ways and has acted or will act with the intent to defraud creditors or to frustrate the enforcement of a judgment that might be rendered in favor of the plaintiff"." *VNB NY, LLC v. Rapaport*, 2016 NY Slip Op 50099 (Sup. Ct., Kings Co. Jan. 29, 2016) (citations omitted). "[M]ere removal, assignment or other disposition of property is not grounds for attachment." (*Computer Strategies v. Commodore Bus. Machs.*, 105 A.D.2d 167, 173 (2d Dept. 1984).

"The moving papers must contain evidentiary facts, as opposed to conclusions, proving the fraud." *Id*.  Thus, it is not sufficient to merely raise a suspicion of an intent to defraud. *Skycom SRL v. FA & Partners, Inc.*, 2016 NY Slip Op 32405 (Sup. Ct., N.Y. Co. Dec. 7, 2016).

20

Rather, "it must appear that such fraudulent intent really existed in the mind of the defendants, and not merely in the ingenuity of the plaintiffs." *Id*. (citation and internal quotation marks omitted).

However, even when the plaintiff satisfies the statutory grounds for an attachment, he/she still "must demonstrate an identifiable risk that the defendant will not be able to satisfy the judgment." *Mascis Inv. P'ship v. SG Cap. Corp.*, 2017 NY Slip Op 30813 (Sup. Ct., N.Y. Co. Apr. 21, 2017) (quoting *Vision China Media Inc. v. Shareholder Representative Servs., LLC*, 109 A.D.3d 49, 60 (1st Dept. 2013)); *see also* Siegel, NY Prac, § 317 (5th ed) ("Even if the plaintiff makes out a case for attachment under CPLR 6201, its granting is still discretionary with the court. . . . [I]f the judge should perceive from the papers that the plaintiff does not need an attachment, either for jurisdiction or security, discretion is appropriately exercised against it even though a CPLR 6201 showing has been made.").

The risk "should be real." *VisionChina*, 109 A.D.3d at 60 (citation and internal quotation marks omitted). In this regard, the court may consider the defendant's financial position (*i.e.*, whether the defendant is in "serious financial distress" (*Elton Leather Corp. v. First Gen. Resources Co.*, 138 A.D.2d 132, 134 (1st Dept. 1988)) or past and present conduct, including the defendant's history of paying creditors and any statements or action evincing an intent to dispose of assets. *VisionChina*, 109 A.D.3d at 60.

Plaintiff's motion fails at the most basic level of proof.  American Transit has not advanced any evidence that Pierre has disposed of ANY property or secreted ANY assets at all.

21

To the contrary, all of plaintiff's allegations are conclusory and contained in the declaration of one its employees, who could not possibly have any first hand knowledge of any of the facts of this case.

Referring back in time to their underlying allegations of fraud are simply insufficient to prove this element.

Virtually every case cited by Plaintiff involves the transfer of assets to shell companies or relatives for no consideration.

Plaintiff cites not a single transfer of assets of Pierre at any period of time.

Plaintiff filed this case in early 2024 and waited nearly a year to bring this motion. The factual basis for this motion is not that Plaintiff learned of fraudulent transfers during the course of the litigation, evidencing a disposal of assets to frustrate potential creditors, a fact pattern found in many of the cited cases. To the contrary, Plaintiff only points to the underlying fraud it alleges, dating back years to support this prong of proof.

In a similar case, this Court found that payments made by a medical PCs as "management fees" to the management companies owned by defendant occurring *before* the lawsuit was filed, and prior to the defendants' knowledge that their conduct was being investigated by law enforcement authorities, provided little, if any evidence of an intent to frustrate the enforcement of any judgment that may be rendered in the case.

The Court found that the intent with which the defendants appear to have acted in connection with those transactions was not to defeat creditors or the collection of a judgment, but

22

rather to hide the fact that substantial sums generated by the operation of the medical PCs were ending up in the hands of a person who was not a licensed medical professional. *Allstate Ins. Co. v. Levy, 2011 U.S. Dist. LEXIS 9539, \*4-5*

This type of evidence was found specifically found to be insufficient to demonstrate the requisite intent under CPLR 6201(3).

This type of evidence is in stark contrast to the transfers found in *Allstate v. Rozenberg*, EDNY Case No. 08-cv-00565 (Document 119) where Judge Spatt found that the Defendant transferred six pieces of real property to her husband after she was indicted in Kings County; and the husband defendant opened a bank account in Pennsylvania the day after his wife was arraigned and had since transferred $750,000.00 to that account.

## CONCLUSION

For the reasons set forth above, Pierre respectfully submits that the Plaintiff's motion must be denied in its entirety and with prejudice and request the Court grant such further relief as it deems necessary, including the costs and reasonable attorney's fees for having to opposes this motion.

The Defendant

Bradley Pierre
By his attorneys,
Cary Scott Goldinger, Esq.
Law Office of Cary Scott Goldinger, P.C.
400 Garden City Plaza Suite 420
Garden City, NY 11530

Dated: December 16, 2024

23