UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AMERICAN TRANSIT INSURANCE CO.

                 Plaintiff,

    -against-

BRADLEY PIERRE, et *al.*,

                Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
24 CV 360 (RPK) (CLP)

On January 17, 2024, plaintiff American Transit Insurance Company ("American Transit" or "plaintiff") commenced this action against defendants Bradley Pierre ("Pierre"), Marvin Moy, M.D. ("Moy"), Rutland Medical P.C. ("Rutland"), William A. Weiner, D.O. ("Weiner"), Nexray Medical Imaging, P.C., d/b/a Soul Radiology Medical Imaging ("Nexray"), and John Does 1-15, pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, seeking damages and a Declaratory Judgment, pursuant to 28 U.S.C. §§ 2201, 2202, based on defendants' alleged illegal scheme to defraud plaintiff by collecting payments on numerous non-compensable, false, inflated and fraudulent No-Fault insurance claims. ("Compl."). Plaintiff also alleges claims based on violations of N.Y. Public Health Law § 238(a), common law fraud, and unjust enrichment. (Id.) Currently before the Court is plaintiff's Motion seeking a $10,720,000 prejudgment attachment of defendants' assets.

## DISCUSSION

Federal Rule of Civil Procedure 64 provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is

located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. New York law permits prejudgment attachment under CPLR §§ 6201(3) and 6212(a). Yong Xiong He v. China New Star Rest. Inc., No. 19 CV 5907, 2020 WL 6202423, at *5 (E.D.N.Y. Oct. 22, 2020). To obtain an order of attachment under New York law, there must be a showing that the party seeking attachment: "(1) has a cause of action for a money judgment, (2) there is a probability of success on the merits, (3) one or more of the enumerated statutory grounds for attachment under N.Y. CPLR § 6201 exists, and (4) the amount demanded exceeds the amount of all counterclaims known to the party seeking the attachment." Citibank, N.A. v. Aralpa Holdings Ltd. P'ship, No. 22 CV 8842, 2023 WL 8810142, at *2 (S.D.N.Y. Dec. 19, 2023) (quotation omitted).

Under New York law, an order of attachment is considered a "drastic remedy," and should be "strictly construed in favor of those against whom it may be employed." Group One Ltd. v. GTE GmbH, No. 20 CV 2205, 2023 WL 8472798, at *3 (E.D.N.Y. Sept. 15, 2023), report and recommendation adopted, 2023 WL 7489974 (E.D.N.Y. Nov. 13, 2023) (quoting Northeast United Corp. v. Lewis, 137 A.D.3d 1387, 1388 (4th Dep't 2016)). See also In re Amaranth Natural Gas Commodities Litig., 711 F. Supp. 2d 301, 306 (S.D.N.Y. 2010) (finding attachment should be brought "upon a showing that drastic action is required"); Green Tree Servicing LLC v. Christodoulakis, No. 14 CV 2037, 2014 WL 5475514, at *5 (E.D.N.Y. Oct. 28, 2014) (holding that "[t]he remedy of attachment is recognized to be harsh and extraordinary; therefore, even if plaintiff satisfies the statutory criteria, the issuance of this relief is discretionary, and the Court must exercise care in its application") (quotation omitted). When an attachment is sought for security purposes, there must be "an additional showing" that defendant's financial position or

past conduct poses a real risk of an inability to enforce a future judgment. In re Amaranth Natural Gas Commodities Litig., 711 F. Supp. 2d at 306.

A. Elements One and Four: Claim for Monetary Damages and Counterclaims

Defendants do not appear to dispute that plaintiff has satisfied the first and fourth elements of the test. (Nexray Opp.[1] at 5; Pierre Opp. at 15). Plaintiff explains that its Complaint contains nine causes of action, seeking monetary damages against each of the defendants, in the total amount of $3,240,000, which, if trebled under RICO, would amount to $9,720,000; this clearly satisfies the first element of the test for an attachment order. (Pl.'s Mot. at 9 (citing Compl. at 91–93)). As for the fourth element, plaintiff contends that defendants have not filed any counterclaims, and even if Pierre is allowed to assert counterclaims, they will not exceed plaintiff's damages; thus, plaintiff has established that the amount demanded is greater than all counterclaims known to plaintiff. (Id. at 23).

B. Element Three: Probability of Success on the Merits

As for the second element necessary under New York law – probability of success on the merits – "the moving party [must] demonstrate that it is more likely than not that it will succeed on its claims and must show proof stronger than that required to make a prima facia case." IME Watchdog, Inc. v. Gelardi, 22 CV 1032, 2024 WL 866136, at *3 (E.D.N.Y. Feb. 24, 2024) (finding probability of success where the court had already found likelihood of success on the merits in its order granting a preliminary injunction) (quoting Musket Corp. v. PDVSA Petroleo, S.A., 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007)). Meanwhile, the court must give plaintiff the benefit of drawing all legitimate inferences that can be drawn from the facts. Id.

---

[1] References to "Pl.'s Mot." refer to plaintiff's motion for prejudgment attachment (ECF No. 121). References to "Nexray Opp." refer to Defendant Weiner and Defendant Nexray's memorandum in opposition to plaintiff's motion (ECF No. 124). References to "Pierre Opp." refer to Defendant Pierre's memorandum in opposition to plaintiff's motion (ECF No. 127).

Here, plaintiff's RICO and related fraud claims rely, in part, on a 'fraudulent incorporation' theory. (See Compl. at ¶¶ 74-85, 90-95, 383-91, 395-99, 403-06, 414-15, 419-45). That theory is premised on New York's No-Fault insurance law, under which medical companies that "fail to meet the applicable state licensing requirements, which prohibit nonphysicians from owning or controlling medical service corporations," are "not entitled to reimbursement." State Farm Mut. Auto. Ins. Co. v. Mallela, 4 N.Y.3d 313, 320–21 (2005) (hereinafter "Mallela"). Under this fraudulent incorporation theory, any clinic seeking payment for medical services which misrepresents to an insurer that it is owned or controlled by a physician when, in fact, it is not, commits fraud. See United States v. Israilov, No. 22 CR 20, 2024 WL 3888773, at *1, *4–6 (S.D.N.Y. Aug. 20, 2024); United States v. Pierre, No. 22 CR 19, 2023 WL 4493511, at *10 (S.D.N.Y. July 12, 2023). Courts in this circuit have consistently held that the fraudulent incorporation theory can form a sufficient basis for a criminal conviction for healthcare fraud. United States v. Zemlyansky, 945 F. Supp. 2d 438, 446–50 (S.D.N.Y. 2013); see also United States v. Gabinskaya, 829 F.3d 127, 132 (2d Cir. 2016). For the same reasons, this theory has been found to support findings of liability in civil fraud cases. See, e.g., Allstate Ins. Co. v. Elzanaty, 916 F. Supp. 2d 273, 295 (E.D.N.Y. 2013) (holding that a RICO claim based on violations of New York's No-Fault law was adequately stated because "an insurer may bring an action for fraud or unjust enrichment, based on fraudulent incorporation, to recover payments made to fraudulently incorporated providers") (citing State Farm Mut. Auto Ins. Co. v. CPT Med. Servs., P.C., No. 04 CV 5045, 2008 4146190, at *8–9 (E.D.N.Y. Sept. 5, 2005)).

Having considered the arguments of the parties, the Court finds that plaintiff has demonstrated a probability of success on the merits. First, the district court has already found a likelihood of success on the merits in considering the plaintiff's motion for injunctive relief (ECF

No. 52 at 2–5)—a synonymous standard to the "probability of success" standard needed for attachment.  See Sea Metro., S.A. v. DGM Commodities Corp., 13 CV 1521, 2013 WL 5502818, at *2 (E.D.N.Y. Oct. 2, 2013).  See also Intelligent Digit. Sys., LLC v. Visual Mgmt. Sys., Inc., 683 F. Supp. 2d 278, 287 (E.D.N.Y. 2010) (holding that "a party see[k]ing an order of attachment must show a probability of success akin to that required to obtain injunctive relief") (citing Perrotta v. Giannoccaro, 151 Misc. 2d 155, 532 N.Y.S.2d 998, 1000 (N.Y. Sup. Ct. 1988)).  Thus, plaintiff has already demonstrated a probability of success sufficient to warrant an order of attachment and defendants have pointed to no authority to the contrary.  See IME Watchdog, Inc. v. Gelardi, 2024 WL 866136, at *3 (holding that a court's prior order granting a preliminary injunction establishes the likelihood of success on the merits necessary to grant attachment).

Even in the absence of such a finding, the Court finds that Pierre's and Weiner's allocutions in connection with their criminal guilty pleas provide more than sufficient basis to support a finding of a Mallela violation.  Pierre admitted to "unlawfully own[ing] and run[ning] clinics" with the other defendants to make a profit despite "kn[owing] that Clinics are unable to bill insurance companies for no-fault benefits if the medical facilities are controlled by non-physicians," "steer[ing] prescriptions to pharmacies in return for over $1 million in kickbacks," and coaching medical providers to lie about the ownership, control, and finances of the clinics to facilitate the collection of the No-Fault payments.  United States v. Pierre, 22 CR 19, ECF No. 344 at 20–21 (S.D.N.Y. Dec. 18, 2023).  This alone is enough to constitute a Malella violation, but the scheme went further—Pierre specifically admitted that he "used his control of the Clinics…to also steer patients to seek MRIs at a medical facility over which he exercised substantial control, Nexray Medical Imaging," and that he and defendant Weiner "agreed that Weiner would lie under oath about [Pierre's] role in Nexray."  Id. at 22.  Pierre further

acknowledged that he hid his control over the clinics and Nexray using "phony loan agreements," and he paid bribes to "fill the clinics and Nexray with patients." Id.  When asked by Judge Paul G. Gardephe, the district court judge in the Southern District of New York presiding over Pierre's criminal case, whether Pierre disputed any of these facts, he responded, "No, Your Honor." Id. at 25.[2]

Not only do Pierre's admissions constitute a sufficient basis for finding that plaintiff will likely be successful in proving its claims, but Weiner's own allocution compounds this likelihood.  Defendant Weiner admitted that he lied under oath by "falsely minimiz[ing] Bradley Pierre's role in [his] medical practice to facilitate the payment of claims" for "medical services" and that he "had an overall understanding with Mr. Pierre, [and] was in an agreement with [his] attorney" to make the misrepresentations while under oath.  United States v. Pierre, 22 CR 19, ECF No. 385 at 19–21 (S.D.N.Y. Dec. 18, 2023).  He also admitted that "because of Bradley Pierre's role in [his] medical practice, [he] did not have a right to obtain reimbursement for the medical claims" and that is why he "did not disclose to the insurance company's Bradley Pierre's role in [his] medical practice." Id. at 21.

To the extent that defendants now make arguments based on the Interpleader Actions or comments made by their experts, the Court finds that the plea allocutions, coupled with the

---

[2] Contrary to defendants' contentions that the plaintiff relies on "purported admissions made by Weiner and Pierre in their sentencing allocutions" (Nexray Opp. at 8) and that those admissions were "alleged by the government, but it could not prove any of it" (Pierre Opp. at 13), facts admitted in a criminal defendant's allocution are exactly that—admitted facts.  Those facts do not then lose their force in a subsequent civil matter.  See United States Commodity Futures Trading Comm'n v. LaMarco, 17 CV 4087, 2024 WL 4905206, at *15 (E.D.N.Y. July 28, 2024); Andrade v. Cultural Care, Inc., 706 F. Supp. 3d 348, 356 (E.D.N.Y. 2023) ("Even when a full criminal trial has not taken place, a guilty plea has preclusive effect") (citation omitted); Securities and Exch. Comm'n v. McCaskey, 98 CV 6153, 2001 WL 1029053, at *3 (S.D.N.Y. Sept. 6, 2001) ("Whether established at plea allocution or at trial, all facts material to the conviction bind the criminal defendant in later civil litigation") (citing Securities and Exch. Comm'n v. Morarch Funding Corp., 85 CV 7072, 1996 WL 348209, at *3 (S.D.N.Y. 1996)).

district court's earlier finding of likelihood of success on the merits, are sufficient to satisfy the second element of the test required to obtain an order of attachment.

As to defendants Moy and Rutland, who have both defaulted (see ECF No. 191), the Court agrees that because a default "constitutes an admission of both liability as well as the truth of all well-pleaded allegations" in the complaint, plaintiff "has not merely demonstrated a high probability of success on the merits, but has, in effect, achieved actual success on the merits" sufficient to warrant an order of attachment. Eu Yan Sang, Int'l LTD v. S & M Ents. (U.S.A.) Ent. Corp., No. 09 CV 4235, 2010 WL 3824129, at *3 (E.D.N.Y. Sept. 8, 2010), report and recommendation adopted, 2010 WL 3806136 (E.D.N.Y . Sept. 23, 2010) (emphasis in original).[3]

C. Element Three: CPLR § 6201

As for the third and final element necessary to obtain an order of attachment, plaintiff relies on CPLR § 6201(3), which provides that an order of attachment may be granted where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts."

Courts have held that, "[w]hile proof of the merits of a plaintiff's claim, by definition, helps satisfy the first two elements for attachment…it does not necessarily—nor often—speak to the third required element, i.e., whether a defendant has disposed of assets (or soon will do so) with the intent to defraud his creditors or frustrate the enforcement of a judgment." DLJ Mortg.

---

[3] On August 27, 2024, the Court recommended that defendant Pierre's motion to vacate the default judgment against him be vacated on the condition that he pay attorney's fees.  (ECF No. 77).  The district court adopted the Court's recommendation (ECF No. 153), and on August 25, 2025, the Court recommended that the district court order Pierre to pay those attorney's fees by September 9, 2025.  (ECF No. 187).  As such, defendant Pierre is not currently in default, pending his payment of attorney's fees.  Should Pierre default after this report and recommendation, this same rule will apply to him.

Cap., Inc. v. Kontogiannis, 594 F. Supp. 2d 308, 320 (E.D.N.Y. 2009) (citing Encore Credit Corp. v. LaMattina, No. 05 CV 5442, 2006 WL 148909, at *4 (E.D.N.Y. Jan. 18, 2006)).

Much of the evidence that plaintiff relies on as proof that the defendants had secreted funds with the intent to frustrate enforcement of a judgment relates to the improper reimbursements collected by the practices owned by Pierre. However, all of those payments occurred before this lawsuit was filed and provide little evidence of an intent to frustrate the enforcement of any judgment that may be rendered in this case. See Allstate Ins. Co. v. Levy, No. 10 CV 1652, 2010 WL 5665040, at *2 (E.D.N.Y. Dec. 29. 2010), report and recommendation adopted, 2011 WL 318038 (E.D.N.Y. Feb. 1, 2011), aff'd 478 Fed. App'x 688 (2d Cir. 2012). Although the Court may account for fraudulent conduct predating this litigation, Allstate Ins. Co. v. Levy, 478 Fed. App'x 688, 691 (2d Cir. 2012), the fraud predating this litigation was executed to hide the fact that the No-Fault payments at issue were being directed to medical practices run by a person who was not a licensed medical professional. It is not apparent that the fraud was executed to defraud creditors or to frustrate judgment in this litigation.

The defendants' conduct does not end there, however. Plaintiff points out that Nexray ceased operations in 2022 but continues to pursue No-Fault claims through its attorneys even in the face of the district court's May 16, 2024 preliminary injunction enjoining defendants from further pursuing No-Fault arbitrations against plaintiff. See, e.g., American Transit Ins. Co. v. Nexray, Index No. 532295/2022 (N.Y. Sup. Ct. Kings Cnty.). Plaintiff also states that "Pierre, through his wholly owned company Medical Reimbursement Consultants, Inc. ('MRC'), is actively attempting to collect millions of dollars of [No-Fault] insurance claims paid to Rutland" despite the fact that Rutland's owner, defendant Moy, has been missing since 2022. (Glaze

Decl.[4] at 2). Plaintiff also directs the Court to evidence from related state interpleader actions that "approximately $4.4 million of insurance payments to Rutland remain unaccounted for" and that MRC and Pierre continue to claim entitlement to the funds notwithstanding their admitted misconduct. (Glaze Decl. at 15–18). This conduct evinces an intent to defraud or frustrate judgment and attachment is appropriate.

D. Undertaking

A plaintiff seeking an order of attachment is required under the CPLR to provide an "undertaking" as security for "(1) costs and damages incurred by the defendant in the event that the court subsequently determines that the plaintiff was not entitled to an attachment or if defendant ultimately recovers judgment; and (2) certain fees incurred by the sheriff." Yong Xiong He v. China New Star Rest., Inc., 2020 WL 6202423, at *15 (quotation omitted). The court has discretion to set the amount of the undertaking, often setting it at a fraction of a percent of the value of the attachment or at the minimum value of $500. BSH Hausgeräte, GmbH v. Kamhi, 282 F. Supp. 3d 668, 672, n.2 (S.D.N.Y. 2017). See also Yong Xiong He v. China New Star Rest., Inc., 2020 WL 6202423, at *16 (setting undertaking at $500); OSRecovery, Inc. v. One Groupe, Int'l, Inc., 305 F. Supp. 2d 340, 348 (S.D.N.Y. 2004) (setting undertaking at 0.04% of the value of the attachment); Government Emps. Ins. Co. v. Damien, No. 10 CV 5409, 2011 WL 11038949, at *2 (E.D.N.Y. Jan. 3, 2011) (setting undertaking at 0.33%).

Plaintiff contends that, given the district court's finding of likelihood of success on the merits, the undertaking here should be set at $500. This is far beneath the norm. Cases applying the minimum undertaking do so as security for substantially smaller attachments. See, e.g., Yong Xiong He v. China New Star Rest., Inc., 2020 WL 6202423, at *16 (requiring a $500 undertaking

---

[4] References to the "Glaze Decl." refer to the declaration in support of plaintiff's motion for prejudgment attachment (ECF No. 123).

for a $599,870.85 judgment sought). Even in cases with smaller attachments, courts have required undertakings higher than $500. See, e.g., Government Emps. Ins. Co. v. Grody, No. 22 CV 6187, 2023 WL 6307340, at *1 (E.D.N.Y. Sept. 28, 2023) (requiring a $5,000 undertaking for a $576,040.41 attachment). Moreover, other No-Fault cases in this jurisdiction apply undertakings ranging from approximately 0.67% to 1.1%. Compare Allstate Ins. Co. v. TMR Medicbill Inc., No. 00 CV 0002, 2000 WL 34011895, at *18 (E.D.N.Y. July 13, 2000) (setting a $20,000 undertaking on an attachment of $3,000,000) with Allstate Ins. Co. v. Rozenberg, No. 08 CV 565, 2009 WL 9081080, at *6 (E.D.N.Y. Jan. 26, 2009) (setting a $100,000 undertaking on a $9,000,000 attachment).

The Court has already found that plaintiff has a high probability of succeeding on the merits and a high undertaking is therefore unnecessary. Instead, the Court finds that an undertaking of $72,000 is appropriate. This amounts to a 0.67% undertaking, consistent with amounts set by this district under similar circumstances. See Allstate Ins. Co. v. TMR Medicbill Inc., 2000 WL 34011895, at *18.

## CONCLUSION

For the reasons stated above, the Court respectfully recommends that the district court grant plaintiff's motion for prejudgment attachment in the amount of $10,720,000 on the condition that plaintiff provide $72,000 as an undertaking.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to

appeal the district court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 9, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York