UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
AMERICAN TRANSIT INSURANCE CO.

                Plaintiff,

-against-

BRADLEY PIERRE, et *al.*,

                Defendants.

-----------------------------------------------------------X

**MEMORADUM AND ORDER**
24 CV 360 (RPK) (CLP)

On January 17, 2024, plaintiff American Transit Insurance Company ("American Transit" or "plaintiff") commenced this action against defendants Bradley Pierre ("Pierre"), Marvin Moy, M.D., Rutland Medical P.C. ("Rutland"), William A. Weiner, D.O., Nexray Medical Imaging, P.C., d/b/a Soul Radiology Medical Imaging ("Nexray"), and John Does 1-15, pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, seeking damages and a Declaratory Judgment, pursuant to 28 U.S.C. §§ 2201, 2202, based on defendants' alleged illegal scheme to defraud plaintiff by collecting payments on numerous non-compensable, false, inflated and fraudulent No-Fault insurance claims. ("Compl."). Plaintiff also alleges claims based on violations of N.Y. Public Health Law § 238(a), common law fraud, and unjust enrichment. (Id.)

Currently pending before this Court is American Transit's Motion to compel Pierre to produce documents in response to a subpoena duces tecum dated August 5, 2024.

BACKGROUND

Plaintiff American Transit served a non-party subpoena duces tecum to defendant Pierre at FCI Lewisberg, where Pierre is serving his sentence for a related criminal matter. The subpoena required Pierre's response by September 6, 2024. (See Status Report[1] at 2). Pierre did not respond to the subpoena. Instead, at a status conference on October 28, 2024, the Court Ordered Pierre to respond to the subpoena by November 12, 2024. (See ECF No. 93 at 12:2–13:9). On November 14, 2024, the Court granted an extension to that deadline until December 2, 2024 and, in doing so, ruled that "all objections to the subpoena's requests are deemed waived." (ECF No. 97 at 3).

On December 2, 2024, Pierre responded to the subpoena. (See Status Report at 2). However, he responded to each request with the same blanket objection: "CLIENT asserts his rights to invoke the Fifth Amendment and specifically his right against self-incrimination" (See Pl.'s Resp., Ex. A); he produced no documents. On December 11, 2024, the Court Ordered Pierre to provide the Court with legal authority in support of his blanket Fifth Amendment objections by January 10, 2025, and permitted plaintiff to submit a response by January 17, 2025. (Electronic Order, 12/11/2024). On January 16, 2025, Pierre submitted a letter to the Court (ECF No. 143) directing it to three cases—Mitchell v. United States, 526 U.S. 314 (1999); United States v. Lumpkin, 192 F.3d 280 (2d Cir. 1992); and United States v. Bahadar, 954 F.2d 821 (2d Cir. 1999)—presumably for their shared proposition that a guilty plea does not affect a defendant's ability to invoke the Fifth Amendment privilege against self-incrimination. Plaintiff filed its response on January 17, 2025, pointing out that Pierre's legal authority was untimely and

---

[1] References to "Status Report" refer to the status report filed by American Transit on December 6, 2024 (ECF No. 105). References to "Pl.'s Resp." refer to plaintiff's letter filed on January 17, 2025 (ECF No. 145) in response to defendant's letter containing the legal authority for its Fifth Amendment objections.

2

reiterating its argument that Pierre's Fifth Amendment objections were "ineffective." (See generally Pl.'s Resp.). Without leave, Pierre filed a reply to plaintiff's response, underlining his belief that he had not waived his Fifth Amendment privilege against self-incrimination. (See ECF No. 148). On February 3, 2025, plaintiff moved to strike Pierre's reply because it was "unauthorized and non-responsive to the December 11, 2024 Order of the Court." (See generally ECF No. 149).

Meanwhile, defendant Pierre has been in default by failing to file an Answer or otherwise respond to the underlying Complaint in this action. On April 9, 2024, plaintiff moved for default judgment against Pierre (ECF No. 37), and the Court ordered that Pierre "either arrange with plaintiff to pay [the] costs of [a] default judgment motion or file [a] motion to vacate." (Minute entry, dated June 13, 2024). On July 26, 2024, Pierre moved to vacate the default (ECF No. 73), and on August 27, 2024, this Court recommended that the district court grant the motion to vacate and order Pierre to pay a reasonable portion of plaintiff's attorney's fees. (ECF No. 77). The district court adopted the report and recommendation on March 19, 2025, and directed plaintiff to submit documentation to support the fee award. (ECF No. 153). On August 25, 2025, this Court issued a Report, recommending that the district court grant plaintiff's fee application and order Pierre to pay the plaintiff's fees by September 9, 2025. (ECF No. 187). Pierre has not paid those fees and therefore remains in default. (See ECF No. 194).

## DISCUSSION

A. Waiver

A party's Fifth Amendment privilege is "neither absolute nor self-executing; it may be affirmatively waived or lost if not asserted in a timely fashion." In re Gorsoan Ltd., No. 17 CV

3

5812, 2020 WL 3172777, at *6 (S.D.N.Y. June 15, 2020) (quotations and alterations omitted) (quoting Maness v. Meyers, 419 U.S. 449, 466 (1975)). "[L]itigation conduct short of a 'knowing and intelligent waiver,'" including the failure to timely assert the privilege in response to a subpoena, may waive a party's Fifth Amendment privilege. In re DG Acquisition Corp., 151 F.3d 75, 80–81 (2d Cir. 1998) (holding that "a person responding to a subpoena should at least assert any privileges within…14 days") (quoting Garner v. United States, 424 U.S. 648, 654 n. 9 (1976)). See also Parlin Funds LLC v. Gilliams, No. 11 CV 2534, 2012 WL 5265554, at *3 (S.D.N.Y. June 15, 2012) (denying Fifth Amendment privilege objection because the court's previous order held that any objections to discovery demands were waived "by virtue of defendants' prolonged unexcused defaults"). Although the failure to object to a subpoena in a timely fashion does not necessarily waive a party's Fifth Amendment privilege, see SPV-LS, LLS v. Herbst, No. 16 MC 187, 2016 WL 8711738, at *2 (S.D.N.Y. June 3, 2016), the decision over whether unreasonable delay waived the privilege is left to the trial court's discretion. In re Gorsoan Ltd., 2020 WL 3172777, at *6 (S.D.N.Y. June 15, 2020) (citing In re DG Acquisition Corp., 151 F.3d at 82)).

Here, Pierre's failure to object was more than mere inaction—he was in complete default of his obligations to comply with the subpoena. It was not until the Court held a status conference and plaintiff stated on the record that Pierre was in default of his discovery obligations that defendant's counsel even acknowledged the subpoena. (See ECF No. 93 at 4:4-9). In fact, Pierre's counsel refused service of the subpoena and then told the Court that the subpoena was never served upon them. (See ECF No. 93 at 8:11-19 (where plaintiff's counsel represented to the Court that they "subpoenaed [Pierre] where he [was] confined at prison. The reason we had to do that is because we reached out to [Pierre's attorney] and requested, will you

4

accept service for your client, Mr. Pierre, which they refused"). This claim by Pierre's counsel denying service of the subpoena "smacks of procedural gamesmanship and dilatory tactics," warranting a finding of waiver. See In re Gorsoan Ltd., 2020 WL 3172777, at *7 (citation omitted). Although this Court granted an extension of time for Pierre to respond, Pierre's failure to respond to the subpoena for over two months and his failure to timely request an extension of time prompted the Court to rule on November 14, 2024 that "all objections to the subpoena's requests are deemed waived." (ECF No. 97 at 3).

B. Fifth Amendment Privilege

Although the Court has previously found all objections waived, the Court nonetheless has examined plaintiff's claim of self-incrimination. Under the Fifth Amendment, no person "shall be compelled to be a witness against himself." U.S. Const. amend. V. "The burden of establishing entitlement to the Fifth Amendment privilege rests with the person asserting it." Krape v. PDK Labs, Inc., No. 02 CV 3440, 2004 WL 831137, at *3 (E.D.N.Y. Apr. 19, 2004) (citing Estate of Fisher v. C.I.R., 905 F.2d 645, 649–50 (2d Cir. 1990)). To meet this burden, the party asserting the privilege must show that the documents sought would "furnish a link in the chain of evidence needed to prosecute." Hoffman v. United States, 341 U.S. 479, 486 (1951). The witness must make a detailed showing because "his say-so does not of itself establish that hazard of incrimination." Id. Thus, a blanket assertion of the privilege does not satisfy this burden. Cadlerock Joint Venture, L.P. v. MacPherson, No. 09 CV 9970, 2011 WL 1795312, at *2 (S.D.N.Y. May 4, 2011); New York ex rel. Khurana v. Spherion Corp., 511 F. Supp. 3d 455, 463 (S.D.N.Y. Jan. 6, 2021) (holding that "[i]t is well established that 'blanket assertion[s]' of the Fifth Amendment privilege are impermissible.") (citing United States v. Bowe, 698 F.2d 560, 566 (2d Cir. 1983)). Rather, the proper procedure is for the witness to make an individualized

5

determination for each discovery request and respond to those for which he is able to respond without risking self-incrimination. Krape v. PDK Labs, Inc., 2004 WL 831137, at *4.

For documents to fall under the protections of the Fifth Amendment, they must be " 'testimonial, incriminating, and compelled.' " Government Emps. Ins. Co. v. Kalitenko, No. 22 CV 3804, 2023 WL 112803, at *2 (E.D.N.Y. Jan. 5, 2023) (quoting Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cnty., 542 U.S. 177, 189 (2004)); Slavin v. Artus, No. 05 CV 0870, 2010 WL 185108, at *3 (E.D.N.Y. Jan. 8, 2010). The Fifth Amendment privilege does not apply to business records or to records whose creation is required by law. See Braswell v. United States, 487 U.S. 99, 102 (1988) (holding that the contents of subpoenaed business records are not privileged); In re Two Grand Jury Subpoenae Duces Tecum Dated Aug. 21, 1985, 793 F.2d 69, 73 (2d Cir. 1986); Government Emps. Ins. Co. v. Kalitenko, 2023 WL 112803, at *3. Nor does the privilege protect the content of business or personal records which are voluntarily prepared. United States v. Bedell & Co., No. 06 CV 0342, 2006 WL 3813792, at *1 (E.D.N.Y. Oct. 30, 2006). See Government Emps. Ins. Co. v. Kalitenko, 2023 WL 112803, at *4 (holding that the contents of voluntarily prepared records "are not privileged unless the subpoenaed individual is compelled to restate, repeat, or affirm the contents' truth") (quotation omitted).

Additionally, "the Fifth Amendment does not protect the contents of an individual's business records in his own possession" because these voluntarily prepared documents "cannot be said to contain compelled testimonial evidence in and of themselves." In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992, 1 F.3d 87, 92 (2d Cir. 1993) (citing United States v. Doe, 465 U.S. 605, 610, 612 n. 9 (1984)) (quotation omitted). Thus, a witness cannot claim the privilege over the *contents* of documents demanded. Id. (citing Baltimore Dep't of Soc. Servs. v. Bouknight, 493 U.S. 549, 554–55 (1990)). "[B]ooks, invoices, bank records, deposit slips,

6

cancelled checks, and any other record of a doctor's business," for example, "are normally not entitled to any protection on the basis of their contents." United States v. Fox, 549 F. Supp. 1362, 1366 (S.D.N.Y. 1982).

However, the mere act of producing documents may be testimonial in nature, and a witness may resist such production if doing so would be self-incriminating. In re Grand Jury Subpoena Issued June 18, 2009, 593 F.3d 155, 157 (2d Cir. 2010). This 'act of production doctrine' applies when the act of production *itself* "was (1) compelled, (2) testimonial, and (3) incriminating, in that compliance was the equivalent of forced testimony as to the existence, unlawful possession, and/or authenticity of the documents, as well as a belief that the produced documents matched those requested by the subpoena." United States v. Gendreau, No. 12 MC 303, 2014 WL 464754, at *2 (S.D.N.Y. Jan. 22, 2014) (quoting In re Three Grand Jury Subpoenas Duces Tecum Dated Jan. 29, 1999, 191 F.3d 73, 176 (2d Cir.1999)).

The act of production doctrine is not without exception. Documents required to be kept by law or regulation are not covered by the doctrine. Ashkenazi as Tr. of Halpert Alexander Tr. v. Lincoln Nat'l Life Ins. Co., No. 08 CV 3235, 2010 WL 11623469, at *6 (E.D.N.Y. Aug. 27, 2010). "Since the law requires that these records be maintained, they acquire a certain 'public aspect' and an individual 'admits little of significance by producing them.' " Id. (quoting In re Grand Jury Subpoena Duces Tecum Served Upon Randall Underhill, 781 F.2d 64, 70 (6th Cir. 1986). To be considered a required record, a document must satisfy a three-part test: "(1) it must be legally required for a regulatory purpose, (2) it must be of a kind that the regulated party customarily keeps, and (3) it must have assumed 'public aspects' which render it analogous to public documents." Id. Courts have already held that the required records exception applies to

7

tax filings, In re Doe, 711 F.2d 1187, 1191 (1983), and healthcare providers' patient files. In re Doe, 97 F.R.D. 640, 641–43 (S.D.N.Y. 1982).

The act of production doctrine also does not apply where the existence and location of subpoenaed documents can be demonstrated with "reasonable particularity." In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992, 1 F.3d at 93 (2d Cir. 1993). The existence and location of a subpoenaed document is a "foregone conclusion[]" if it has already been produced in another action. See Id. See also Benthos Master Fund, Ltd. v. Etra, No. 20 CV 3384, 2023 WL 4350594, at *10–11 (S.D.N.Y. July 5, 2023) (holding that witness has not established a risk of prosecution over documents and information he has already voluntarily produced); In re Gorsoan, No. 17 CV 5912, 2020 WL 6891520, at *4 (S.D.N.Y. Nov. 23, 2020) (finding no increased risk of prosecution where witness "has already produced thousands of additional documents…many of which cover the same subject matter" as the discovery request).

Defendant Pierre's invocation of the Fifth Amendment here is faulty for several reasons. First, Pierre has made the same blanket objection to each of the eighty subpoena requests. As discussed above, this is insufficient. Infra at 5–6. See Cadlerock Joint Venture, L.P. v. MacPherson, 2011 WL 1795312, at *2 (holding that "[t]he simple expedient of repeating the same objection over and over again is no less a blanket assertion of the privilege than a single assertion of the privilege in response to all the document requests"). Second, the subpoena seeks personal and business records that do not fall under the protection of the Fifth Amendment, such as employment agreements, providers' medical records, books and bank accounts, cancelled checks, and other business records. (See generally Pl.'s Resp., Ex. A). Third, many of the documents sought are required records and fall outside of the reach of the Fifth Amendment.

8

Finally, to the extent the subpoena seeks documents already produced in Pierre's related criminal proceeding, he cannot claim the privilege.

### C. Contempt

Plaintiff asks this Court to hold defendant Pierre in contempt for his failure to respond to its subpoena. (Pl.'s Resp. at 3). Federal Rule of Civil Procedure 45(e) provides that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." Defiance of a subpoena exposes the defiant witness to sanctions, but "contempt should be very sparingly applied." Sterling Nat'l Bank v. A-1 Hotels, Int'l, Inc., No. 00 CV 7352, 2004 WL 1418201, at *3 (S.D.N.Y. June 23, 2004). The Court may hold a witness in civil contempt if "(1) the order he failed to comply with was clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." Hernandez v. Sub Ents. Inc., No. 21 CV 1874, 2023 WL 2390543, at *2 (E.D.N.Y. Mar. 7, 2023).

All three requirements are met here to hold Pierre in contempt. The Court ordered Pierre to respond to the subpoena within two weeks of the October 28, 2024 status conference (ECF No. 93 at 12:2–13:9), and granted an extension "until December 2, 2024 to produce documents," but warned that "all objections to the subpoena's requests are deemed waived." (ECF No. 97 at 3). These directives are definite and unambiguously direct Pierre to the conduct required by the Court's orders. See Leser v. U.S. Bank Nat'l Ass'n, No. 09 CV 2362, 2011 WL 1004708, at *8 (E.D.N.Y. Mar. 18, 2011) (holding that "a clear and unambiguous order is one specific and definite enough to apprise those within its scope of the conduct that is being proscribed ") (citing Medallic Art Co. v. Novus Mktg., No. 99 CV 502, 2003 WL 22053130, at *1 (S.D.N.Y. Sept. 2, 2003)).

It is also certain that a violation occurred and Pierre made no reasonable or diligent attempt to comply.  The original subpoena was due on September 6, 2024 (see Status Report at 2), but Pierre did not even acknowledge the subpoena until the Court's status conference on October 28, 2024.  (See ECF No. 93 at 12:2–13:9).  Moreover, Pierre's counsel refused to accept service of the subpoena.  (ECF No. 93 at 8:11-19).  Counsel's conduct is thus beyond a mere lack of reasonable diligence required to avoid contempt.  See Leser v. U.S. Bank Nat'l Ass'n, 2011 WL 1004708, at *10 (holding that "there can be no finding of contempt if it has been shown that the alleged contemnor has been reasonably diligent and energetic in attempting to accomplish what was ordered") (quotation omitted); Hernandez v. Sub Ents., Inc., 2023 WL 2390543, at *4 (finding that a witness was "not reasonably diligent" where he "consistently failed to comply with [a discovery] Order" and "has not made any productions").

Pierre also has no "adequate excuse" for not responding to the subpoena.  See Fed. R. Civ. P. 45(e).  In addition to its attempt to serve counsel, plaintiff served defendant Pierre directly at FCI Lewisberg, where he is serving a sentence for his related criminal conviction.  (ECF No. 93 at 8:11-19).  There is no dispute that Pierre was directly served.  Additionally, Pierre's improper and untimely invocation of Fifth Amendment privilege is not an adequate excuse.  See Diamant v. GMS Diamonds Corp., No. 04 CV 2636, 2004 WL 2710028, at *2 (S.D.N.Y. Nov. 24, 2004) (holding that "any claim of privilege against self-incrimination is not an adequate excuse" for subpoena non-compliance).

That stated, the Court's power to hold a party in contempt is discretionary.  18 U.S.C. § 401.  The Court's contempt power "is an 'inherent power' of the court, 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  Hernandez v. Sub Ents. Inc., 2023 WL

10

2390543, at *2 (quoting People by Abrams v. Terry, 45 F.3d 17, 23 (2d Cir. 1995)). Since the parties filed their briefs, the Court has recommended that the district court enter default judgment against Pierre (ECF No. 187), and his attorneys have moved to withdraw. (ECF No. 189). Considering Pierre has been in an unstable procedural posture pending default judgment and that his attorneys are attempting to withdraw, combined with the consideration that contempt is a drastic remedy, see Sterling Nat'l Bank v. A-1 Hotels, Int'l, Inc., 2004 WL 1418201, at *3, the Court will provide Pierre with a final opportunity to avoid being held in contempt of Court.[2] However, if Pierre continues to defy the Court's Orders to comply with the subpoena, it will recommend that the district court deploy sanctions upon him.

## CONCLUSION

For the reasons stated above, the Court Orders defendant Pierre to produce the documents requested by the subpoena by October 8, 2025. The Court also denies plaintiff's request to hold Pierre in contempt on the condition that Pierre comply with the Court's Order to produce the documents requested. The parties shall file a status report as to compliance with this Order by October 10, 2025. Plaintiff's Motion to strike Pierre's January 31, 2025 reply is denied as moot.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

---

[2] Although plaintiff did not ask the Court to draw an adverse inference from Pierre's Fifth Amendment privilege claim, the Court notes that an adverse inference is another remedy in civil matters where a party asserts the privilege because invoking the privilege disadvantages the opposing party by keeping them from obtaining information they could otherwise get. United States Securities & Exch. Comm'n v. Suman, 684 F. Supp. 2d 378, 386 (S.D.N.Y. Feb. 11, 2010) (citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976)). The purpose of the adverse inference is to "restor[e] the prejudiced party to the same position he would have been absent" the failure to produce evidence. In re Terrorist Attacks on Sept. 11, 2001, No. 03 MDL 1570, 2017 WL 634706, at *4 (S.D.N.Y. Feb. 15, 2017) (citing Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)). Here, however, the Court recommended that the district court enter default judgment against Pierre as to liability (ECF No. 187). An Order allowing the trier of fact to draw an adverse inference would therefore do nothing to restore plaintiff to the same position it would have been in absent Pierre's failure to comply with the subpoena.

**SO ORDERED.**

Dated: Brooklyn, New York
September 17, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York