UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                              Docket No.: 1:24-cv-00360
------------------------------------------------------------------------
AMERICAN TRANSIT INSURANCE COMPANY,

                              Plaintiff,

    -against-

BRADLEY PIERRE, MARVIN MOY, M.D., RUTLAND
MEDICAL P.C., WILLIAM A. WEINER, D.O., NEXRAY
MEDICAL IMAGING, P.C. d/b/a SOUL RADIOLOGY
MEDICAL IMAGING and JOHN DOES 1-15,

                              Defendants.
------------------------------------------------------------------------

## DEFENDANT NEXRAY MEDICAL IMAGING P.C. AND WILLIAM A. WEINER, D.O.'S  OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AS TO PREJUDGMENT ATTACHMENT

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

PROCEDURAL BACKGROUND ................................................................................................ 3

STANDARD OF REVIEW ........................................................................................................... 4

ARGUMENT ................................................................................................................................. 5

    I.    PLAINTIFF HAS NOT DEMONSTRATED A
         PROBABILITY OF SUCCESS ON THE MERITS............................................................ 5

         A.    The Report and Recommendation Relied on a Preliminary Injunction
               Predicated on a Now-Abandoned *Mallela* Theory .................................................. 5

         B.    The Report and Recommendation Disregards Undisputed Evidence
               That Dr. Weiner Owned and Controlled Nexray ....................................................... 8

         C.    The Report and Recommendation Overlooks Expert Evidence That
               Nexray's Radiology Practice Conformed to Accepted Medical Standards .......... 10

    II.    PLAINTIFF HAS NOT ESTABLISHED A STATUTORY GROUND
          FOR ATTACHMENT UNDER CPLR § 6201(3) ................................................................11

CONCLUSION ............................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*American Transit Ins. Co. v. Nexray*,
  Index No. 532295/2022 (N.Y. Sup. Ct. Kings Cnty.) ............................................................... 12

*Arias-Zeballos v. Tan*,
  2007 U.S. Dist. LEXIS 5069 (S.D.N.Y. Jan. 24, 2007) ............................................................ 14

*Capital Ventures Int'l v. Republic of Argentina*,
  443 F.3d 214 (2d Cir. 2006) ........................................................................................................ 5

*Dafeng Hengwei Textile Co. v. Aceco Indus. & Commer. Corp.*, 54 F. Supp. 3d 279, 286
  (E.D.N.Y. Nov. 7, 2014) ............................................................................................................ 13

*Dayco Corp. v. Foreign Transactions Corp.*,
  1982 U.S. Dist. LEXIS 10093, at *16 (S.D.N.Y. Sep. 30, 1982) ............................................. 13

*Defazio v. Wallis*,
  459 F. Supp. 2d 159, 162 (E.D.N.Y. Oct. 17, 2006) .................................................................. 4

*DLJ Mortg. Capital v. Kontogiannis*,
  594 F. Supp. 2d 308, 319 (E.D.N.Y. Jan. 20, 2009) ............................................................. 5, 13

*Encore Credit Corp. v. Lamattina*,
  2006 U.S. Dist. LEXIS 2935, at *7 (E.D.N.Y. Jan. 18, 2006) ................................................... 3

*Funding Holding, Inc. v. Carrera*,
  2017 U.S. Dist. LEXIS 233797, at *5 (E.D.N.Y. Jan. 31, 2017) ............................................... 5

*Grp. One Ltd. v. GTE GmbH*,
  2023 U.S. Dist. LEXIS 164561, at *7 (E.D.N.Y. Sep. 15, 2023) .......................................... 1, 5

*Iraq Telecom Ltd. v. IBL Bank S.A.L.*,
  43 F.4th 263 (2d Cir. 2022) .................................................................................................. 5, 14

*Perrotta v. Giannoccaro*,
  151 Misc. 2d 155, 532 N.Y.S.2d 998 (Sup. Ct. Monroe Cty. 1988) ........................................ 14

*Qing Cong Wen v. CT & TC Corp.*,
  2017 U.S. Dist. LEXIS 1713 (E.D.N.Y. Jan. 5, 2017) ............................................................... 5

*Signal Capital Corp. v. Frank*,
  895 F. Supp. 62 (S.D.N.Y. Aug. 11, 1995) .............................................................................. 13

*State Farm Mut. Auto. Ins. Co. v. Mallela*,
  4 N.Y.3d 313 (2005) ................................................................................................................... 9

*United States v. Weiner*,
  No. 1:22-cv-00019-PGG (S.D.N.Y.) ............................................................................... 2, 6, 13

*Zapoteco v. Rapi, Inc.*,
  2021 U.S. Dist. LEXIS 93403 (E.D.N.Y. May 17, 2021) ........................................................ 11

**Statutes**

28 U.S.C. § 636 .................................................................................................................. 1, 4

CPLR § 6201 ..................................................................................1, 3, 5, 10, 11, 12, 13, 14, 15

CPLR § 6212 ......................................................................................................................10, 11

Fed. R. Civ. P. 72(a) ................................................................................................................ 4

Public Health Law § 238-a ...................................................................................................... 3

**Rules**

Rule 72(a)................................................................................................................................. 4

Pursuant to 28 U.S.C. § 636 and Rule 72(b)(2) of the Federal Rules of Civil Procedure, Defendants William A. Weiner, D.O. ("Dr. Weiner") and Nexray Medical Imaging, P.C. d/b/a Soul Radiology Medical Imaging ("Nexray"), collectively, (the "Nexray Defendants"), by and through their undersigned counsel, Schwartz, Conroy & Hack, P.C., respectfully object to the Magistrate Judge's September 9, 2025 Report and Recommendation on plaintiff American Transit Insurance Company's ("American Transit") motion for prejudgment attachment, and further request that the District Court conduct a de novo review of the Report in its entirety. Nexray specifically objects to the Magistrate Judge's recommendation that the District Court grant a prejudgment attachment against the Nexray Defendants in the amount of $10,720,000, while requiring Plaintiff to post an undertaking of only $72,000.[1]

## PRELIMINARY STATEMENT

The Magistrate Judge committed reversible error in recommending prejudgment attachment. Under New York law, attachment is a "drastic remedy" that must be "strictly construed in favor of those against whom it may be employed." *Grp. One Ltd. v. GTE GmbH*, 2023 U.S. Dist. LEXIS 164561, at *7 (E.D.N.Y. Sep. 15, 2023). The Magistrate Judge nevertheless concluded that Plaintiff had demonstrated both a probability of success on the merits and that the Nexray Defendants, with intent to defraud creditors or frustrate enforcement of a judgment, had "assigned, disposed of, encumbered, or secreted property, or removed it from the state or [were] about to do any of these acts." CPLR § 6201(3).

The Magistrate Judge's reliance on Dr. Weiner's allocution was misplaced. After clarification, Dr. Weiner did not admit that his prior statements at the Examinations Under Oath

---

[1] Defendant Bradley Pierre has requested a stay of their time to respond to the Report and Recommendation. *See* ECF No. 196. Defendant Marvin Moy, M.D. and Rutland Medical P.C. have not answered as Defendant Moy was apparently lost at sea and is presumably deceased.

1

("EUOs") were made because he knew he was not lawfully entitled to insurance reimbursements. To the contrary, when questioned directly, Dr. Weiner explained that he believed the omission would delay payment of claims, not that reimbursement was unlawful: .

> THE COURT: All right. So are you saying that the attorney was aware that as a result of Bradley Pierre's role in your medical practice, that it was not lawful to obtain medical reimbursement from the insurance company?
>
> THE DEFENDANT: That's fair to say, your Honor.
>
> THE COURT: Okay. *And so I want to be clear* that with respect to their effort to obtain reimbursement from the insurance company, you understood at the time that because of Bradley Pierre's role in your medical practice, you did not have a right to obtain reimbursement for the medical claims?
>
> THE DEFENDANT: I understood that I had the right to make claims to the insurance company but that they would contest his role in my medical practice to deny the payments.
> THE COURT: Right. And because of that, you did not disclose to the insurance companies Bradley Pierre's role in your medical practice?
>
> THE DEFENDANT: That's correct.

Transcript of Allocution of Dr. Weiner, Jan. 16, 2024, **Ex. A**, at 21–22 (emphasis added).

The Report and Recommendation failed to account for this clarification and improperly treated the allocution as a concession that Dr. Weiner knowingly submitted unlawful claims. Moreover, the allocutions do not resolve the civil issues presently before the Court.

That conclusion is reinforced by Judge Gardephe's Restitution Order in *United States v. Weiner*, No. 22-cr-19 (S.D.N.Y. Dec. 18, 2024) ("Restitution Order"), **Ex. B**.[2] In that Order, the Court expressly declined to impose restitution and noted that the Government had abandoned any attempt to prove that Pierre controlled Nexray or that Dr. Weiner perjured himself regarding Pierre's role. *See* Ex. B at 15–16. The Court further observed that "the most serious allegations

---

[2] The Restitution Order was attached as Exhibit 1 to the Nexray Defendants' Sur-Reply in Further Support of the Nexray Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Writ of Prejudgment Attachment (ECF No. 141).

2

against Dr. Weiner have melted away, leaving only an attempt to minimize the involvement of a nonphysician in his MRI practice and a relatively small amount of tax fraud," and acknowledged the Government's representation that it "does not contend for sentencing purposes that [Dr. Weiner] committed a substantive *Mallela* violation." *Id.* at 6. The Restitution Order confirms that there was no guilty plea as to any *Mallela* violation and that the Government itself conceded those allegations had been withdrawn.

Accordingly, Plaintiff's reliance on Dr. Weiner's allocutions as evidence of fraudulent intent or concealment of assets is misplaced. Neither the allocutions nor the Restitution Order demonstrate that Dr. Weiner or Nexray engaged in any conduct indicative of concealing, dissipating, or transferring assets to frustrate creditors. Plaintiff has not made a showing that the Nexray Defendants acted with the kind of fraudulent intent contemplated by CPLR § 6201(3), nor has it identified any improper disposition of property. Absent such proof, prejudgment attachment is unwarranted. The Magistrate Judge's recommendation of attachment in the amount of $10,720,000, secured by an undertaking of only $72,000, is contrary to law and should be rejected.

## **PROCEDURAL BACKGROUND**

Plaintiff commenced this action on January 17, 2024 alleging civil RICO violations, fraud, unjust enrichment, violation of Public Health Law § 238-a, and a declaratory judgment seeking a determination that the professional corporations are ineligible for reimbursement for unpaid claims. Nearly ten months later, on November 13, 2024, Plaintiff filed the present motion for a prejudgment writ of attachment under New York Law. *See* ECF No. 120.

As set forth more fully below, and in the Nexray Defendants' opposition to that motion (*see* ECF No. 124), the Magistrate Judge erred in recommending that Plaintiff's motion be granted. *See* ECF No. 192 ("Report and Recommendation"). Plaintiff has presented no evidence that Dr. Weiner

3

or Nexray transferred, concealed, or dissipated assets, nor has it identified any conduct by the Nexray Defendants undertaken with the intent to defraud creditors. Plaintiff likewise has failed to adduce competent proof that Bradley Pierre ("Pierre") owned or controlled Nexray. In the absence of such a showing, Plaintiff cannot establish the factual predicate necessary to support either its substantive claims or its extraordinary request for prejudgment attachment.

## STANDARD OF REVIEW

When a pretrial matter "not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed. R. Civ. P. 72(a). Pursuant to 28 U.S.C. § 636 and Rule 72(a), any party may serve and file written objections within fourteen days after being served with a copy of the magistrate judge's proposed findings and recommendations, as provided by the rules of court. Upon the filing of such objections, the district court is then required to make a *de novo* determination as to those portions of the report, or specified proposed findings or recommendations, to which objection is directed. When considering an appeal of magistrate judge's ruling on a non-dispositive matter, a district judge "shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a)*; see also Defazio v. Wallis*, 459 F. Supp. 2d 159, 162 (E.D.N.Y. Oct. 17, 2006)

Moreover, the granting of prejudgment attachment is discretionary, "and even when the statutory requisites are met, the order may be denied." *Encore Credit Corp. v. Lamattina*, 2006 U.S. Dist. LEXIS 2935, at *7 (E.D.N.Y. Jan. 18, 2006) (concluding that attachment remains discretionary even where statutory requisites are met).

4

# ARGUMENT

To obtain an order of attachment under New York law, a plaintiff must demonstrate: "(1) it has a cause of action for a money judgment, (2) there is a probability of success on the merits, (3) one or more of the enumerated statutory grounds for attachment under N.Y. CPLR § 6201 exists, and (4) the amount demanded exceeds the amount of all counterclaims known to the party seeking the attachment." *Capital Ventures Int'l v. Republic of Argentina*, 443 F.3d 214 (2d Cir. 2006).

Attachment is "a drastic remedy," and is "strictly construed in favor of those against whom it may be employed." *Iraq Telecom Ltd. v. IBL Bank S.A.L.,* 43 F.4th 263 (2d Cir. 2022); *Grp. One Ltd.*, 2023 U.S. Dist. LEXIS 164561, at *7; see *DLJ Mortg. Capital v. Kontogiannis*, 594 F. Supp. 2d 308, 319 (E.D.N.Y. Jan. 20, 2009); *Qing Cong Wen v. CT & TC Corp.*, 2017 U.S. Dist. LEXIS 1713 (E.D.N.Y. Jan. 5, 2017). The remedy "deprives the defendant of the use and enjoyment of property at an extremely embryonic stage of the litigation[,] ... long before the defendant's liability to the plaintiff is established." *Plaintiff Funding Holding, Inc. v. Carrera*, 2017 U.S. Dist. LEXIS 233797, at *5 (E.D.N.Y. Jan. 31, 2017) (quotation omitted) (denying motion for attachment where plaintiff failed to demonstrate grounds under CPLR §§ 6201(1) and 6201(3)). As such, courts in this Circuit have consistently required plaintiffs to satisfy a heavy burden to justify its imposition. Plaintiff has not met that burden here. For the reasons set forth below, Plaintiff's motion should have been denied.

## I. PLAINTIFF HAS NOT DEMONSTRATED A PROBABILITY OF SUCCESS ON THE MERITS

### A. The Report and Recommendation Relied on a Preliminary Injunction Predicated on a Now-Abandoned *Mallela* Theory

The Magistrate Judge's determination that Plaintiff demonstrated a probability of success on the merits is unsustainable. The Report and Recommendation rests almost entirely on this Court's May 16, 2024 preliminary injunction order (ECF No. 52), which found a likelihood of

5

success based on Dr. Weiner's January 16, 2024 plea allocution in the related criminal proceeding, *United States v. Weiner*, No. 22-cr-19. *See* Report and Recommendation at 6 (citing ECF No. 385 at 19–21)).[3] However, the record in *United States v. Weiner* developed after entry of the preliminary injunction clearly demonstrates that Plaintiff's theory cannot be sustained on the basis of Dr. Weiner's allocution. Most critically, the Government expressly abandoned its contention that Dr. Weiner committed a substantive *Mallela* violation, conceding in its August 9, 2024 submission that it would not pursue that theory even for sentencing purposes. *See Weiner*, ECF No. 453, at 3 (Government Letter, Aug. 9, 2024).

Following the May 16, 2024 order, significant developments occurred in the related criminal proceeding. After Dr. Weiner's January 16, 2024 plea allocution, the parties submitted extensive sentencing papers that raised numerous material factual disputes concerning his conduct, many of which bore directly on culpability. The Court directed the parties to confer in an attempt to resolve those disputes absent a *Fatico* hearing, which resulted in a series of concessions from the Government.

Initially, the Government advanced the position that Dr. Weiner had "effectively sold his medical license" to Pierre in order to conceal that Pierre owned and controlled Nexray, and further that Dr. Weiner had repeatedly perjured himself about Pierre's involvement in the practice. *Id.*, ECF No. 427, at 1 (Government Letter, June 4, 2024). Dr. Weiner, by contrast, consistently maintained that he owned and controlled his practice, that he made all material business and clinical decisions, and that any minimization of Pierre's role was motivated by a belief that insurers

---

[3] The Report and Recommendation incorrectly identifies the allocution as having occurred on December 18, 2023. The docket reflects that Dr. Weiner entered his plea on January 16, 2024. *See United States v. Weiner*, No. 22-cr-19 (PGG) (S.D.N.Y.), ECF No. 385.

6

would exploit Pierre's involvement to deny otherwise valid claims. *Id.*, ECF No. 418, at 4–6 (Defense Letter, May 28, 2024).

Ultimately, the Government abandoned the core of its healthcare fraud theory. By letter dated June 26, 2024, it represented that it would "voluntarily forego attempting to establish" that Dr. Weiner committed a substantive *Mallela* violation or repeatedly perjured himself about Pierre's role. *Id.*, ECF No. 434, at 1 (Government Letter, June 26, 2024). By August 9, 2024, the Government formally confirmed that it would not contend, even for sentencing purposes, that Dr. Weiner committed a substantive *Mallela* violation. *Id.*, ECF No. 453, at 3.

Judge Gardephe's December 18, 2024 Restitution Order underscores the significance of these concessions. The Court declined to impose restitution with respect to Farmers Insurance Exchange, expressly noting that once the Government abandoned its *Mallela*-based fraudulent incorporation theory, there was no evidentiary basis to conclude that Farmers or any other insurer had sustained a compensable loss. *Id.*, ECF No. 509, at 14–16 (Restitution Order, Dec. 18, 2024).[4] The Court further explained that "the Government's concessions concerning these issues … go to the core of the case against Dr. Weiner" and that "the most serious allegations … have melted away, leaving only an attempt to minimize the involvement of a nonphysician in his MRI practice." *Id.* at 5–7, 33. Thus, the sentencing court acknowledged that the fraudulent incorporation theory on which Plaintiff relies had collapsed, and that the record could not support restitutionary relief predicated on that theory.

Given the Government's concessions and the sentencing court's recognition that the fraudulent incorporation theory had collapsed, Plaintiff cannot satisfy its "particularly daunting"

---

[4] Attached hereto as Ex. B and as Ex. 1 to the Nexray Defendants' Sur-Reply in Further Support of the Nexray Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Writ of Prejudgment Attachment (ECF No. 141).

7

burden of establishing a probability of success sufficient to warrant prejudgment attachment. *See Buy This, Inc. v. MCI Worldcom Commc'ns, Inc.*, 178 F. Supp. 2d 380, 383 (S.D.N.Y. Nov. 27, 2001).

### B. The Report and Recommendation Disregards Undisputed Evidence That Dr. Weiner Owned and Controlled Nexray

The Magistrate Judge disregarded the undisputed evidence demonstrating that Dr. Weiner owned and controlled Nexray. This omission alone warrants rejection of the Report and Recommendation. The record establishes that Dr. Weiner incorporated Nexray on April 19, 2011, more than five years before he entered into the financing agreement with Pierre's company, Medical Reimbursement Consultants, Inc. ("MRC"), dated November 15, 2016 (the "Financing Agreement"). No management services agreement ever existed between Dr. Weiner and MRC. In the absence of such an agreement, Dr. Weiner retained complete authority over hiring, firing, borrowing, spending, and all other aspects of the practice. *See* Report of Mark Zafrin, **Ex. C**.[5]

Moreover, Plaintiff has presented no financial or operational evidence supporting its claim that Nexray was anything other than an independent, physician-owned practice, nor is there any evidence to suggest that Dr. Weiner was an absentee owner. To the contrary, Dr. Weiner was present at Nexray on a daily, full-time basis, supervised both professional and non-professional staff, and made all operative and financial decisions. *See* Affidavit of William Weiner, D.O., **Ex. D**.[6] He bore the entire financial risk of the practice by personally guaranteeing loans with Valley National Bank and other lenders; including a $650,000 draw term loan used to finance the build-out of the offices. *See* Zafrin Report, Ex. C, ECF No. 125-1. UCC filings confirm that Nexray's equipment and

---

[5] Filed as Exhibit A to the Declaration of Matthew J. Conroy in Support of the Nexray Defendants' Opposition to Plaintiff's Motion for a Prejudgment Attachment, ECF No. 125-1.

[6] Filed as Exhibit B to the Declaration of Matthew J. Conroy in Support of the Nexray Defendants' Opposition to Plaintiff's Motion for a Prejudgment Attachment, ECF No. 125-2.

financing obligations were undertaken solely by Nexray, with repayment secured by Dr. Weiner in his personal capacity. *Id.*

The 2015 sublease for office space between Marvin Moy, M.D., P.C. and Nexray ("Sublease") further confirms physician ownership and control, as Dr. Weiner alone bore responsibility for payment of rent, taxes, and utilities. *Id.* Records confirm that the building's ownership bore no relation to MRC or Pierre, and the Sublease expressly limited use of the space to a radiology practice. *Id.* These arrangements reinforce that Dr. Weiner alone controlled both the physical premises and the financial obligations of the practice.

The Financing Agreement was nothing more than a receivables factoring arrangement, a common and legitimate practice among healthcare providers to manage cash flow in the face of delayed or contested insurance reimbursements. *Id.* Such arrangements are frequently the most cost-effective source of capital for medical practices, particularly those dependent on no-fault and other insurance carriers for a substantial portion of their receivables. Because insurers can (and often do) delay payment, deny claims on technical grounds, or raise disputes regarding medical necessity, providers commonly rely on factoring or funding agreements to maintain liquidity, cover payroll, finance equipment, and ensure uninterrupted patient care. These agreements allow practices to stabilize operations without surrendering ownership or control, and their use is widely recognized as consistent with accepted business practices in the healthcare sector. The Financing Agreement here, drafted by Eric Fader, Esq.—then a partner at Day Pitney, LLP, a nationally recognized healthcare law firm—reflected precisely that function and did not confer any legal control of the practice to Pierre or MRC. *Id.*; *see also* Ex. D (Affidavit of William Weiner, D.O.).

Critically, Nexray's foundational business documents do not exhibit any of the indicia that could lead an insurer, under the dictates of *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313

9

(2005), to withhold reimbursement for no-fault claims on the ground that they were "provided by fraudulently incorporated enterprises to which patients have assigned their claims." *See* Zafrin Report, Ex. C. To the contrary, those documents uniformly reflect legitimate physician ownership and control.

Taken together, Nexray's foundational documents, the Financing Agreement, the Sublease, and its operational records consistently demonstrate that Dr. Weiner owned and controlled the practice. None of these materials suggest that Nexray was fraudulently incorporated, and the Report and Recommendation's failure to account for this record cannot support a finding of probability of success under CPLR §§ 6201 and 6212.

### C. The Report and Recommendation Overlooks Expert Evidence That Nexray's Radiology Practice Conformed to Accepted Medical Standards

The Report and Recommendation also failed to consider unrebutted expert testimony demonstrating that Nexray's radiology practice conformed to accepted medical standards. Plaintiff has repeatedly alleged that Nexray engaged in fraudulent medical practices by altering radiology reports or exaggerating findings. Yet Plaintiff has offered no competent medical evidence to support those claims.

By contrast, the expert report of Dr. Bryan Pukenas, a board-certified radiologist, affirmatively demonstrates that Nexray's radiology reports conformed to accepted clinical guidelines and exhibited no evidence of fabrication or alteration. *See* Report of Dr. Bryan Pukenas, **Ex. E.**[7] Dr. Pukenas concluded that Nexray's imaging studies and corresponding reports were consistent with legitimate radiological practice and reflected the clinical judgment of a practicing radiologist. *Id.*

---

[7] *See also* Conroy Decl. Ex. C, ECF No. 125-3.

10

This conclusion is further reinforced by the Government's own concession in the related criminal proceeding that "no doctor changed a medical report as a result of any communication with Dr. Weiner." *See* Correspondence to Judge Gardephe by the United States Attorney, at 3, **Ex. F**.[8] Thus, both expert review and prosecutorial admissions undermine Plaintiff's claim that Nexray engaged in fraudulent medical practices.

The Report and Recommendation's failure to acknowledge this evidence is material. Where Plaintiff's allegations rest on the assertion that Nexray systematically falsified radiological findings, unrebutted expert testimony and Government concessions to the contrary preclude any finding that Plaintiff has demonstrated a probability of success on the merits under CPLR §§ 6201 and 6212.

## II.  PLAINTIFF HAS NOT ESTABLISHED A STATUTORY GROUND FOR ATTACHMENT UNDER CPLR § 6201(3)

CPLR § 6201(3) authorizes attachment where a defendant, "with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." To invoke this remedy, a plaintiff "bears a heavy burden in attempting to establish [his] right to an attachment, because New York attachment statutes are construed strictly against those who seek to invoke the remedy." *Zapoteco v. Rapi, Inc.*, 2021 U.S. Dist. LEXIS 93403 (E.D.N.Y. May 17, 2021).

The Magistrate Judge nevertheless concluded that Plaintiff had satisfied CPLR § 6201(3). Report and Recommendation at 7–9. That conclusion cannot stand. The Report and Recommendation itself concedes that "[m]uch of the evidence that plaintiff relies on as proof that

---

[8] *See also* Conroy Decl. Ex. B, ECF No. 125-2.

the defendants had secreted funds with the intent to frustrate enforcement of a judgment relates to the improper reimbursements collected by the practices owned by Pierre" and that such allegations "provide little evidence of an intent to frustrate the enforcement of any judgment that may be rendered in the case." *Id.* at 8. Despite acknowledging this shortcoming, the Magistrate Judge deemed the statutory element satisfied as to the Nexray Defendants, citing three circumstances: (1) that Nexray ceased operations in 2022 but continues to pursue No-Fault claims in court; (2) that Pierre, through MRC, has attempted to collect Rutland receivables despite Moy's disappearance; and (3) that approximately $4.4 million of payments to Rutland remain unaccounted for. *Id.* at 8–9.

None of this evidence supports attachment under CPLR § 6201(3). Nexray's continued pursuit of *litigation* is not concealment or fraudulent intent, but a lawful exercise of rights expressly permitted under this Court's May 16, 2024 preliminary injunction, which enjoined defendants solely from pursuing *arbitrations*. *See* Preliminary Injunction Order, ECF No. 52 (May 16, 2024), attached hereto as **Ex. G**. The only litigation cited by the Magistrate Judge is *American Transit Ins. Co. v. Nexray*, Index No. 532295/2022 (N.Y. Sup. Ct. Kings Cnty.), a proceeding initiated by American Transit in 2022 to vacate arbitration awards for medical services rendered in 2019. That case was commenced nearly two years before this Court's May 16, 2024 Order, and nothing in the injunction prohibited Nexray from defending itself in pending litigation. Accordingly, Nexray's participation in the Kings County action cannot reasonably be construed as evidence of concealment or fraudulent intent under CPLR § 6201(3).

The Report and Recommendation also relies on allegations concerning Pierre and his company, MRC, including efforts to collect on claims paid to Rutland after Moy's disappearance, and references to approximately $4.4 million in Rutland insurance payments allegedly

12

unaccounted for. *See* Report and Recommendation at 8–9. None of these matters involve Dr. Weiner or Nexray. There is no evidence that the Nexray Defendants assigned, disposed of, encumbered, or secreted any of their property, or that they removed assets from the state or were about to do so. Plaintiff's attempt to impute the conduct of unrelated entities to the Nexray Defendants falls well short of the statutory requirement that fraudulent intent be proven by competent evidence directed at the defendants whose property is to be restrained.

Plaintiff has offered no competent evidence that Dr. Weiner or Nexray acted with intent to defraud creditors or frustrate enforcement of a judgment. Rather, its invocation of purported "badges of fraud" is premised solely on allegations of prior misconduct in *United States v. Weiner*, No. 1:22-cv-00019-PGG (S.D.N.Y.) and not on any present act of concealment or disposition of assets by the Nexray Defendants. Courts in this Circuit have held that past misconduct is insufficient to establish present intent under CPLR § 6201(3). *See Signal Capital Corp. v. Frank*, 895 F. Supp. 62 (S.D.N.Y. Aug. 11, 1995) (rejecting attachment where plaintiff sought to presume fraudulent intent based on past fraudulent transfers in related litigation); *Dayco Corp. v. Foreign Transactions Corp.*, 1982 U.S. Dist. LEXIS 10093, at *16 (S.D.N.Y. Sep. 30, 1982) (concluding that defendants' admissions of prior misconduct cannot salvage an insufficient showing of ongoing intent to secrete assets). The burden rests with Plaintiff to demonstrate actual or pending transfers undertaken to frustrate collection in this action. No such showing has been made.

Moreover, even if Plaintiff had demonstrated some assignment or disposition of property (which it has not), that alone would be insufficient, as "fraudulent intent must be proven, not simply alleged or inferred, and the facts relied upon to prove it must be fully set forth in the moving affidavits." *DLJ Mortg. Capital, Inc.*, 594 F. Supp. 2d at 313. Specifically, "it must appear that such fraudulent intent really exists in the defendant's mind." *Dafeng Hengwei Textile Co. v. Aceco*

13

*Indus. & Commer. Corp.*, 54 F. Supp. 3d 279, 286 (E.D.N.Y. Nov. 7, 2014).*; see also Arias-Zeballos v. Tan*, 2007 U.S. Dist. LEXIS 5069, at *11–12 (S.D.N.Y. Jan. 24, 2007) (absent a showing of fraudulent intent by affidavit or other competent evidence, "the mere possibility that a defendant may remove assets from New York is too remote to justify prejudgment attachment").

The record in this case confirms the absence of any fraudulent conduct by the Nexray Defendants. Nexray was incorporated in 2011 and operated until 2022. During that time, there is no evidence that Dr. Weiner or Nexray ever secreted or disposed of assets with intent to defraud creditors. To the contrary, they borrowed funds from institutional lenders, pledged assets through properly recorded instruments, and repaid their obligations as they came due. *See* Ex. D (Affidavit of William A. Weiner, D.O). Plaintiff filed this case in early 2024 but waited nearly a year to bring its motion, and it has not identified a single transfer of property by Dr. Weiner or Nexray during the pendency of this litigation. Instead, it points to historic allegations of fraud as a substitute for the present evidentiary showing required under CPLR § 6201(3). That effort fails as a matter of law.

Finally, even if Plaintiff had satisfied the statutory requirements (which it has not) the decision whether to grant an attachment remains a matter of judicial discretion. *See Iraq Telecom Ltd.*, 43 F.4th at 269 ("trial courts have discretion in deciding motions for attachment, and that discretion includes the power to consider nonstatutory factors."). The discretionary nature of the remedy is particularly significant here, where the imposition of an attachment would inflict substantial hardship on defendants absent any credible showing of a present risk of asset dissipation.

The sole case cited by the Magistrate Judge underscores this point. In *Perrotta v. Giannoccaro*, 151 Misc. 2d 155, 532 N.Y.S.2d 998 (Sup. Ct. Monroe Cty. 1988), the court denied

a motion for prejudgment attachment notwithstanding evidence that the defendant had recently transferred assets to his spouse. The court concluded that the plaintiff had failed to establish the requisite probability of ultimate success on the merits. *Id.* at 1000. If attachment was unwarranted under those circumstances, it is all the more inappropriate here, where there is no allegation, *let alone proof*, that the Nexray Defendants have transferred, concealed, or otherwise dissipated assets.

For these reasons, the Report and Recommendation's conclusion that Plaintiff satisfied CPLR § 6201(3) cannot be sustained.

## **CONCLUSION**

For the reasons set forth above, Plaintiff has not met its burden of showing either a probability of success on the merits or a statutory basis for attachment under CPLR § 6201. The Report and Recommendation rests on a preliminary injunction order grounded in a now-abandoned Mallela theory, disregards undisputed evidence that Dr. Weiner owned and controlled Nexray, and ignores expert testimony that Nexray's radiology practice conformed to accepted standards. Nor has Plaintiff shown that the Nexray Defendants acted with the requisite fraudulent intent under CPLR § 6201(3).

Attachment is a drastic remedy, strictly construed against those who seek it. Plaintiff offers no competent evidence of concealment, dissipation, or fraudulent transfers, and the record instead demonstrates the absence of fraudulent intent.

Accordingly, defendants respectfully request that this Court reject the Magistrate Judge's Report and Recommendation and deny Plaintiff's Motion for a Writ of Prejudgment Attachment in its entirety.

Dated: Garden City, New York
      September 23, 2025

        Respectfully submitted,

        **SCHWARTZ, CONROY & HACK, P.C.**

By: _Matthew J. Conroy_
        Matthew J. Conroy, Esq.
        Robert E.B. Hewitt, Esq.
        *Attorneys for the Nexray Defendants*
        666 Old Country Road, 9th Floor
        Garden City, New York, 11530
        (516) 745-1122
        mjc@schlawpc.com
        reh@schlawpc.com