UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
AMERICAN TRANSIT INSURANCE COMPANY,

                Plaintiff,

       v.

BRADLEY PIERRE, et al.,

                Defendants.
-----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
24-CV-0360-SJB-CLP

**BULSARA, United States District Judge:**

      Plaintiff American Transit Insurance Company ("American Transit") has filed a motion to modify a preliminary injunction entered in May 2024. It asks this Court to stay all no-fault insurance collections actions pending against American Transit brought by or on behalf of Defendants Rutland Medical P.C. ("Rutland") and Nexray Medical Imaging, P.C. ("Nexray"). (Pl.'s Mot. to Modify Prelim. Inj. and for TRO dated Nov. 20, 2025 ("Pl.'s Mot. to Modify"), Dkt. No. 223 at 1). The basis for modifying the injunction is an alleged intervening change in law—a decision issued by the Second Circuit over *13* months ago—and the pendency of upcoming trials, which by any measure, it has known about for many months. American Transit's long delay in seeking modification demonstrates that there is no irreparable harm that warrants modification. Furthermore, there is no legal basis for such relief—the supposed change in law is anything but.

      American Transit commenced this case against Bradley Pierre, Marvin Moy, M.D., Rutland Medical P.C., William A. Weiner, D.O., and Nexray Medical Imaging,

P.C. d/b/a Soul Radiology Medical Imaging (collectively, "Defendants") on January 17, 2024, asserting violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and related state laws. (Compl. dated Jan. 17, 2024, Dkt. No. 1 ¶¶ 1, 6–7). In short, American Transit alleges that Defendants perpetrated an illegal scheme—working in concert to obtain payment on fraudulent no-fault insurance claims from American Transit by providing car accident patients with medically unnecessary treatments, and billing American Transit for them. (*Id.* ¶¶ 2–5, 10).

Approximately two months after filing suit, American Transit moved for a preliminary injunction, seeking to enjoin Defendants Rutland and Nexray from filing additional no-fault collection arbitrations and lawsuits, and seeking a stay of Rutland and Nexray's pending no-fault arbitrations and state court lawsuits. (Pl.'s Mot. for Prelim. Inj. dated Mar. 15, 2024, Dkt. No. 26 at 1). On May 16th, Judge Kovner granted American Transit's request in part, issuing a preliminary injunction enjoining Rutland and Nexray from filing additional no-fault arbitrations and lawsuits, and enjoining Rutland and Nexray from further pursuing the pending no-fault arbitrations. (Mem. & Order dated May 16, 2024, Dkt. No. 52 at 12). However, Judge Kovner declined to stay Rutland and Nexray's pending state court cases, rejecting American Transit's argument that, notwithstanding the Anti-Injunction Act ("AIA") "prohibiting Rutland and Nexray from litigating current state court cases is permissible because such an injunction would be 'in aid of' this Court's jurisdiction." (*Id.* at 9–11).

It is this final portion of Judge Kovner's decision—the denial of the stay of the state court no-fault cases because of the AIA—that American Transit seeks to modify.

2

And it also seeks a temporary restraining order should the Court need time to resolve the injunction modification. For the reasons explained below, American Transit's motion for a preliminary injunction and motion for a temporary restraining order are denied.

## DISCUSSION

American Transit frames its request for relief in different ways. American Transit titles its motion as one for a preliminary injunction. (*E.g.*, Pl.'s Notice of Mot. to Modify Prelim. Inj., Dkt. No. 220; Pl.'s Mot. to Modify Prelim. Inj., Dkt. No. 223). At the same time, it claims that it is seeking a modification of Judge Kovner's May 2024 Order. (*See* Pl.'s Mot. to Modify at 15). Though labeled as a "modification," the request is—at its core—a request for a *new* injunction. Why? Because Judge Kovner denied the prior request for this relief—the stay of pending state court proceedings—in its entirety. There is no existing stay of ongoing state court proceedings to modify. *See JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 100 (2d Cir. 2024) ("Clarifications and interpretations can look like modifications . . . . [D]istrict courts are entitled to deference when interpreting their own injunctions, including an injunction's original reach." (quotations omitted)).

Were the Court to grant American Transit's request it would result in a stay of proceedings, rather than a modification of an existing pause on litigation, because there are no current proceedings being stayed. Consequently, the Court analyzes American Transit's request under the traditional factors for injunctive relief, as if it was seeking

3

the relief for the first time (recognizing, of course, that the May 2024 Order is important context to the current application).[1]

To obtain a preliminary injunction, a party must clearly show "(1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024) (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018)). A party must persuade the court that these elements have been satisfied through a "clear showing," in order to obtain "one of the most drastic tools in the arsenal of judicial remedies." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quotations omitted).

"The irreparable harm requirement is 'the single most important pre-requisite for the issuance of a preliminary injunction.'" *State Farm*, 120 F.4th at 80 (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). Accordingly, the irreparable harm requirement "must therefore be satisfied before the other requirements for an injunction can be considered." *Id.* To demonstrate irreparable harm, the party moving for injunctive relief "must demonstrate that absent a

---

[1] In any event, if viewed as a modification, the analysis is largely the same. Perhaps American Transit believes that framing its request as a modification would allow the Court to apply some undefined lower standard. Not so. "When modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256 (2d Cir. 1984); *Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 340 (3d Cir. 1993) (same); *see also Weight Watchers, Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) (evaluating presence of delay in seeking injunction modification following changed circumstance).

4

preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* (quotations omitted).

"Delay is typically relevant to . . . irreparable harm . . . . A district court should generally consider delay in assessing irreparable harm." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 39 (2d Cir. 1995) (collecting cases). And a "[l]ack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief[.]" *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985). "[M]onths-long delays in seeking preliminary injunctions have repeatedly been held by courts in the Second Circuit to undercut the sense of urgency accompanying a motion for preliminary relief," *Silent Gliss Inc. v. Silent Gliss Int'l Ltd.*, No. 22-CV-0522, 2022 WL 1525484, at *8 (E.D.N.Y. May 13, 2022) (quotations omitted), and the Second Circuit has "found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction." *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005).

American Transit filed its motion for a modified preliminary injunction and temporary restraining order on November 20, 2025. (Pl.'s Mot. to Modify at 19). One of the bases for this relief is the pendency of upcoming proceedings in state court—supposedly "rapidly approaching trials, hearings and other deadlines." (*Id.* at 3). American Transit apparently became aware over two months ago that Defendants had turned over invoices to a lawyer to pursue collections. (*Id.* at 8–9 (citing Dep. of William Weiner 27:6–28:5, Sep. 17, 2025, attached as Ex. 2 to Decl. of Cheryl Glaze, Dkt.

5

No. 221-2)).  It appears that these matters may not have even been filed, just "turned . . . over," (*id.* at 9), for future suits.  Presumably, these are not the matters that are creating the urgency, because new collection matters would only be in their nascent stages.  American Transit separately includes a list of upcoming deadlines and trials that are to commence in December 2025, in a few days.  But perhaps to elide its delay in seeking relief, American Transit omits any information about when these matters and deadlines were first set.  Such information is significant because a party cannot create its own irreparable harm by waiting until the brink of a deadline—one known for a substantial length of time—before seeking injunctive relief.  Without any information to the contrary, the Court is forced to assume that these "rapidly approaching" deadlines are not new, but in fact have been in place for many months, during which American Transit could have, but chose not to, seek relief.  This "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995); *see, e.g.*, *Ahchouch v. Lakeview Loan Servicing, LLC*, No. 25-CV-0093, 2025 WL 70136, at *3 (S.D.N.Y. Jan. 10, 2025) ("That Plaintiffs chose to submit this application barely more than three hours before the scheduled foreclosure sale—and create a last-minute crisis entirely of their own making—does not entitle them to the drastic emergency relief that they seek." (quotations omitted)); *Chan v. Chinese-Am. Plan. Council Home Attendant Program, Inc.*, No. 15-CV-9605, 2016 WL 3004516, at *1 (S.D.N.Y. Jan. 21, 2016) ("Plaintiffs had eighteen-month notice of the potential for the enactment of an arbitration provision; their decision to sit on their

6

rights until just two days before the Union ratification meeting negates the need for such drastic, speedy action and the existence of irreparable harm."); *New York v. U.S. Dep't of Com.*, 339 F. Supp. 3d 144, 151 (S.D.N.Y. 2018) ("[T]he irreparability is a product of [their] own delay.  This is a delaying tactic that is inequitable to the [Plaintiffs] and to the courts as well." (quoting *Hirschfeld v. Bd. of Elections in N.Y.C.*, 984 F.2d. 35, 39 (2d Cir. 1993)).  (One of the older matters apparently already has proceeded to judgment, and did so on September 16, 2025, (Pl.'s Mot. to Modify at 10 n.3), which suggests that it had been proceeding apace, since Judge Kovner issued her May 2024 Order.).

Even were the Court to assume that American Transit has a newfound urgency because of new and imminent trial deadlines, it still has engaged in substantial delay. The rationale that American Transit proffers for its relief is the Second Circuit's decision in *State Farm Mutual Automobile Insurance Co. v. Tri-Borough NY Medical Practice P.C.*, a case it contends is an intervening change in law.  120 F.4th 59 (2d. Cir. 2024).  But the Second Circuit decided *State Farm* on October 24, 2024—13 months ago.  The alleged intervening change is not new, but practically stale, when it comes to evaluating diligence for the purpose of preliminary injunctive relief.  *See supra* p. 5; *see also e.g.*, *Grout Shield Distribs., LLC v. Elio E. Salvo, Inc.*, 824 F. Supp. 2d 389, 403 (E.D.N.Y. 2011) (concluding plaintiff failed to demonstrate irreparable harm in light of five-month delay in bringing motion for preliminary injunction after the parties' settlement negotiations broke down) (collecting cases).

In any event, *State Farm* is not an intervening change that requires modifying the preliminary injunction.  American Transit correctly summarizes the Second Circuit's

7

conclusion in *State Farm*—that RICO creates a uniquely federal right or remedy enforceable in equity, and "[t]he 'expressly authorized' exception [to the AIA] applies . . . where the 'pending state-court proceedings . . . are themselves part of a pattern of baseless, repetitive claims that are being used' to further a violation of [RICO]."  (*See* Pl.'s Mot. to Modify at 13–14 (quoting *State Farm*, 120 F.4th at 94)).  But contrary to American Transit's assertions, *State Farm* does not alter the analysis in Judge Kovner's May 2024 Order.  Notably, her Order addressed a different exception to the AIA—the necessary in aid of the federal court's jurisdiction exception—that the Second Circuit declined to reach in *State Farm*.  *See* 120 F.4th at 92 ("We agree with State Farm that the preliminary injunction here falls within the 'expressly-authorized' exception, and we therefore have no occasion to decide whether the second exception [necessary in aid of the federal court's jurisdiction] also applies.").

American Transit *never* argued that the expressly authorized exception to the AIA applied to its case, (s*ee* Pl.'s Mot. for Prelim. Inj. dated Mar. 15, 2024, Dkt. No. 26); and nothing precluded American Transit from making this argument in its initial motion for a preliminary injunction back in 2024.  It chose not to do so.  Having chosen one litigation path and failed, it cannot now choose the other one, under the guise of a change in "intervening law." *See, e.g.*, *Am. ORT, Inc. v. ORT Isr.*, No. 07-CV-2332, 2009 WL 233950, at *4 (S.D.N.Y. Jan. 22, 2009) (declining to modify preliminary injunction because doing so would allow defendant to "have a second chance to litigate issues that could and should have been fully litigated previously."); *cf. Barcia v. Sitkin*, 367 F.3d 87, 100–01 (2d Cir. 2004) (rejecting defendant's argument that consent judgment required

8

modification based on a change in governing law where the "cases cited by the [Defendant] express[ed] important principles that should inform generally a federal court's approach to supervision of state entities" but did not "call into question the validity of the Consent Judgment, much less change the law[.]").

Moreover, as American Transit acknowledges, the Second Circuit reached its decision in *State Farm* by "[a]pplying [the Supreme Court's decisions in] *Mitchum* and *Vendo*." (Pl.'s Mot. to Modify at 14).  Therefore, *State Farm* merely clarified the law; it did not change it.  And "mere clarification in the law . . . does 'not, in and of itself, provide a basis for modifying a decree.'" *Escalera v. N.Y. Hous. Auth.*, 924 F. Supp. 1323, 1341 (S.D.N.Y. 1996) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 390 (1992)).

\*          \*          \*

At various points in its papers, American Transit refers and cites to Rule 54(b), as a basis to "modify" Judge Kovner's May 2024 Order.  (*E.g.*, Pl.'s Mot. to Modify at 3, 12, 16).  Rule 54(b) provides that a prior order "may be revised at any time."  But such a revision must be considered along with Local Civil Rule 6.3 which provides a strict 14-day window in which reconsideration of a court order must be sought.  Were a party permitted to seek modification at any time, under the guise of Rule 54(b), then the time-limits on reconsideration would have no meaning.  How do these limits apply here?  Assuming that any reconsideration of Judge Kovner's opinion was tolled until the issuance of *State Farm*, *see Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 378 (2d Cir. 2024), American Transit had to seek modification no later than early-November 2024.  It

9

did not.² And therefore, Rule 54(b) also provides no basis to grant American Transit relief. *See id.* ("Rule 54(b) does not *require* district courts to revisit decisions upon request—it only provides that prior decisions '*may* be revised' prior to final judgment of all claims. In denying Commerzbank's motion to reopen, the district court recognized that Rule 54(b) granted the authority to alter its decision, but ultimately chose to adopt and enforce Local Rule 6.3's time limit on motions for reconsideration. We conclude that the district court's decision did not rest on an error of law or a clearly erroneous factual finding, nor could it not be found within the range of permissible decisions." (citation modified)).

For the reasons explained above, American Transit's motion to modify the preliminary injunction is denied. Because the Court denies American Transit's motion to modify the preliminary injunction, American Transit's request for a temporary restraining order pending this Court's decision on modification is also denied. American Transit is directed to serve this decision on the defaulting parties—mail service to the last known address is sufficient—and file proof of service on the docket by November 26, 2025.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  November 25, 2025
       Central Islip, New York

---

² And how do we know that American Transit is really seeking reconsideration? Its gratuitous—and in the Court's view unpersuasive—assertions of its belief that Judge Kovner's decisions were "contrary to a number of rulings in this District and this Circuit." (Pl.'s Mot. to Modify at 2).